No. 25-1619

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

NOVARTIS PHARMACEUTICALS CORPORATION,

*Plaintiff-Appellant*

v.

ANDREW BAILEY, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF MISSOURI, *et al.,*

*Defendants-Appellees,*

MISSOURI HOSPITAL ASSOCIATION and MISSOURI PRIMARY CARE ASSOCIATION,

*Intervenors-Appellees.*

On Appeal from the United States District Court
for the Western District of Missouri

Civil Action No: 2:24-cv-04131-MDH

The Honorable M. Douglas Harpool

## BRIEF OF INTERVENORS-APPELLEES

RONALD S. CONNELLY
WILLIAM VON OEHSEN
BARBARA STRAUB WILLIAMS
FERNANDO MONTOYA
HANNAH HAUER
POWERS PYLES SUTTER & VERVILLE, PC
1250 CONNECTICUT AVE. N.W., 8TH FLOOR
Washington, DC 20036
(202) 466-6550
Ron.Connelly@PowersLaw.com

BRYAN O. WADE
MICHAEL T. RAUPP
TANNER M. COOK
ALEXA B. BARTON
HUSCH BLACKWELL LLP
3810 E SUNSHINE ST SUITE 300
Springfield, MO 68509
(417) 268-4116
Bryan.wade@huschblackwell.com

*Counsel for Intervenors-Appellees,*
*Missouri Hospital Association and Missouri Primary Care Association*

**SUMMARY OF THE CASE**

This Court should dismiss Novartis Pharmaceuticals Corp.'s ("Novartis's") appeal because it failed to allege an injury in fact and therefore lacks standing.

The district court correctly denied Novartis's motion for a preliminary injunction. Novartis is not likely to succeed on the merits. S.B. 751 does not violate the dormant Commerce Clause. S.B. 751 regulates the *distribution* of drugs, not the *price* of drugs discounted under 42 U.S.C. § 256b (the "340B Program"). The Supreme Court has all but eviscerated the extraterritoriality doctrine upon which Novartis relies, and even if that doctrine is still viable, it is inapplicable because S.B. 751 regulates commerce only within Missouri. S.B. 751 does not discriminate against out-of-state economic interests because S.B. 751 treats all drug companies equally. The district court correctly concluded that Novartis's preemption arguments are foreclosed because this Court squarely addressed and rejected materially indistinguishable arguments concerning a law substantially similar to S.B. 751. App. 321–22; R. Doc. 78, at 6–5 (citing *Pharm. Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 768 (2024)). The benefits that S.B. 751 generates for the public substantially outweigh any harmful impact on Novartis.

Intervenors-Appellees respectfully request oral argument and that each side be allowed 15 minutes.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eighth Circuit Rule 26.1A, Intervenors–Appellees Missouri Hospital Association ("MHA") and Missouri Primary Care Association ("MPCA"), by and through their undersigned counsel, state that they are not-for-profit corporations that do not have parent corporations and do not issue stock.  Accordingly, no publicly held corporation owns 10% or more of either Intervenors-Appellees' stock.

**TABLE OF CONTENTS**

SUMMARY OF THE CASE ................................................................................... i

CORPORATE DISCLOSURE STATEMENT ...................................................... ii

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ...............................................................................................1

JURISDICTIONAL STATEMENT ....................................................................4

STATEMENT OF ISSUES .................................................................................4

STATEMENT OF THE CASE ............................................................................6

    I.      The 340B Drug Pricing Program ......................................................6

    II.     340B Contract Pharmacy Arrangements...............................................8

    III.    Missouri S.B. 751 ...........................................................................11

    VI.    Intervenors-Appellees .......................................................................12

    V.     Procedural History............................................................................13

SUMMARY OF THE ARGUMENT ...................................................................16

ARGUMENT ......................................................................................................19

    I.      This Appeal Should Be Dismissed Because Novartis Lacks Standing ................................................................................................19

    II.     S.B. 751 Regulates Distribution, Not Pricing ...................................22

          A.    This Court's Reasoning in *McClain* Applies..........................22

          B.    Novartis Mischaracterizes the Replenishment Model ..............26

          C.    *Morissey* Is Inapposite .............................................................27

    III.    The District Court Correctly Held that Novartis is Unlikely to Succeed on the Merits of Its Dormant Commerce Clause Claim......................30

A.    S.B. 751 Does Not Violate the Extraterritoriality Doctrine of the Dormant Commerce Clause ................................................30

    1.    Novartis's Extraterritoriality Theory Was Rejected by *Pork Producers* ................................................31

    2.    S.B. 751 Does Not Regulate Transactions Occurring Wholly Outside Missouri ................................................32

B.    S.B. 751 Does Not Discriminate Against Out-of-State Economic Interests ................................................37

    1.    Drug Companies and Covered Entities Are Not Substantially Similar ................................................38

    2.    Any Discrimination Is Permitted by Congress ...............40

C.    S.B. 751 Survives the *Pike* Test ................................41

IV.    Novartis's Preemption Claim Should Be Dismissed and Is Otherwise Meritless ................................................47

A.    PhRMA's Preemption Claim Is Moot and Should Be Dismissed ................................................47

B.    *McClain* Held That a State Law Similar to S.B. 751 Was Not Unconstitutional Based on an Obstacle Preemption Theory ....49

C.    *McClain* Was Correctly Decided, and Novartis's Arguments Lack Merit ................................................50

V.    The District Court Correctly Held That the Remaining Factors Favored Denying a Preliminary Injunction ................................52

A.    Novartis Has Not Established Irreparable Harm ................52

B.    The Balance of Equities and Public Interest Weigh Against an Injunction ................................................55

CONCLUSION ................................................56

**Page(s)**

**Federal Cases**

*1-800-411-Pain Referral Serv., LLC v. Otto*,
744 F.3d 1045 (8th Cir. 2014) ........................................................55

*AbbVie, Inc. v. Bailey*,
No. 4:24-cv-00996, 2025 WL 1918948 (E.D. Mo. July 11, 2025),
ECF No. 91 ..................................................................*passim*

*AbbVie, Inc. v. Fitch*,
No. 1:24-cv-184, 2024 WL 3503965 (S.D. Miss. July 22, 2024
2024), *appeal docketed*, No. 24-60375 (5th Cir. July 24, 2024).................23, 51

*Am. Hosp. Ass'n v. Becerra*,
596 U.S. 724 (2022).........................................................45

*Ass'n for Accessible Meds. v. Ellison*,
140 F.4th 957 (8th Cir. 2025) ...............................................35

*Ass'n for Accessible Meds. v. Ellison*,
704 F. Supp. 3d. 947 (D. Minn. 2023)......................................36

*Ass'n for Accessible Meds. v. Frosh*,
887 F.3d 664 (4th Cir. 2018) ...........................................36, 39

*Astra USA, Inc. v. Santa Clara Cnty.*,
563 U.S. 110 (2011).......................................................26, 51

*AstraZeneca Pharms. LP v. Fitch*,
No. 1:24-cv-00196 (S.D. Miss. Dec. 23, 2024)..............................51

*City of Philadelphia v. New Jersey*,
437 U.S. 617 (1978).........................................................41, 42

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000).........................................................49

*CTS Corp. v. Dynamics Corp. of America*,
481 U.S. 69 (1987)..................................................................42, 43

*Cuviello v. City of Belmont*,
No. 23-16135, 2024 WL 2269273 (9th Cir. May 20, 2024) ..............................48

*Dakotans for Health v. Noem*,
52 F.4th 381 (8th Cir. 2022) ..................................................................55

*Dataphase Sys., Inc. v. C L Sys., Inc.*,
640 F.2d 109 (8th Cir. 1981) ..............................................................5, 55

*Delorme v. United States*,
354 F.3d 810 (8th Cir. 2004) ................................................................1

*Dep't of Revenue of Ky. v. Davis*,
553 U.S. 328 (2008)..............................................................5, 17, 38, 39

*Eli Lilly & Co. v. Am. Cyanamid Co.*,
82 F.3d 1568 (Fed. Cir. 1996) ..............................................................54

*Eli Lilly & Co. v. U.S. Dep't of Health & Hum. Servs.*,
No. 1:21-cv-00081, 2021 WL 5039566 (S.D. Ind. Oct. 29, 2021) ....................11

*Eli Lilly & Co. v. U.S. Dep't of Health & Hum. Servs.*,
No. 21-3405 (appeal docketed Dec. 30, 2021) ...................................................11

*Exxon Corp. v. Governor of Maryland*,
437 U.S. 117 (1978)..............................................................................43

*Flynt v. Bonta*,
131 F.4th 918 (9th Cir. 2025) ................................................................37

*Gen. Motors Corp. v. Harry Brown's LLC*,
563 F.3d 312 (8th Cir. 2009) ..................................................................53

*General Motors Corp. v. Tracy*,
519 U.S. 278 (1997)............................................................................38, 39

*Genesis Health Care, Inc. v. Becerra*,
701 F. Sup. 3d 312, 316 (D.S.C. 2023) ....................................................45

*H&R Block, Inc. v. Block, Inc.*,
 58 F.4th 939 (8th Cir. 2023) ...................................................................54

*H.P. Hood & Sons, Inc. v. Du Mond*,
 336 U.S. 525 (1949) ...............................................................................46

*Healthcare Distrib. All. v. Zucker*,
 353 F. Supp. 3d 235 (S.D.N.Y. 2018), *rev'd in part on other
 grounds sub nom. Ass'n for Accessible Meds. v. James*, 974 F.3d
 216 (2d Cir. 2020) ..................................................................................36

*Healy v. Beer Inst., Inc.*,
 491 U.S. 324 (1989)....................................................................31, 36, 37

*Jenkins by Agyei v. Missouri*,
 73 F.3d 201 (8th Cir. 1996) ....................................................................51

*John Doe I v. Miller*,
 418 F.3d 950 (8th Cir. 2005) ..................................................................56

*Kassel v. Consolidated Freightways Corp. of Delaware*,
 450 U.S. 662 (1981)................................................................................46

*Koppula v. Jaddou*,
 72 F.4th 83 (5th Cir. 2023) .....................................................................48

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992)............................................................................5, 19

*Maryland v. King*,
 567 U.S. 1301 (2012)..............................................................................56

*Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub.
 Welfare*,
 742 F.2d 442 (8th Cir. 1984) ..................................................................41

*Morales v. Trans World Airlines, Inc.*,
 504 U.S. 374 (1992)................................................................................54

*MPAY Inc. v. Erie Custom Comput. Applications, Inc.*,
 970 F.3d 1010, 1020 (8th Cir. 2020) ......................................................54

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023)................................................................*passim*

*Nat'l Pork Producers Council v. Ross*,
6 F.4th 1021 (9th Cir. 2021) ...............................................31

*Missouri ex rel. Nixon v. Coeur D'Alene Tribe*,
164 F.3d 1102 (8th Cir. 1999) .............................................16

*Novartis Pharms. Corp. v. Fitch*,
738 F. Supp. 3d 737 (S.D. Miss. 2024), *appeal docketed*, No. 24-
60342 (5th Cir. July 9, 2024)...............................23, 28, 51

*Novartis Pharms. Corp. v. Johnson*,
102 F.4th 452 (D.C. Cir. 2024).............................11, 40, 52

*Novus Franchising, Inc. v. Dawson*,
725 F.3d 885 (8th Cir. 2013) ...............................................48

*Packard Elevator v. I.C.C.*,
782 F.2d 112 (8th Cir. 1986) ...........................................5, 53

*Pharm. Rsch. & Mfrs. of Am. v. McClain*,
95 F.4th 1136 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 768 (2024) ............*passim*

*Pharmaceutical Research and Manufacturers of America v. Walsh*,
538 U.S. 644 (2003)................................................18, 33, 34

*PhRMA v. District of Columbia*,
406 F. Supp. 2d 56 (D.D.C. 2005), *aff'd sub. nom. Biotechnology
Indus. Org. v. District of Columbia*, 496 F.3d 1362 (Fed. Cir.
2007) ...............................................................................36

*PhRMA v. Fitch*,
No. 1:24-cv-160, 2024 WL 3277365 (S.D. Miss. July 1, 2024),
*appeal docketed*, No. 24-60340 (5th Cir. July 5, 2024) .........................23, 51, 52

*PhRMA v. Morrisey*,
760 F. Supp. 3d 439, 455 (S.D.W. Va. 2024).................................28

*PhRMA v. Murrill,*
No. 6:23-CV-00997, 2024 WL 4361597 (W.D. La. Sept. 30, 2024).....23, 41, 51

*Pike v. Bruce Church, Inc.,*
397 U.S. 137 (1970)......................................................................*passim*

*Pub. Serv. Comm'n of Utah v. Wycoff Co.,*
344 U.S. 237 (1952).............................................................................54

*Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.,*
58 F.4th 696 (3d Cir. 2023) ................................................11, 40, 52

*Sanofi-Aventis U.S., LLC v. HHS,*
No. 3:21-cv-634 (D.N.J. June 24, 2021), ECF No. 93-2............................26, 27

*Streu v. Dormire,*
557 F.3d 960 (8th Cir. 2009) ...........................................................29

*Styczinski v. Arnold,*
46 F.4th 907 (8th Cir. 2022) .......................................................31, 35

*Styczinski v. Arnold,*
727 F. Supp. 3d 821 (D. Minn. 2024).................................................32

*In re SuperValu, Inc.,*
870 F.3d 763 (8th Cir. 2017) .....................................................5, 19, 20

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt.
Auth.,*
550 U.S. 344 (2007)....................................................................38, 39

*United Healthcare Ins. Co. v. AdvancePCS,*
316 F.3d 737 (8th Cir. 2002) ...........................................................54

*W. Platte R-II Sch. Dist. v. Wilson,*
439 F.3d 782 (8th Cir. 2006) ........................................................1, 48

**State Cases**

*PhRMA v. State,*
No. 62-cv-24-5744 (Ramsey Cnty. Dist. Ct. Apr. 15, 2025), *appeal docketed,* No. A25-0805 (Minn. Ct. App. May 19, 2025) ......................23, 28, 51

*Tuttle v. Dobbs Tire & Auto Ctrs., Inc.,*
590 S.W.3d 307 (Mo. 2019) (en banc) ...............................................................2

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 3................................................................................5, 30

U.S. Const. art. III ..................................................................................................19

U.S. Const. art. VI, cl. 2 ...........................................................................................5

**Federal Statutes**

21 U.S.C. § 812.......................................................................................................24

28 U.S.C § 1291.......................................................................................................47

28 U.S.C. § 1292(a)(1)...............................................................................................4

28 U.S.C. § 1331........................................................................................................4

42 U.S.C. § 256b.....................................................................................................1, 5

42 U.S.C. § 256b(a)(1)......................................................................................6, 24, 33

42 U.S.C. §§ 256b(a)(1), 1396r-8(a)(1).......................................................................6

42 U.S.C. § 256b(a)(5)(A)(i), (a)(5)(B).......................................................................6

42 U.S.C. § 1396r-8....................................................................................................7

42 U.S.C. § 1396r-8(c)(1)...........................................................................................7

Veterans Health Care Act of 1992, Pub. L. No. 102-585, 106 Stat.
4943 (1992)..........................................................................................................7

**State Statutes**

Ark. Code Ann. § 23-92-604(c)..............................................................23

Mo. Rev. Stat. § 195.600(5).................................................................24

Mo. Rev. Stat. § 376.414 .................................................................5, 11

Mo. Rev. Stat. § 376.414(2)................................................................32

Mo. Rev. Stat. § 376.414.1(1)(b)–(c)...............................................33

Mo. Rev. Stat. § 376.414.1(1)(b)-(c)................................................24

Mo. Rev. Stat. § 376.414.2 ...........................................................11, 23

**Regulations**

21 C.F.R. § 207.33(a).........................................................................27

21 C.F.R. § 207.35(b)(6)....................................................................27

42 C.F.R. §§ 10.20–10.25 ..................................................................26

**Rules**

Fed. R. App. P. 4(a)(1)(A) .................................................................48

Fed. R. Civ. P. 54(b) ..........................................................................47

**Other Authorities**

The American Hospital Association, The 340B Drug Pricing Program
    1 (Healthsperian 2024),
    https://www.aha.org/system/files/media/file/2024/03/The-340B-
    Drug-Pricing-Program.pdf................................................................44

Caitlin Ostroff, *Millions of Americans Live Nowhere Near a Hospital,
    Jeopardizing Their Lives,* CNN (Aug. 3, 2017),
    https://www.cnn.com/2017/08/03/health/hospital-
    deserts/index.html .........................................................................10

Decl. of Krista M. Pedley, *Sanofi-Aventis U.S., LLC v. HHS*, No.
3:21-cv-634 (D.N.J. June 24, 2021), ECF No. 93-2......................................26, 27

H.R. Rep. No. 102-384, pt. 2 (1992) ...........................................................7, 44, 45

Letter from Daniel Lopuch, VP Novartis Managed Markets Finance,
to Covered Entities (Oct. 30, 2020),
https://secure.340bhealth.org/files/Novartis-Letter-10-30-20.pdf......................10

*Limited Distribution Drugs 101*, Clarivate (Sept. 27, 2019),
https://clarivate.com/blog/limited-distribution-drugs-101/ ................................10

Notice Regarding 340B Drug Pricing Program-Contract Pharmacy
Services, 75 Fed. Reg. 10,272, 10,273 (Mar. 5, 2010)........................................9

Notice Regarding Section 602 of the Veterans Health Care Act of
1992; Contract Pharmacy Services, 61 Fed. Reg. 43,549, 43,550
(Aug. 23, 1996) ...............................................................................................8, 9

*Novartis Policy*, 340B ESP (July 14, 2025),
https://www.340besp.com/resources/novartis/policy.pdf...................................33

# INTRODUCTION

This Court should dismiss Novartis's appeal because its complaint fails to allege an injury in fact fairly traceable to Missouri S.B. 751, which it challenges on constitutional grounds.[1]  In a similar challenge to S.B. 751, the Eastern District of Missouri recently dismissed a complaint, that like Novartis's, consisted wholly of conclusions of law, allegations of harm from the federal 340B statute, 42 U.S.C. § 256b, and other harms that were not fairly traceable to S.B. 751.  Memorandum and Order, *AbbVie, Inc. v. Bailey*, No. 4:24-cv-00996, 2025 WL 1918948 (E.D. Mo. July 11, 2025), ECF No. 91 ("*AbbVie*").  Novartis likewise failed to allege an injury in fact and lacks standing.

If the Court reaches the merits, it should affirm the district court's denial Novartis's motion for preliminary injunction on its claim that S.B. 751 violated the dormant Commerce Clause.[2]  Each of Novartis's arguments, however, hinges on

---

[1] Standing is required to confer jurisdiction and can be raised at any time.  *Delorme v. United States*, 354 F.3d 810, 815 (8th Cir. 2004).

[2] If the Court finds standing, only Novartis's dormant Commerce Clause claim is properly before this Court. *See* discussion *infra* Argument Section IV.A. While Novartis purports to appeal the district court's decision holding that Novartis is not likely to succeed on the merits of its claim that S.B. 751 violates the dormant Commerce Clause *and* is preempted by the 340B statute, the district court dismissed the preemption claim before denying Novartis's motion for preliminary injunction. Because the district court's dismissal order did not dispose of all claims, it is not a final, appealable order.  Therefore, this Court lacks jurisdiction over the preemption issue and should dismiss it.  *See W. Platte R-II Sch. Dist. v. Wilson*, 439 F.3d 782 (8th Cir. 2006) (holding that a ruling on the merits moots a ruling on a preliminary injunction.).

1

the erroneous premise that S.B. 751 regulates drug *pricing*.  It does not.  As this

Court recently confirmed, statutes like S.B. 751 regulate drug *distribution*.  *Pharm.*

*Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136 (8th Cir. 2024) ("*McClain*"), *cert.*

*denied*, 145 S. Ct. 768 (2024).

In *McClain*, this Court upheld Arkansas Act 1103, which is substantially

similar to S.B. 751.  Like S.B. 751, Act 1103 prohibits drug companies like

Novartis from refusing to ship 340B-priced drugs to community pharmacies under

contract with 340B covered entities.  This Court held that "Act 1103 ensures that

covered entities can utilize contract pharmacies for their distribution needs . . . The

340B Program, on the other hand, addresses discount pricing."  *McClain*, 95 F.4th

at 1144.  The same is true here: S.B. 751 regulates distribution.  *McClain*'s

analysis is well reasoned and controlling.

But that is not all that is wrong with Novartis's arguments.  Contrary to

Novartis's theory, S.B. 751 does not violate the dormant Commerce Clause's

extraterritoriality doctrine (assuming that doctrine is even still good law).[3]

Missouri courts follow a longstanding presumption that state statutes "apply only

within the boundaries of [the] state and have no extraterritorial effect" so long as

there is no "express [statutory] text to the contrary."  *Tuttle v. Dobbs Tire & Auto*

---

[3] The Supreme Court has clarified the limited applicability of its prior
extraterritoriality cases, but Novartis nonetheless relies upon those cases.  *Nat'l*
*Pork Producers Council v. Ross*, 598 U.S. 356 (2023) ("*Pork Producers*").

*Ctrs., Inc.*, 590 S.W.3d 307, 311 (Mo. 2019) (en banc). S.B. 751 contains no such language.

Nor does S.B. 751 discriminate against out-of-state economic interests. Finding discrimination requires substantial similarity between the in-state and out-of-state entities being compared. S.B. 751 treats in-state and out-of-state manufacturers identically and, as the district court correctly found, Novartis fails to show substantial similarity between an out-of-state drug manufacturer and in-state covered entities and pharmacies.

S.B. 751 also survives the *Pike* test. *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). The benefits that S.B. 751 generates for Missouri substantially outweigh any harmful impact Novartis alleges it may experience. Any incidental burden on Novartis or other out-of-state manufacturers is outweighed by the vital public health benefits S.B. 751 delivers to Missourians. Further, S.B. 751 is appropriately tailored to achieve Missouri's legitimate interest in protecting its healthcare safety-net.

The district court was also correct that Novartis would not be irreparably harmed in the absence of a preliminary injunction and that the balance of the equities does not favor Novartis. Novartis did not demonstrate irreparable harm because it alleges harm that is "merely a possibility." App. 325–26; R. Doc. 78, at 10–11. Further, Missouri maintains a vital interest in effectuating statutes passed

by its elected representatives, and both Missouri and its citizens will be substantially harmed if S.B. 751 is not enforced.

Accordingly, Intervenors-Appellees respectfully request that this Court affirm the district court's denial of a preliminary injunction.[4]

## JURISDICTIONAL STATEMENT

The district court and this Court do not have jurisdiction because Novartis lacks standing.

If the Court finds that Novartis has standing, then the district court had jurisdiction pursuant to 28 U.S.C. § 1331. The district court entered a final order on Novartis's motion for a preliminary injunction on February 24, 2025. App. 316–329; R. Doc. 78. The district court previously dismissed Novartis's preemption claim. App. 306, 309; R. Doc. 77, at 6, 9. Novartis timely appealed on March 26, 2025. App. 330–332; R. Doc. 84. This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) over Novartis's dormant Commerce Clause claim.

## STATEMENT OF ISSUES

1. Whether the district court lacked jurisdiction because Novartis failed to allege an injury in fact sufficient to confer standing.

---

[4] If the Court addresses Novartis's preemption claims, affirmance is still the right outcome because S.B. 751 is "not preempted by federal law under any theory." *McClain*, 95 F.4th at 1139.

4

Most Apposite Cases: *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992); *In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017).

2.      Whether the district court correctly held that Novartis did not show a likelihood of success on the merits because S.B. 751 does not discriminate against interstate commerce; does not impose a burden on interstate commerce that outweighs its benefits; does not purposefully discriminate against out-of-state interests; and is not preempted by the 340B Program.

Most Apposite Cases and Constitutional and Statutory Provisions: *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023); *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328 (2008); *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970); *PhRMA v. McClain*, 95 F.4th 1136 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 768 (2024); U.S. Const. art. I, § 8, cl. 3; U.S. Const. art. VI, cl. 2; 42 U.S.C. § 256b; Mo. Rev. Stat. § 376.414.

3.      Whether the district court correctly held that Novartis did not demonstrate the remaining preliminary injunction factors.

Most Apposite Cases: *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981); *Packard Elevator v. I.C.C.*, 782 F.2d 112 (8th Cir. 1986).

**STATEMENT OF THE CASE**

## I. The 340B Drug Pricing Program

The 340B Program requires drug companies to offer discounts on covered outpatient drugs to specified safety-net health care providers, known as "covered entities," as a condition of the manufacturers' drugs being reimbursed by Medicaid and Medicare Part B. 42 U.S.C. §§ 256b(a)(1), 1396r-8(a)(1). The 340B Program requires drug companies to "offer each covered entity covered outpatient drugs for purchase at or below the applicable ceiling price if such drug is made available to any other purchaser at any price." *Id.* § 256b(a)(1).

Covered entities provide health care and other critical services to the neediest individuals, regardless of ability to pay. All covered entities receive some form of federal assistance to treat these patients and must meet strict eligibility criteria to enroll in the 340B Program. *Id.* § 256b(a)(4). The 340B Program is administered by the Health Resources and Services Administration ("HRSA"), which is a subcomponent of the Department of Health and Human Services ("HHS"). A covered entity may not obtain a 340B discount for a drug subject to a Medicaid rebate or "resell or otherwise transfer the drug to a person who is not a patient of the entity." *Id.* § 256b(a)(5)(A)(i), (a)(5)(B). These restrictions are commonly known as "duplicate discounts" and "diversion," respectively.

The 340B Program can be traced to 1990 when Congress established the Medicaid Drug Rebate Program ("MDRP") to combat rising drug costs to state Medicaid programs. *Id*. § 1396r-8. The MDRP requires drug companies to provide rebates to state Medicaid programs on outpatient drugs furnished to Medicaid beneficiaries. For brand name drugs, those rebates were calculated, in part, based a drug's "best price." *Id*. § 1396r-8(c)(1). Manufacturers responded to the MDRP by raising their "best prices," including for governmental purchasers like the Department of Veterans Affairs ("VA") and non-profit safety-net providers. H.R. Rep. No. 102-384, pt. 2, at 9–10 (1992) ("Hospital costs for the drugs . . . increased, on average, by 32 percent . . . .").

Responding to these rising drug prices, Congress enacted the Veterans Health Care Act of 1992 ("VHCA") to enable the VA and certain federally-funded clinics to obtain lower prices on drugs and to remedy manufacturer gaming of the MDRP. *Id*. at 7, 11; VHCA, Pub. L. No. 102-585, 106 Stat. 4943 (1992). Section 602 of the VHCA established the 340B Program, which is intended "to enable these [covered] entities to stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102-384, pt. 2, at 12.

Novartis's portrayal of covered entities and the 340B Program as supporting a "massive windfall" is wholly inaccurate. Novartis Br. 13. Covered entities

provide significant levels of uncompensated care to uninsured and underinsured patients, and 340B discounts mean that covered entities lose less money providing this care. R. Doc. 25, at 5–7, 13; R. Doc. 48, at 5. The 340B Program also generates revenue for covered entities so that they are less dependent on taxpayer support. The difference between an insurer's payment and the discounted price is income to the covered entity that supplements federal funds, which is exactly what Congress intended. *McClain*, 95 F.4th at 1141 (quoting *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 738 (2022)). The 340B Program allows covered entities to be more generous with reducing or waiving patient pharmacy copayments or by providing other necessary health services.

## II. 340B Contract Pharmacy Arrangements

Most illnesses and injuries must be treated with medications. A provider of health care must ensure that patients have access to a pharmacy to fill their prescriptions for these medications. For this reason, some providers own their own pharmacies, commonly known as in-house pharmacies.

Because the construction and management of a pharmacy is expensive and requires special expertise, many covered entities cannot afford to "expend precious resources to develop their own in-house pharmacies." Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services, 61 Fed. Reg. 43,549, 43,550 (Aug. 23, 1996). They rely instead on independent retail

pharmacies to dispense drugs to their patients on their behalf.  Providers with large service areas also contract with pharmacies that are accessible where the provider's patients reside.  These arrangements are established by contract, are called "contract pharmacy arrangements," and the pharmacies are known as "contract pharmacies."

In 1996, HRSA permitted covered entities to order discounted drugs for shipment directly to contract pharmacies.  *Id.*  In 2010, HRSA clarified that covered entities may access 340B drugs through an unlimited number of contract pharmacies.  Notice Regarding 340B Drug Pricing Program—Contract Pharmacy Services, 75 Fed. Reg. 10,272, 10,273 (Mar. 5, 2010).  A covered entity that uses contract pharmacies has full responsibility for meeting 340B compliance requirements at the pharmacy.  *Id.*  HRSA explained that "pharmacy and inventory management processes are available that make utilization of more than one pharmacy readily feasible for many covered entities without increasing the risk of diversion." *Id.*

Contract pharmacies do not, and may not, purchase 340B drugs.  Drug wholesalers, which ship the vast majority of drugs, do not establish 340B accounts for pharmacies because they are ineligible for 340B discounts.  The contract pharmacy dispenses the drugs to the covered entity's patients, collects reimbursement for the drugs from both the patient and the patient's third-party

payer (if any), and remits the collections to the covered entity. The covered entity pays the pharmacy a fee for dispensing and billing drugs on the covered entity's behalf.

Covered entities without in-house pharmacies can participate in the 340B Program only through contract pharmacy arrangements. Some covered entities, particularly in rural areas, serve patients living hundreds of miles away, and contract pharmacies allow those patients to obtain prescriptions locally. Caitlin Ostroff, *Millions of Americans Live Nowhere Near a Hospital, Jeopardizing Their Lives*, CNN (Aug. 3, 2017).[5] In other instances, drugs may only be available from specialty pharmacies designated by the drug company, which may be located on the opposite side of the country from the covered entity. *See Limited Distribution Drugs 101*, Clarivate (Sept. 27, 2019).[6]

For twenty-six years, every drug company participating in the 340B Program, including Novartis, honored contract pharmacy arrangements. In 2020, manufacturers began either eliminating or significantly restricting distribution of 340B drugs to contract pharmacies. *See, e.g.*, Letter from Daniel Lopuch, VP Novartis Managed Markets Finance, to Covered Entities (Oct. 30, 2020).[7] In response, HHS notified several manufacturers, including Novartis, that their

---

[5] https://www.cnn.com/2017/08/03/health/hospital-deserts/index.html.
[6] https://clarivate.com/blog/limited-distribution-drugs-101/.
[7] https://secure.340bhealth.org/files/Novartis-Letter-10-30-20.pdf.

policies violated the 340B statute and must be rescinded.  These manufacturers then sued HHS.  The Third and D.C. Circuits held that the 340B statute does not prohibit the contract pharmacy restrictions imposed by the plaintiff manufacturers. *Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*, 58 F.4th 696, 707 (3d Cir. 2023); *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 459 (D.C. Cir. 2024).

In contrast, the U.S. District Court for the Southern District of Indiana held that the 340B statute does not allow manufacturers to impose unilateral contract pharmacy restrictions.  *Eli Lilly & Co. v. U.S. Dep't of Health & Hum. Servs.*, No. 1:21-cv-00081, 2021 WL 5039566, at *24 (S.D. Ind. Oct. 29, 2021).  The Seventh Circuit is currently considering cross-appeals in that case.  *Eli Lilly & Co. v. U.S. Dep't of Health & Hum. Servs.*, No. 21-3405 (appeal docketed Dec. 30, 2021).

## III.   Missouri S.B. 751

S.B. 751 protects the right of Missouri covered entities to enter into contract pharmacy arrangements.  S.B. 751 states that certain entities, including manufacturers, may not "deny, restrict, or prohibit, either directly or indirectly, the acquisition of a 340B drug by, or delivery of a 340B drug to" a contract pharmacy.  Mo. Rev. Stat. § 376.414.2.  S.B. 751 also states that it must not be construed in conflict with federal law and regulations.  *Id.* § 376.414(6).

**IV. Intervenors-Appellees**

MPCA is a private, not-for-profit member organization that includes federally qualified health centers, which are local, non-profit, health care providers that provide primary care to low-income and medically under-served patients regardless of ability to pay. R. Doc. 25, at 6. All of MPCA's members are 340B covered entities. *Id.* Most of MPCA's members rely on contract pharmacies to fill prescriptions for their patients, typically because they lack the financial resources to open an in-house pharmacy. *Id.* at 6–7. Without contract pharmacies, the ability of MPCA members to provide critical resources, health care, and discounted prescription drugs is jeopardized. *Id.*

MHA is a private, not-for-profit member organization of 139 Missouri hospitals. *Id.* at 4. Approximately half of MHA's members are covered entities and a majority of MHA's 340B members rely on contract pharmacies to dispense medications for their patients. *Id.* at 5. MHA member hospitals derive approximately 20% of their 340B benefit through contract pharmacies. *Id.* Reducing access to those savings threatens the financial viability of MHA hospitals and leaves them unable to provide critical, under-reimbursed services. *Id.* Even with 340B savings, eligible Missouri hospitals realize very thin margins, averaging 0.8% in 2022. *Id.* Without 340B savings, many small and rural hospitals in Missouri would operate at a loss and could even close. *Id.*

## V.    Procedural History

Novartis challenged the constitutionality of S.B. 751, alleging that its relevant provisions are: 1) preempted by federal patent law, 2) preempted by the 340B statute, and 3) unlawful under the dormant Commerce Clause.  App. 32–36; R. Doc. 1, at 32–36 ¶¶ 110–126.  On August 2, 2024, Novartis filed a motion for a preliminary injunction to enjoin provisions of S.B. 751.  App. 40–43; R. Doc. 3. On November 14, 2024, MHA and MPCA intervened as defendants.  App. 194– 200; R. Doc. 62, at 1–7.  Both the State and Intervenors moved to dismiss Novartis's claims, and on February 13, 2025, the district court granted both motions as to Novartis's preemption claims.  App. 95–97; R. Doc. 31; App. 201– 02; R. Doc. 63; App. 306, 309; R. Doc. 77, at 6, 9.  The only claim the district court did not dismiss was Novartis's dormant Commerce Clause claim.  App. 314– 15; R. Doc. 77, at 14–15.

Less than two weeks later, the district court denied Novartis's motion for a preliminary injunction.  App. 316–329; R. Doc. 78.  The court addressed all three claims, including the two preemption claims that it previously dismissed.  *Id.*  The court held that Novartis had not shown a substantial likelihood of success on the merits of any claim.  App. 328; R. Doc. 78, at 13.

On Novartis's preemption claims, the court relied heavily—as was its duty—on this Court's findings in *McClain*.  It quoted, for instance, this Court's

determination that the 340B Program is not "'so pervasive . . . that Congress left no room for the States to supplement it'" and stated that "Congress's decision not to legislate the issue of pharmacy distribution indicates that Section 340B is not intended to preempt the field." App. 321; R. Doc. 78, at 6 (quoting *McClain*, 95 F. 4th at 1144). It further found that the "practice of pharmacy is an area traditionally left to state regulation." *Id.* S.B. 751 "and the federal 340B law's enforcement scheme address two completely different issues and thus Congress did not inten[d] to preempt the field with its 340B legislation." App. 321–22; R. Doc. 78, at 6–7.

On Novartis's claim that S.B. 751 violates the dormant Commerce Clause because it discriminates against out-of-state entities, the court noted that "any notion of discrimination assumes a comparison of substantially similar entities." App. 322–33; R. Doc. 78, at 7–8 (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 342 (2008)). Because Novartis failed to show "how in-state pharmacies are substantially similar to out-of-state manufacturers," Novartis did not demonstrate a likelihood of success on the merits of its claim that S.B. 751 unconstitutionally discriminates against out-of-state manufacturers. *Id.*

On Novartis's allegation that S.B. 751 violates the dormant Commerce Clause because it allegedly burdens interstate commerce, the court explained that "S.B. 751 assists in fulfilling the purpose of [the] 340B [] program to provide qualified health care providers[] with pricing discounts on certain drugs prescribed

14

to individuals and families whose income falls below the federal poverty level." App. 324; R. Doc. 78, at 9. The court determined that those benefits outweigh any burdens that S.B. 751 may place on Novartis. *Id.*

On Novartis's extraterritoriality argument, the district court noted that the dormant Commerce Clause does not prohibit state laws that have the practical effect of impacting out-of-state commerce, provided those laws do not purposely discriminate against out-of-state economic interests. App. 324; R. Doc. 78, at 9 (quoting *Pork Producers*, 598 U.S. at 356). The district court concluded that Novartis did not demonstrate a likelihood of success "to show how S.B. 751 purposely discriminates against out of state interests" for the following reasons:

> First, there is a presumption that statutes passed in Missouri are not extraterritorial absent express test to the contrary. Second, the effects of S.B. 751 applies equally to any manufacturer enrolled in the 340B program regardless of their in-state or out-of-state operations. Further S.B. 751 does not purport to directly regulate transaction[s] which occur wholly outside of Missouri but rather the delivery and acquisition of 340B drugs to contract pharmacies within the state.

App. 325; R. Doc. 78, at 10.

On the remaining preliminary injunction factors, the district court found that Novartis's "harms are only a mere possibility depending on the constitutional status of S.B. 751," that granting an injunction would cause irreparable injury to the state of Missouri and Missouri covered entities, and that the "public has an interest in seeing the state enforces its law in tandem with the goal of helping

15

enforce a federal program designed to benefit the public whose income falls below the federal poverty level." App. 325–28; R. Doc. 78, at 10–13.

Novartis appealed the district court's preliminary injunction decision.[8] App. 330–32; R. Doc. 84.

## SUMMARY OF THE ARGUMENT

This Court lacks jurisdiction because Novartis's complaint fails to allege an injury in fact fairly traceable to S.B. 751. This Court should be persuaded by the *AbbVie* court's thorough and well-reasoned opinion, which dismissed a complaint very similar to Novartis's. *AbbVie*, 2025 WL 1918948. The complaint consists only of conclusions of law, allegations of harm from the 340B statute, and other harms unrelated to S.B. 751. Because Novartis did not allege an injury in fact, it lacks standing, and this Court should dismiss the appeal and remand with instructions to dismiss Novartis's complaint. In addition, this Court should dismiss Novartis's appeal of its preemption claim because it was dismissed by the district court. App. 306, 309; R. Doc. 77, at 6, 9; *see Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).

If the Court reaches the merits, it should affirm the district court's denial of a preliminary injunction. Novartis's entire case is premised on the incorrect theory

---

[8] Novartis did not appeal the district court's decision denying a preliminary injunction on its federal patent law claim. *See* App. 319-321; R. Doc. 78, at 4-6.

16

that S.B. 751 is a *pricing* statute.  It is not.  S.B. 751 regulates the *distribution* of drugs that have already been priced under the 340B Program.  Indeed, this Court has already held that a similar Arkansas law regulates distribution, not pricing. *McClain*, 95 F.4th at 1144 ("Act 1103 ensures that covered entities can utilize contract pharmacies for their distribution needs . . . . The 340B Program, on the other hand, addresses discount pricing.").

Novartis's claim that S.B. 751 discriminates against out-of-state economic interests is meritless.  A dormant Commerce Clause discrimination claim requires that the in-state and out-of-state entities be "substantially similar."  *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 342–43 (2008).  S.B. 751 treats in-state and out-of-state manufacturers identically, and the district court correctly found that Novartis failed to show substantial similarity between out-of-state drug manufacturers and in-state covered entities and pharmacies.  App. 323; R. Doc. 78, at 8.

The benefits that S.B. 751 generates for the public substantially outweigh any harmful impact on Novartis or other out-of-state manufacturers.  *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  S.B. 751 is consistent with both traditional state authority and Congress's expectation that states will serve as regulators of local drug delivery systems in the absence of express federal

preemption.  Any incidental burden on Novartis is far outweighed by the vital public health benefits that S.B. 751 provides to Missourians.

S.B. 751 does not violate the dormant Commerce Clause's extraterritoriality doctrine.  Missouri statutes are presumed to "apply only within the boundaries of the state and have no extraterritorial effect" so long as there is no "express [statutory] text to the contrary."  App. 325; R. Doc. 78, at 10 (citing *Tuttle v. Dobbs Tire & Auto Centers, Inc.*, 590 S.W.3d 307, 311 (Mo. 2019) (en banc)). The extraterritoriality doctrine was limited by the Supreme Court in *Pork Producers*, 598 U.S. 356 (2023), where the Court held that the key extraterritoriality cases do not support a *per se* extraterritoriality rule but instead are confined to state laws "addressing 'price control or price affirmation statutes' that tied 'the price of . . . in-state products to out-of-state prices.'"  (quoting *PhRMA* v. Walsh, 538 U.S. 644, 669 (2003)).  S.B. 751 does not regulate prices outside Missouri.  S.B. 751 lawfully regulates "delivery and acquisition of 340B drugs to contract pharmacies within the state."  App. 325; R. Doc. 78, at 10.

If the Court reaches the preemption claim, Novartis failed to show that it is likely to succeed on the merits because the 340B statute regulates pricing and S.B. 751 regulates drug distribution.  App. 319–27; R. Doc. 78, at 7–10.  This Court and several other district courts have squarely rejected preemption arguments identical to Novartis's.  *McClain*, 95 F.4th at 1136.

Novartis failed to meet the remaining factors to support a preliminary injunction. The irreparable harm Novartis asserts is "merely a possibility." App. 326, R. Doc. 78, at 11. On the balance of the equities and public interest, Missouri maintains a vital interest in effectuating statutes passed by its elected representatives, and both Missouri and its citizens will be substantially harmed if S.B. 751 cannot be enforced.

## ARGUMENT

### I. This Appeal Should Be Dismissed Because Novartis Lacks Standing

Novartis's appeal should be dismissed because its complaint failed to allege an injury sufficient to confer standing as required by Article III of the United States Constitution. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Novartis must demonstrate standing by showing that it "has suffered an injury in fact that is fairly traceable to the defendant's conduct and that is likely to be redressed by the relief [Novartis] seeks." *In re SuperValu, Inc.*, 870 F.3d 763, 767–68 (8th Cir. 2017) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)). Novartis must show injury that is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Spokeo*, 578 U.S. at 339). "An injury is fairly traceable if the plaintiff shows 'a causal connection between the injury and the conduct complained of' that is 'not . . . th[e] result [of] the

independent action of some third party not before the court.'" *Id.* (alterations in original) (quoting *Lujan*, 504 U.S. at 560).

Novartis challenges S.B. 751, but its complaint does not state any concrete and particularized harm that is traceable to S.B. 751. The complaint mostly consists of conclusions of law, alleges harms caused by the 340B statute, and asserts facts that are not relevant.[9] The *AbbVie* court recently dismissed a similar lawsuit because that complaint, which is very similar to Novartis's, did not allege facts sufficient to confer standing. *AbbVie*, 2025 WL 1918948. The court determined that AbbVie's alleged injuries were not fairly traceable to S.B. 751. *Id.* at *8.

---

[9] The following paragraphs and allegations of Novartis' complaint solely include conclusions of law: ¶¶ 1 (second to fourth sentences), 2, 3 (first sentence), 5–8, 10–13, 14 (first to third sentences), 24–31, 32 (first sentence), 36 (first and third sentences), 37–39, 41–42, 48–53, 55–59, 60 (second sentence), 61–87, 88 (second sentence), 89–95, 96 (sixth and seventh sentences), 97–100, 101 (second sentence), 102–105, 106 (first to third sentences), 107 (first sentence), 108–09, 111–19, 121–26. App. 1; R. Doc. 1, at 2-6, 8-13, 15-36. Novartis alleges several harms stemming strictly from the 340B Program, not S.B. 751: ¶¶ 36 (first and second sentences), 40, 43–47, 54, 88 (third sentence), 96 (fifth sentence), 107 (third sentence). App. 1; R. Doc. 1, at 11-15, 17-18, 26, 28-29, 32. Many paragraphs merely describe the action: ¶¶ 1 (first sentence), 14 (first sentence), 15–23 (parties), 110, 120 (realleging and incorporating). App. 1; R. Doc. 1, at 2, 6-8, 33-35. A few concern the replenishment model: ¶¶ 3 (second to fourth sentences), 4, 32 (second sentence), 33–35. App. 1; R. Doc. 1, at 2-3, 10-11. The remaining paragraphs assert general factual assertions that do not allege any harm caused by S.B. 751: ¶¶ 60, 88, 96 (first to fourth sentences), 101 (first sentences). App. 1; R. Doc. 1, at 19, 26, 28-31.

Novartis's complaint is similarly defective because it does not allege any facts that trace injury to S.B. 751. Section V of the Novartis complaint that "S.B. 751 Will Cause Concrete and Imminent Harm to Novartis," describes the possibility of penalties due to violations of S.B. 751 (App. 31; R. Doc. 1, at 31, ¶¶ 104–107; *see also* ¶¶ 61–67), but those purported injuries do not confer standing.[10] The *AbbVie* court reviewed similar allegations that S.B. 751 creates the possibility of an enforcement action and fines. *AbbVie*, 2025 WL 1918948, at *8; *see also* Compl. Declaratory and Injunctive Relief, ¶¶ 100, 105, *AbbVie, Inc. v. Bailey*, No. 4:24-cv-00996 (E.D. Mo. July 22, 2024), ECF No. 1. While the court acknowledged that standing can be conferred if a plaintiff plans conduct that is prohibited by a statute and is "affected with a constitutional interest," "AbbVie's mere labeling of S.B. 751 as an 'unconstitutional mandate' does not supply AbbVie with standing." *AbbVie*, 2025 WL 1918948, at *8. AbbVie's interest was in "preventing transactions for which S.B. 751 bears no responsibility" and that its "complaint fails to establish, through well-pleaded facts, that the enforcement of S.B. 751 arguably affects a constitutional interest." *Id.* Like AbbVie, Novartis's complaint alleges constitutional infringements, but does not state how the

---

[10] Paragraph 107 (second sentence) alleges that Novartis cannot easily recover discounts provided. App. 32; R. Doc. 1, at 32. The *AbbVie* court correctly rejected the argument that increased discounts caused harm because such discounts were attributable to the 340B Program, not S.B. 751. *AbbVie*, 2025 WL 1918948 at *8.

21

enforcement of S.B. 751 affects a constitutional interest.  *Id.* at \*4.  Without a connection to S.B. 751, Novartis's grievances about potential penalties and fines do not confer standing.  Therefore, the Court should dismiss Novartis's appeal.

## II.    S.B. 751 Regulates Distribution, Not Pricing

Novartis's Commerce Clause and preemption claims both hinge on its erroneous theory that S.B. 751 regulates pricing of 340B drugs.  Novartis Br. 28–33.  The district court correctly held that the plain language of S.B. 751 "does not control the price to which 340B drugs are sold," and it does not "even deal[] with pricing discounts."  App. 320; R. Doc. 78, at 5.  Rather, "the 340B program is what determines and sets the discount on those drugs."  *Id*.

### A.    This Court's Reasoning in *McClain* Applies

The district court's opinion tracks this Court's precedent.  In *McClain*, this Court considered whether an Arkansas law similar to S.B. 751 regulates pricing rather than delivery.  This Court found that Arkansas "Act 1103 does not require manufacturers to provide 340B pricing discounts to contract pharmacies.  Act 1103 does not set or enforce discount pricing."  *McClain*, 95 F.4th at 1145.

Both the language and effect of S.B. 751 and Act 1103 are similar in all material respects.  S.B. 751 states:

> A pharmaceutical manufacturer . . . shall not deny, restrict, or prohibit, either directly or indirectly, the acquisition of a 340B drug by, or delivery of a 340B drug to, a pharmacy that is under contract with, or otherwise authorized by, a covered entity to receive 340B drugs on

behalf of the covered entity unless such receipt is prohibited by the United States Department of Health and Human Services.

Mo. Rev. Stat. § 376.414.2. Act 1103 states that a pharmaceutical manufacturer shall not:

> (1) Prohibit a pharmacy from contracting or participating with an entity authorized to participate in 340B drug pricing by denying access to drugs that are manufactured by the pharmaceutical manufacturer; or
> (2) Deny or prohibit 340B drug pricing for an Arkansas-based community pharmacy that receives drugs purchased under a 340B drug pricing contract pharmacy arrangement with an entity authorized to participate in 340B drug pricing.

Ark. Code Ann. § 23-92-604(c). While the text differs, they both require drug companies to ship 340B drugs to contract pharmacies. *McClain*'s analysis therefore controls here.

*McClain* also represents the majority view. Almost every court to address state laws like S.B. 751 has held they do not regulate pricing. *PhRMA v. Fitch*, No. 1:24-cv-160, 2024 WL 3277365, at \*9 (S.D. Miss. July 1, 2024), *appeal docketed*, No. 24-60340 (5th Cir. July 5, 2024); *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737, 745 (S.D. Miss. 2024), *appeal docketed*, No. 24-60342 (5th Cir. July 9, 2024); *AbbVie, Inc. v. Fitch*, No. 1:24-cv-184, 2024 WL 3503965, at \*12 (S.D. Miss. July 22, 2024), *appeal docketed*, No. 24-60375 (5th Cir. July 24, 2024); *PhRMA v. Murrill*, No. 6:23-CV-00997, 2024 WL 4361597, at \*8 (W.D. La. Sept. 30, 2024); Order at 11–12, *PhRMA v. State*, No. 62-cv-24-5744 (Ramsey

Cnty. Dist. Ct. Apr. 15, 2025), *appeal docketed,* No. A25-0805 (Minn. Ct. App. May 19, 2025).

Novartis's primary retort is that S.B. 751 is a "pricing statute" because it defines "340B drug" by referencing the 340B statute. Novartis Br. 28–29. A state law's mere reference to a federal statute—a common legislative practice[11]—does not transform the nature of that state law. S.B. 751 refers to a "340B drug" only to identify which drugs fall under S.B. 751's delivery and distribution regulations. Novartis fails to show how S.B. 751's mere definitional reference of "340B drug" transforms the Missouri statute into a pricing requirement.

The 340B statute requires manufacturers to publish 340B prices each quarter. 42 U.S.C. § 256b(a)(1). Delivery of any drug, including those priced under the 340B statute, does not occur until after the drug has been priced and purchased. By the time S.B. 751 applies, the drug has already been priced under the 340B statute. Indeed, the remaining provisions defining "340B Drug" state that the drugs must have already "been subject" to a pricing offer by the manufacturer and "purchased" by the covered entity. Mo. Rev. Stat. § 376.414.1(1)(b)-(c).

---

[11] *See, e.g.*, Mo. Rev. Stat. § 195.600(5) (defining controlled substances by referencing 21 U.S.C. § 812).

Novartis claims that S.B. 751 "does not change when, where, or how the [drug] delivery occurs," Novartis Br. 29, but Novartis repeatedly contradicts this assertion. Novartis Br. 5–6 (S.B. 751 gives "covered entities the right to designate unlimited numbers of contract pharmacies to receive *delivery* of 340B drugs.") (emphasis added); Novartis Br. 7 (claiming that S.B. 751 infringes on its alleged "right to limit *delivery* to a *single* contract pharmacy.") (first emphasis added); Novartis Br. 24, 27, 48 (same). Novartis can't keep its story straight.

Novartis asserts that the Eighth Circuit's decision in *McClain* rested on an incorrect "factual predicate." Novartis Br. 33. Novartis disputes whether covered entities maintain title to a 340B drug and whether contract pharmacies act as agents of the covered entity in a contract pharmacy arrangement. The Court's statements on these issues were not central to its reasoning, however. *See generally*, *McClain*, 95 F.4th 1136. The Court mentioned agency only as background information. *Id.* at 1142. And it mentioned title only *after* concluding that "Congressional silence on pharmacies in the context of 340B indicates that Congress did not intend to preempt the field." *Id.* at 1144. In any case, contract pharmacies do not take title to 340B drugs; they merely take physical possession of 340B drugs on behalf of the covered entity and dispense the drugs to covered entity patients. *Id.*

If Novartis believes that covered entities do not retain title to 340B drugs in contract pharmacy arrangements, its remedy is to bring a diversion claim under the

340B administrative dispute resolution ("ADR") process, 42 C.F.R. §§ 10.20–10.25. *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 122 (2011) (holding that ADR is the exclusive remedy for diversion disputes between manufacturers and covered entities). Title has no bearing on the constitutionality of S.B. 751.

**B.     Novartis Mischaracterizes the Replenishment Model**

Novartis also misrepresents the inventory "replenishment model," which it alleges demonstrates that S.B. 751 regulates pricing. Novartis Br. 29–30. As an initial matter, the replenishment model is a product of the 340B program, not S.B. 751. Decl. of Krista M. Pedley ¶¶ 3, 5, *Sanofi-Aventis U.S., LLC v. HHS*, No. 3:21-cv-634 (D.N.J. June 24, 2021), ECF No. 93-2 ("Pedley Decl."). Moreover, Novartis's contract pharmacy policy applies whether or not a covered entity employs a replenishment model. Although the replenishment model is commonly used, some covered entities and their pharmacies use a physically separate 340B drug inventory. Novartis's policy restricts delivery regardless of whether the covered entity and pharmacy use the replenishment model or physically separate inventory.

In the physical inventory model, pharmacies keep duplicate inventories—one for the covered entity's 340B drugs and the other for its own non-340B drugs. The replenishment model allows a pharmacy to dispense a drug from its inventory to the covered entity's patients instead of having to rely on advance orders of 340B

drugs. *Id.* ¶ 5. Covered entities purchase 340B drugs that subsequently replace the drugs previously dispensed by the pharmacy. Stated differently, the replenishment drug is recharacterized from a 340B drug to a non-340B drug after the drug is delivered to the pharmacy, and the dispensed drug is recharacterized from a non-340B drug to a 340B drug at the exact same time. This arrangement is blessed by HHS as complying with 340B statutory requirements. *Id.* ¶¶ 3–12.

Recharacterization is possible because each unique drug in the U.S. is assigned a National Drug Code ("NDC"), which identifies its "labeler, product, and package size and type." 21 C.F.R. § 207.33(a). All drugs with the same NDC are identical and produced by the same manufacturer. *Id.* § 207.35(b)(6). They are fungible and indistinguishable from each other, allowing replenishment of one drug with another when they share the exact 11-digit NDC. Pedley Decl. ¶ 7.

The number of 340B-dispensed drugs is always equal to the number of 340B-replenished drugs, so the replenishment model has no impact on drug companies. Moreover, because replenishment transactions are between covered entities and contract pharmacies, and not manufacturers, use of the model has no bearing on S.B. 751.

### C.  *Morissey* Is Inapposite

Novartis suggests that this Court should defer to the analysis of the Southern District of West Virginia, which stated in *dicta* that a West Virginia statute,

different from S.B. 751 in material respects explained below, regulates drug pricing. *PhRMA v. Morrisey*, 760 F. Supp. 3d 439, 455 (S.D.W. Va. 2024). But *Morrisey* is only one of several courts that have wrestled with this issue, and all other courts—including this Court—have concluded that laws like S.B. 751 regulate distribution, not pricing. *See, e.g.*, *McClain*, 95 F.4th at 1145; *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d at 745 (Mississippi law "does not require pharmaceutical manufacturers to offer 340B drugs below applicable ceiling prices . . . .").

In any event, *Morrisey* related exclusively to a "no audits" provision and the enforcement provision in the West Virginia law, *Morrisey*, 760 F. Supp. 3d at 451–460, neither of which find any analogue in S.B. 751. *See* Order at 13–14, *PhRMA v. State*, No. 62-cv-24-5744 (Ramsey Cnty. Dist. Ct. Apr. 15, 2025) (finding that "the *Morrisey* case's reasoning is irrelevant" to alleged preemption claims because the state statute did not contain an audit provision).

Novartis's allegedly illustrative hypothetical erroneously equates a *covered entity's* purchase of 340B drugs with a *pharmacy's* purchase of non-340B drugs and theorizes that S.B. 751 is a pricing statute because a pharmacy and covered entity purchase drugs at different prices. Novartis Br. 31. But comparing transactions by different purchasers does not prove Novartis's point.

The following example more accurately captures the impact of S.B. 751. Say a covered entity orders 100 units of a given drug at the 340B price for delivery to the covered entity. Novartis permits shipment of those units to the covered entity. Now, say the covered entity orders 100 units of the same drug at the same 340B price for delivery to a contract pharmacy. Novartis's policy prohibits the delivery of those drugs to the contract pharmacy. The purchaser and the price are the same in each example; only the delivery location has changed. Novartis violates S.B. 751 because it prohibits shipment of the drugs to the covered entity's contract pharmacy, not because Novartis fails to provide 340B pricing. S.B. 751 is a distribution law, pure and simple.

Though Novartis tries to claim otherwise, Novartis Br. 32, the issue of whether state laws like S.B. 751 regulate delivery or pricing was raised by the parties in *McClain* and addressed by this Court. *McClain*, 95 F.4th at 1145. This Court should follow the reasoning in its own precedent to the extent that any of Novartis's claims are predicated on the threshold argument that S.B. 715 regulates pricing. *Streu v. Dormire*, 557 F.3d 960, 964–65 (8th Cir. 2009) (finding that a decision resolved an issue when the parties argued the issue and the "panel considered and rejected . . . argument[s] in its decision.").

For all of the above reasons, the district court correctly determined that S.B. 751 does not regulate 340B pricing. App. 320; R. Doc. 78, at 5.

**III. The District Court Correctly Held that Novartis is Unlikely to Succeed on the Merits of Its Dormant Commerce Clause Claim**

The district court correctly concluded that Novartis did not establish likelihood of success on the merits of its Commerce Clause claim. App. 322–25; R. Doc. 78, at 7–10. An implicit prohibition stemming from the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, forbids "the enforcement of 'certain state [economic regulations] even when Congress has failed to legislate on the subject.'" *Pork Producers*, 598 U.S. at 368 (quoting *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995) (alteration in original)). This "dormant Commerce Clause" prohibition bars state laws that purposefully discriminate against, or unduly burden, interstate commerce. Each of Novartis's dormant Commerce Clause claims, which rest on the erroneous notion that S.B. 751 regulates drug pricing and not drug distribution, is meritless. Novartis Br. 28. As explained above, S.B. 751 regulates delivery, not price. Novartis's extraterritoriality argument also fails under recent Supreme Court precedent. *Pork Producers*, 598 U.S. at 356. Its other dormant Commerce Clause claims are also meritless.

**A. S.B. 751 Does Not Violate the Extraterritoriality Doctrine of the Dormant Commerce Clause**

S.B. 751 does not apply extraterritorially. Novartis's extraterritoriality theory was rejected by the Supreme Court in *Pork Producers*, which limited the doctrine to price control statutes. As explained in section II, *supra*, S.B. 751

30

regulates distribution, not pricing.  Novartis is also wrong that S.B. 751 regulates

transactions occurring outside Missouri.

### 1. Novartis's Extraterritoriality Theory Was Rejected by *Pork Producers*

Novartis relies heavily on *Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989), and

claims that the Supreme Court's decision in *Pork Producers* "kept *Healy*'s rule

intact."[12]  Novartis Br. 33, 38.  Not so.  Novartis attempts to resurrect arguments

that the Supreme Court rejected in *Pork Producers* and ignores that *Pork*

*Producers* limited the scope of *Healy*.  The Court rejected the argument that *Healy*

suggested an "almost *per se* rule" that state laws are unconstitutional if they "have

the practical effect of controlling" commerce outside the State.  *Pork Producers*,

598 U.S. 356, 373 (cleaned up).  Instead, *Healy* is limited to state laws "addressing

'price control or price affirmation statutes' that tied 'the price of . . . in-state

products to out-of-state prices.'"  *Id.* at 373–374.

Novartis's reliance on *Styczinski* similarly fails.  Prior to *Pork Producers*,

*Styczinski* held that a Minnesota law violated the dormant Commerce Clause,

*Styczinski v. Arnold*, 46 F.4th 907, 913 (8th Cir. 2022), but after remand, the district

---

[12] *Healy* involved a law regulating pricing by out-of-state producers of products that were also made within the state, thus protecting in-state producers from out-of-state competitors.  *See Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1029 (9th Cir. 2021).

court acknowledged that *Pork Producers* brought into question the validity of the appellate decision. *Styczinski v. Arnold*, 727 F. Supp. 3d 821, 825 (D. Minn. 2024).

Novartis argues that *Pork Producers* does not apply because "Missouri purports to regulate *only the price* that drug manufacturers can charge wholesalers for drugs in wholly out-of-state transactions." Novartis Br. At 39 (emphasis added). But again, it is settled in the Eighth Circuit that statutes like S.B. 751 do not regulate pricing, but rather delivery and distribution of 340B drugs. *McClain*, 95 F.4th at 1145. Novartis cannot relitigate that issue by masquerading it as a dormant Commerce Clause claim.

### 2. S.B. 751 Does Not Regulate Transactions Occurring Wholly Outside Missouri

Novartis claims that most drug manufacturers are located outside Missouri, that Novartis does not transact with Missouri covered entities directly, and that Novartis does not conduct "a single transaction" in the state. Novartis Br. 34. Novartis's characterization omits critical components of 340B drug transactions that occur within Missouri.

S.B. 751 states that its prohibition against manufacturers relates to the "acquisition of a 340B drug by, or delivery of a 340B drug to, a pharmacy that is under contract with, or otherwise authorized by, a covered entity." Mo. Rev. Stat. § 376.414(2). S.B. 751 does not, by its terms, apply to covered entities and pharmacies outside Missouri. Indeed, even Novartis interprets S.B. 751 to apply

only to covered entities and pharmacies located in Missouri because it has made an exception from its restrictive contract pharmacy policy for Missouri covered entities and pharmacies. *Novartis Policy*, 340B ESP (July 14, 2025).[13] As the district court correctly held, S.B. 751 regulates the "delivery and acquisition of 340B drugs to contract pharmacies within the state." App. 325; R. Doc. 78, at 10.

Novartis insists that it does not conduct any transactions with covered entities in Missouri. Novartis Br. 34. Yet the 340B statute requires that Novartis offer 340B priced drugs for purchase by all covered entities. 42 U.S.C. § 256b(a)(1). To initiate that transaction, covered entities located in Missouri must accept Novartis's 340B pricing offer and purchase the drugs. S.B. 751 recognizes this step-by-step transaction by defining a 340B drug as one which "[h]as been subject to *any offer* for reduced prices by a manufacturer under 42 U.S.C. Section 256b(a)(1)" and "[i]s *purchased by a covered entity*." Mo. Rev. Stat. § 376.414.1(1)(b)–(c) (emphasis added). Even if a Missouri covered entity were to arrange the purchase of 340B drugs with out-of-state entities, the contacts and negotiations for these purchases would necessarily include activities within Missouri.

*Pharmaceutical Research and Manufacturers of America v. Walsh*, 538 U.S. 644 (2003), implicated concerns similar to Novartis's, and the Supreme Court

---

[13] https://www.340besp.com/resources/novartis/policy.pdf.

found that a state statute did not violate the dormant Commerce Clause because the statute did not regulate the price of out-of-state transactions. *Walsh* concerned Maine's supplemental rebate program, which provided discounted prescription drugs to Maine's uninsured citizens through rebates from manufacturers. *Id.* at 649. Manufacturers argued that the Maine statute violated the extraterritoriality doctrine of the dormant Commerce Clause, but the Court rejected this argument because, "unlike price control or price affirmation statutes, the Maine Act does not regulate the price of any out-of-state transaction, either by its express terms or by its inevitable effect." *Id.* at 669. Like the statute at issue in *Walsh*, S.B. 751 is not a pricing statute. The reasoning in *Walsh*, therefore, applies equally here.

Novartis lists several meritless grievances with the district court's decision rejecting its "wholly" out-of-state arguments. First, Novartis argues that the district court erred in presuming that S.B. 751's text did not "address conduct outside of Missouri." Novartis Br. 35. Not so. The district court correctly noted the longstanding presumption that Missouri statutes "apply only within the boundaries of the state and have no extraterritorial effect" if there is no "express [statutory] text to the contrary." App. 324–25; R. Doc. 78, at 9–10 (citing *Tuttle v. Dobbs Tire & Auto Ctrs., Inc.*, 590 S.W.3d 307, 311 (Mo. 2019)). Novartis's faulty argument to the contrary relies on an incorrect analogy between S.B. 751 and a case that analyzed a Minnesota law that governed non-340B drug pricing. *See*

Novartis Br. 35 (citing *Ass'n for Accessible Meds. v. Ellison*, 704 F. Supp. 3d. 947, 953 (D. Minn. 2023)). This Court subsequently found that the Minnesota law violated the dormant Commerce Clause because it "regulates the price of out-of-state transactions, insists that out-of-state manufacturers sell their drugs to wholesalers for a certain price, and ties the price of in-state products—prescription drugs—to the price that out-of-state manufacturers charge their wholesalers." *Ass'n for Accessible Meds. v. Ellison*, 140 F.4th 957 (8th Cir. 2025). But, once again, the 340B price is established before delivery to Missouri covered entities and their pharmacies. Accordingly, *Association for Accessible Medicines* is inapposite.

Second, Novartis argues that the district court "conflates two distinct Dormant Commerce Clause theories: A state's discriminatory treatment of out-of-state entities has no bearing on Novartis's standalone theory that Missouri impermissibly regulates wholly out-of-state transactions." Novartis Br. 35–36 (citing *Styczinski*, 46 F.4th at 912). Again, S.B. 751 does not regulate wholly out-of-state transactions. Moreover, Novartis's argument ignores the Supreme Court's recent decision in *Pork Producers*, which significantly curtailed the "extraterritoriality doctrine" relied upon in *Styczinski*. *Pork Producers*, 598 U.S. 356, 373 (2023).

Third, Novartis takes exception to the district court's determination that S.B. 751 does not regulate wholly out-of-state transactions because the drugs are delivered to contract pharmacies in Missouri. Novartis Br. 36–37. Novartis argues that initial sales occur outside the state and therefore have an extraterritorial effect. Novartis Br. 36–37. Novartis relies on pre-*Pork Producer* cases that examined whether state laws that regulate pricing violate the dormant Commerce Clause. The statutes in each of those cases imposed *price* controls. *Ass'n for Accessible Meds. v. Frosh*, 887 F.3d 664, 671–672 (4th Cir. 2018) (considering a price control statute and relying on *Baldwin* and *Healy*, which the Supreme Court limited in *Pork Producers*); *Healthcare Distrib. All. v. Zucker*, 353 F. Supp. 3d 235, 246, 261-262 (S.D.N.Y. 2018) (considering a price regulation and relying exclusively on *Healy*), *rev'd in part on other grounds sub nom. Ass'n for Accessible Meds. v. James*, 974 F.3d 216, 219 (2d Cir. 2020); *PhRMA v. District of Columbia*, 406 F. Supp. 2d 56, 68 (D.D.C. 2005) (considering price restrictions and relying almost exclusively on *Baldwin* and *Healy*), *aff'd sub. nom. Biotechnology Indus. Org. v. District of Columbia*, 496 F.3d 1362 (Fed. Cir. 2007); *Ass'n for Accessible Meds. v. Ellison*, 704 F. Supp. 3d. 947, 953 (D. Minn. 2023) (considering the effect of a price regulation), *aff'd*, 140 F.4th 957 (8th Cir. 2025)). As the district court noted, S.B. 751 regulates "the delivery and acquisition of 340B drugs to contract pharmacies within the state," not the price of drugs. App. 325; R. Doc. 78, at 10.

36

The arguments and cases relied upon by Novartis, therefore, do not apply to S.B. 751.

Finally, Novartis states that the district court faulted it for not alleging purposeful discrimination. Novartis Br. 37. Novartis quotes *Healy* for the proposition that a statute that directly controls commerce occurring wholly outside a state is unconstitutional regardless of whether that reach was intended. Novartis Br. 37–38 (citing *Healy*, 491 U.S. at 336). But *Pork Producers* held that *Healy* typifies "the familiar concern with preventing *purposeful discrimination* against out-of-state economic interests." *Pork Producers*, 598 U.S. at 371 (emphasis added); *see also Flynt v. Bonta*, 131 F.4th 918, 929 (9th Cir. 2025) (same). The district court correctly applied *Pork Producers* and rejected Novartis's extraterritoriality claim because S.B. 751 does not purposefully discriminate against out-of-state interests. App. 324–25; R. Doc. 78, at 9–10.

## B. S.B. 751 Does Not Discriminate Against Out-of-State Economic Interests

S.B. 751 does not discriminate against out-of-state goods or "nonresident economic actors," as Novartis contends. Novartis Br. 40–42. There is no discrimination because drug companies and covered entities are not substantially similar. Even if they were substantially similar, any disparate treatment is permitted by Congress.

### 1. Drug Companies and Covered Entities Are Not Substantially Similar

Novartis's argument fails because a showing of discrimination requires a comparison of substantially similar entities, and in-state covered entities and out-of-state drug companies are not similar. *General Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997) (dormant Commerce Clause challenge requires "competition between the supposedly favored and disfavored entities in a single market. . .").

Novartis states that the district court accepted the premise that S.B. 751 favors in-state hospitals and clinics at the expense of a drug manufacturers located almost entirely outside Missouri. Novartis Br. 40–41. But the opinion does not say this, and the court correctly held that "any notion of discrimination assumes a comparison of substantially similar entities." App. 322–23; R. Doc. 78, at 7–8 (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 342 (2008)). Because drug companies are not "substantially similar" to Missouri covered entities, S.B. 751 does not violate the dormant Commerce Clause. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 344, 342 (2007); *see also Davis*, 553 U.S. at 342–43.

Novartis misconstrues *General Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997), as holding that the substantial similarity requirement only applies if the entities are in competition. Novartis Br. 42. *Tracy* held that the dormant Commerce Clause is triggered only if substantially similar entities also compete

with one another. 519 U.S. at 298–99. In-state covered entities and out-of-state manufacturers are not similar and do not compete.

Novartis is wrong that *Davis* has no bearing on the question before the Court. Novartis Br. 42. *Davis* upheld a state's differential treatment of in-state and out-of-state municipal bonds under the "substantially similar" test. *Davis*, 553 U.S. at 343. The *Davis* decision enforced the principle that the dormant Commerce Clause is not implicated where the regulated entities are not similarly situated and similarity can turn on various distinctions. *Id. Davis* is indeed relevant here. Manufacturers and covered entities occupy distinct roles within the pharmaceutical supply chain, are subject to different regulations, and serve different functions.

Novartis's reliance on other precedents is also unavailing. The Fourth Circuit decision in *Association for Accessible Medicines v. Frosh* did not turn on whether the state law discriminated against out-of-state commerce, but rather on the state pricing statute targeting out-of-state transactions. 887 F.3d 664 (4th Cir. 2018). *Oneida-Herkimer* expressly rejected Novartis's theory, noting that "any notion of discrimination assumes a comparison of substantially similar entities." 550 U.S. at 342.

## 2. Any Discrimination Is Permitted by Congress

Even if drug companies were substantially similar to covered entities (they are not), S.B. 751 would still not violate the dormant Commerce Clause. Novartis claims that S.B. 751 "requires out-of-state manufacturers to provide their products at 340B-discounted prices to Missouri-based hospitals and their contract pharmacies in a wide number of transactions that the federal program itself does not require." Novartis Br. 40. According to Novartis, S.B. 751 requires a "direct cash transfer from the pockets of (almost entirely) out-of-state drug manufacturers to (entirely) in-state hospitals and clinics." Novartis Br. 40 (citing *Oregon Waste Sys., Inc. v. Dep't of Env't Quality of the State of Or.*, 511 U.S. 93, 99 (1994)).

Novartis's argument fails because any such disparate treatment is permitted by Congress and thus does not violate the dormant Commerce Clause. First, as discussed at length above, S.B. 751 regulates the delivery of 340B drugs and does not dictate the pricing of any drugs.

Second, S.B. 751 operates independently of the 340B statute and fills a congressional gap left by that statute. *See, e.g.*, *Novartis*, 102 F.4th at 452; *Sanofi*, 58 F.4th at 703 ("The text [of 340B] is silent about delivery."). When enacting Section 340B, Congress implicitly recognized the states' traditional role in regulating drug distribution, omitting any such limitation at the federal level. *McClain*, 95 F.4th at 1143.

Third, Novartis voluntarily participates in the 340B Program.  Novartis's participation in Medicaid and Medicare Part B requires participation in the 340B Program, but Novartis does not have to participate in Medicaid or Medicare.  *See Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare,* 742 F.2d 442, 446 (8th Cir. 1984).  Novartis may withdraw from Medicaid and Medicare and terminate its responsibilities under the 340B Program and S.B. 751.  The "the history of the Section 340B program and litigation surrounding it suggests that regulations requiring delivery and forbidding restrictions against delivery to contract pharmacies were foreseeable." *Murrill*, 2024 WL 4361597, at *15.  Novartis knew, or should have known, that it would be subject to state regulation when it voluntarily agreed to participate in the 340B Program.

### C.    S.B. 751 Survives the *Pike* Test

Novartis's claim that S.B. 751 imposes an impermissible burden on interstate commerce fails under the balancing test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  Novartis Br. 43.  The benefits that S.B. 751 generates for the public substantially outweigh any harmful impact, if any, on Novartis.  App. 324; R. Doc. 78, at 9.

A facially neutral law can fail under the dormant Commerce Clause if it imposes an excessive burden on interstate commerce that is not outweighed by its benefits.  *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978).  Courts

analyze facially neutral state laws under the *Pike* balancing test. *Pike*, 397 U.S. at 142. The *Pike* test does not focus on whether the law discriminates against out-of-state commerce, but on whether "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Id*. The crucial inquiry is "whether [a law] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." *City of Philadelphia*, 437 U.S. at 624.

Here, Missouri's interest in ensuring access to affordable medications for covered entities far outweighs any speculative economic inconvenience to Novartis. Novartis relies on *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69 (1987), to argue that S.B. 751 has a significant impact on out-of-state drug manufacturers because (1) different state laws regulating delivery of 340B-priced drugs across multiple states create inconsistency and (2) Novartis will fall short of its profit goals. Novartis Br. 43–45. But *CTS* actually undermines Novartis's position. *CTS* upheld an Indiana law regulating shareholder voting rights, explicitly rejecting a claim that the law would create inconsistent or impermissible multistate burdens:

> So long as each State regulates voting rights only in the corporations it has created, each corporation will be subject to the law of only one State . . . . Accordingly, we conclude that the Indiana Act does not create an impermissible risk of inconsistent regulation by different States.

*CTS*, 481 U.S. at 89.

42

Like the Indiana statute, S.B. 751 regulates conduct with a clear nexus to the enacting state—the delivery of 340B-priced drugs to covered entities and contract pharmacies licensed by and operating within Missouri. Missouri's law mirrors the kind of state-specific regulation that *CTS* upheld: a narrowly tailored law, operating solely within state boundaries, in an area squarely within state authority, here public health.

The Supreme Court addressed an argument nearly identical to Novartis's in *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978). *Exxon* contended that state regulation of retail gas sales was unconstitutional due to the nationwide nature of the petroleum market. The Court rejected this argument: "We cannot adopt appellants' novel suggestion that because the economic market for petroleum products is nationwide, no State has the power to regulate the retail marketing of gas . . . . The problem thus is not one of national uniformity." *Exxon Corp.*, 437 U.S. at 128. The same principle applies here. The dormant Commerce Clause does not preempt every aspect of a national market—particularly where, as here, the regulation is local, nondiscriminatory, and essential to public welfare.

Novartis's economic impact argument fares no better. Novartis claims that it will lose "millions" due to laws like S.B. 751. Novartis Br. 43. But Novartis wholly failed to establish that it would lose "millions" as a result of the law it is challenging in *this* action: S.B. 751. To the contrary, 340B discounts reduce only a

"small share of drug company revenue." The American Hospital Association, The 340B Drug Pricing Program 1 (Healthsperian 2024).[14] Novartis's unsupported allegations of purported economic loss due to laws like S.B. 751 also ignore the corresponding—and much greater—harm to Missouri's healthcare safety-net providers and the patients they serve if S.B. 751 is not enforced.

Novartis argues that S.B. 751 impermissibly "financ[es]" or enriches local industry at the expense of out-of-state actors, which it claims is not a valid interest under the dormant Commerce Clause. Novartis Br. 45 (citing *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 394 (1994)). Novartis misrepresents the law's purpose and effect. S.B. 751 is not designed to enrich local businesses; rather, it serves a critical public health function by enabling covered entities to continue providing vital healthcare services to underserved and low-income communities. The law ensures that the benefits of the 340B Program—to help providers "stretch scarce Federal resources as far as possible"—are not undermined by manufacturers' unilateral distribution policies. H.R. Rep. No. 102-384, pt. 2, at 12 (1992).

Novartis disputes the district court's recognition of the local benefits that S.B. 751 provides. Novartis contends that covered entities do not use 340B

---

[14] https://www.aha.org/system/files/media/file/2024/03/The-340B-Drug-Pricing-Program.pdf.

savings to offer direct discounts to low-income patients.  Novartis Br. 45–56.  This is a red herring because the 340B statute is not a *patient*-discount law.  It is a discount for *providers* so they may "reach more eligible patients and provide more comprehensive services."  H.R. Rep. No. 102-384, pt. 2, at 12 (1992); *see also Am. Hosp. Ass'n*, 596 U.S. at 730 (Congress intended 340B savings to "offset the considerable costs of providing healthcare to the uninsured and underinsured in low-income and rural communities."); *Genesis Health Care, Inc. v. Becerra*, 701 F. Sup. 3d 312, 316 (D.S.C. 2023) ("Put simply, the purpose of the 340B Program was to provide a means to make 340B entities profitable in order for those 340B entities to 'stretch scarce Federal resources as far as possible.'").  And many MHA and MPCA members do pass the discounts to their patients.

Novartis also alleges that covered entities, contract pharmacies, and third-party administrators (TPAs) "pocket the discount," with no evidence to show actual cost reductions for needy patients.  Novartis Br. 46 (citing studies).  This is a critique of the 340B Program and has nothing to do with S.B. 751.  It also reflects a misunderstands the 340B statutory framework, which provides discounts to covered entities and empowers them to choose how best to use the savings.  H.R. Rep. No. 102-384, pt. 2, at 12.  Contract pharmacies and TPAs provide valuable operational services that enable covered entities to provide drugs to their patients.

Novartis argues that the district court failed to properly scrutinize S.B. 751 under *Kassel v. Consolidated Freightways Corp. of Delaware*, 450 U.S. 662 (1981), given that the law allegedly burdens out-of-state actors.  Novartis Br. 47–48.  S.B. 751 does not disproportionately impact out-of-state businesses.  The law applies uniformly, regulating conduct within Missouri's borders to ensure that covered entities can maintain access to life-saving drugs through their contract pharmacies.

Any incidental burden on Novartis or other out-of-state manufacturers is far outweighed by the vital public health benefits S.B. 751 delivers.  The law supports the congressional purpose behind the 340B Program, sustains critical safety-net services, and protects the health of vulnerable populations.  That is not only a legitimate interest—it is urgent for the well-being of Missourians.  Any incidental burdens on interstate commerce are constitutionally permissible when a state legislates for health and safety.  *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949).

Finally, Novartis says that "[e]ven if Missouri could identify a legitimate local purpose, it could achieve that purpose with 'a lesser impact on interstate activities.'"  Novartis Br. 45 (quoting *Pike*, 397 U.S. at 90).  Novartis suggests that Missouri could directly subsidize its hospitals, pharmacies, and clinics through general taxes or bonds.  *Id*. (citing *C&A Carbone*, 511 U.S. at 394).  Imposing

additional taxes on Missouri citizens—many of whom already struggle to afford healthcare—is unreasonable. Missouri need not burden its taxpayers by shifting the financial responsibility of the 340B Program from large drug companies to taxpayers.

## IV. Novartis's Preemption Claim Should Be Dismissed and Is Otherwise Meritless

### A. PhRMA's Preemption Claim Is Moot and Should Be Dismissed

Novartis's interlocutory appeal of its preemption claim is moot and the Court should dismiss it. On February 13, 2024, the district court dismissed Novartis's preemption claims based on federal patent law and the 340B statute but did not dismiss the dormant Commerce Clause claim. App. 306, 309; R. Doc. 77, at 6, 9. One week later, on February 24, 2025, the district court denied Novartis's motion for a preliminary injunction on all claims, and the court's opinion addressed the dismissed preemption claims. App. 316–329; R. Doc. 78. Novartis has improperly appealed the denial of a preliminary injunction on the dismissed preemption claim.[15]

An appellate court has jurisdiction over claims if there is a final order or judgement on all claims, but it does not have jurisdiction if only some claims have been dismissed. *See* Fed. R. Civ. P. 54(b); 28 U.S.C § 1291. This Court should

---

[15] Novartis has not appealed the denial of the preliminary injunction based on its patent preemption claim, which is waived, and if appealed, would also be moot.

dismiss the 340B preemption claim because the district court's denial of permanent relief mooted Novartis's appeal of the preliminary injunction. *West Platte R-II School Dist. v. Wilson*, 439 F.3d 782 (8th Cir. 2006) (holding that a ruling on the merits moots a ruling on a preliminary injunction.); *see also Koppula v. Jaddou*, 72 F.4th 83, 84 (5th Cir. 2023) ("[a] denial of permanent relief moots the appeal from a denial of preliminary relief"); *Cuviello v. City of Belmont*, No. 23-16135, 2024 WL 2269273, at *1 n.1 (9th Cir. May 20, 2024) ("as [plaintiff's] claims stand dismissed, we (and the district court) lack the equitable powers to issue an injunction based on claims no longer in the complaint").

This Court also lacks pendent appellate jurisdiction over Novartis's preemption claim. The district court's February 12, 2025, dismissal of Novartis's preemption claim may have had the "practical effect of denying . . . a preliminary injunction," *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 890 (8th Cir. 2013), but Novartis missed its deadline to file an interlocutory appeal of that decision, which fell on March 14, 2025. *See* Fed. R. App. P. 4(a)(1)(A). Novartis also cannot show that it will suffer "some serious, perhaps, irreparable, consequence and that the order can be effectually challenged only by immediate appeal." *Novus Franchising, Inc.*, 725 F.3d at 891 (quotations omitted). For the reasons explained in section V.A below, Novartis will not suffer irreparable harm from the lack of injunctive relief.

**B.** *McClain* **Held That a State Law Similar to S.B. 751 Was Not Unconstitutional Based on an Obstacle Preemption Theory**

Even if this Court has jurisdiction over Novartis's preemption claim, it should reject it. Novartis's obstacle-preemption theory is not "untested." Novartis Br. 52. The district court correctly concluded that *McClain* forecloses Novartis's obstacle-preemption claim. App. 319–322; R. Doc. 78, at 4–7.

Obstacle preemption applies if a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). In *McClain*, this Court thoroughly examined that standard and held that Arkansas Act 1103 (like S.B. 751) does not frustrate the objectives of the 340B statute. This Court found that Act 1103 "assists in fulfilling the purpose of 340B" and does not "create an obstacle for pharmaceutical manufacturers to comply with 340B." *McClain*, 95 F.4th at 1144–45. Act 1103 is similar to S.B. 751 in all material respects and, therefore, the holding in *McClain* controls here.

Novartis attempts to distinguish *McClain* by arguing that its obstacle preemption theory is different than the one presented by PhRMA in *McClain*. Novartis Br. 51. Novartis contends that its obstacle preemption theory is based on the premise that S.B. 751 "requires manufacturers to recognize an unlimited number of contract pharmacies," while PhRMA argued in *McClain* that the 340B Program was a "closed system" that prohibited any contract pharmacy

arrangements.  Novartis Br. 51–52.  But in *McClain*, PhRMA likewise argued that Act 1103 conflicts with the 340B statute by expanding access to contract pharmacies beyond the access allowed under federal law.  *See* Appellant's Opening Br. at 43–44, *McClain*, 95 F.4th 1136 (8th Cir. 2024) (No. 22-3675) (arguing that "Congress did not intend for outside actors—including an unlimited number of for-profit pharmacy chains—to insert themselves into the system . . . .").  This Court rejected those arguments and concluded that the 340B statute is silent on the issue of delivery.  *McClain*, 95 F.4th at 1143.  Accordingly, federal law neither prohibits the use of contract pharmacies nor preempts state laws that safeguard access to them.  *Id.*  This Court determined that Arkansas Act 1103 did not mandate 340B pricing, alter discount amounts, or impose obligations beyond federal requirements.  *McClain*, 95 F.4th at 1145.  Instead, the state law deterred manufacturer interference with contract pharmacy arrangements—an approach the Court found compatible with the 340B Program.  *Id.*  S.B. 751 functions the same way.  Novartis's assertion that S.B. 751 is obstacle preempted because it could lead to recognition of an "unlimited number" of contract pharmacies simply rehashes the same theory rejected in *McClain.*

> **C.**     ***McClain* Was Correctly Decided, and Novartis's Arguments Lack Merit**

Novartis raises two other preemption arguments that it concedes were already addressed in *McClain*:  that Act 1103 is not field preempted and that its

enforcement provisions do not conflict with *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011).  Alleging that the *McClain* decision is wrong on these two issues, Novartis requests to preserve arguments on the issues.  Novartis Br. 52–55.

Novartis has no basis to preserve these arguments.  Not only did this Court reject the arguments in *McClain*, courts around the country have flatly rejected similar arguments and distinguished the same cases upon which Novartis relies. *See PhRMA v. Fitch*, No. 1:24-CV-160, 2024 WL 3277365, at *11 (S.D. Miss. July 1, 2024), *appeal docketed*, No. 24-60340 (5th Cir. July 10, 2024); *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737, 751–52 (S.D. Miss. 2024), *appeal docketed*, No. 24-60342 (5th Cir. July 10, 2024); *AbbVie Inc. v. Fitch*, No. 1:24-CV-184, 2024 WL 3503965, at *15–16 (S.D. Miss. July 22, 2024), *appeal docketed*, No. 24-60375 (5th Cir. July 24, 2024); Order at 12, *AstraZeneca Pharms. LP v. Fitch*, No. 1:24-cv-00196 (S.D. Miss. Dec. 23, 2024), ECF No. 36; *PhRMA v. Murrill*, No. 6:23-CV-00997, 2024 WL 4361597, at *4–7 (W.D. La. Sept. 30, 2024); Order at 11–13, *PhRMA v. State*, No. 62-cv-24-5744 (Ramsey Cnty. Dist. Ct. Apr. 15, 2025), *appeal docketed*, No. A25-0805 (Minn. Ct. App. May 19, 2025).  The *McClain* decision "is the law of the circuit and binds other panels."  *Jenkins by Agyei v. Missouri*, 73 F.3d 201, 205 (8th Cir. 1996).

Novartis argues that *Novartis* and *Sanofi* support its preemption argument because those courts stated that the 340B statute does not prohibit a manufacturer from setting contract pharmacy limitations. Novartis Br. 55. Both of those courts determined that reasonable restrictions are permissible under *federal* law only because the 340B statute is silent on delivery. *Novartis*, 102 F.4th at 460; *Sanofi*, 58 F.4th at 703. That same silence also permits Missouri to regulate delivery of 340B drugs to contract pharmacies. *PhRMA v. Fitch*, No. 1:24-CV-160, 2024 WL 3277365, at *9 (S.D. Miss. July 1, 2024), *appeal docketed*, No. 24-60340 (5th Cir. July 10, 2024) ("[T]he same 'statutory silence[ ],'" *Sanofi Aventis*, 58 F.4th 699, that does not *implicitly mandate* that manufacturers deliver to any contract pharmacy does not, on the other hand, show that Congress clearly intended to *preclude states* from enacting their own public health regulations aimed at maximizing the availability of low-cost drugs for covered-entity patients."). *Novartis* and *Sanofi* support S.B. 751.

## V. The District Court Correctly Held That the Remaining Factors Favored Denying a Preliminary Injunction

### A. Novartis Has Not Established Irreparable Harm

Novartis will not suffer irreparable harm from S.B. 751. As the District Court correctly concluded, Novartis's theory of harm relies upon "merely a possibility" of harm rather than harm that is "likely to occur absent preliminary injunctive relief." App. 325–26, R. Doc. 78, at 10–11 (quoting *Morehouse*

*Enterprises, LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1017 (8th Cir. 2023)).  Novartis points to allegedly irrecoverable financial losses and civil and criminal penalties as evidence of irreparable harm, but Novartis's arguments rely on the assumption that S.B. 751 is unconstitutional. Novartis must show irreparable harm "[r]egardless of the strength of its claim on the merits."  *Gen. Motors Corp. v. Harry Brown's LLC*, 563 F.3d 312, 318 (8th Cir. 2009).  Moreover, Novartis's claims of irrecoverable financial losses and civil and criminal penalties do not create the level of harm necessary to grant the extraordinary remedy of a preliminary injunction.  *Packard Elevator v. ICC*, 782 F.2d 112, 115 (8th Cir. 1986) ("It is . . . well settled that economic loss does not, in and of itself, constitute irreparable harm.").

Novartis claims that it suffers irreparable harm because it cannot recover any funds it spends to comply with S.B. 751.  Novartis Br. 56 (citing *Iowa Utils. Bd. v. FCC*, 109 F.3d 418 (8th Cir. 1996)).  But Novartis could reprice drugs sent to contract pharmacies if S.B. 751 is later invalidated, similar to the mechanism used in the replenishment model.  Novartis could also bring a state civil action, such as unjust enrichment.

Novartis also argues that S.B. 751 leads to lost research and development opportunities for new drugs.  Novartis Br. 56–57.  Lost research opportunities do

not constitute irreparable harm.  *See Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1578 (Fed. Cir. 1996).

S.B. 751's civil and criminal penalties also do not create irreparable harm. As explained above, S.B. 751 is constitutional, and Novartis's irreparable harm argument improperly rests on the assumption that S.B. 751 is unconstitutional. App. 325–26; R. Doc. 78, at 10–11.  Even if S.B. 751 were unconstitutional, Novartis fails to demonstrate the immediacy of any harm.  Novartis fails to demonstrate that "the prospect of state suit [is] imminent."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992).  Where there is "no proof of any threatened or probable act . . . which might cause the irreparable injury," a preliminary injunction is impermissible.  *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952).

Novartis's claim that it will suffer loss of goodwill and reputational harm fails for the same reasons.  The irreparable harm must "concentrate on current threats."  *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002).  A "speculative" claim of reputational harm is "inadequate to demonstrate a clear and present need for equitable relief."  *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 952 (8th Cir. 2023) (internal quotations omitted); *see also MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (uncorroborated claims of reputational harm are not irreparable harm).  Novartis's

claim of reputational harm is not based on a "current threat" or a "clear and present need" but instead relies on a chain of unstated inferences that will allegedly lead to a negative perception of Novartis. The lack of a current threat to Novartis's reputation, and the speculative nature, make the extraordinary remedy of a preliminary injunction improper.

**B.      The Balance of Equities and Public Interest Weigh Against an Injunction**

In evaluating the balance of equities, this Court considers the "relative injuries to the parties and the public." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Novartis relies solely upon its belief that S.B. 751 is unconstitutional to support its conclusion that the equities favor a preliminary injunction. This standard is only applicable where statutes are clearly unconstitutional under a "rigorous threshold." *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1054 (8th Cir. 2014). Novartis relies on *Dakotans for Health*, but those appellees met this threshold because this Court determined that the statute in question was likely unconstitutional. *Dakotans for Health v. Noem*, 52 F.4th 381, 392 (8th Cir. 2022). Because S.B. 751 is constitutional, Novartis will not suffer any irreparable harm. App. 326, R. Doc. 78, at 11.

In contrast, the harm suffered by the state and the public if S.B. 751 is not enforced is immense: "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable

injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (citation omitted); *see also*

*John Doe I v. Miller*, 418 F.3d 950, 953 (8th Cir. 2005). In addition, both the state

and Missourians will be substantially harmed if S.B. 751 cannot be enforced

because covered entities will lack access to 340B drugs, which requires contract

pharmacies.

## CONCLUSION

For the foregoing reasons, this Court should dismiss this appeal, or, in the

alternative, affirm the district court's denial of a preliminary injunction.

Dated:    August 15, 2025                 Respectfully Submitted,

/s/Bryan O. Wade                          */s/Ronald S. Connelly*
Bryan O. Wade                             Ronald S. Connelly
HUSCH BLACKWELL LLP                       William von Oehsen
3810 E. Sunshine Street                   Barbara Straub Williams
Suite 300                                 Fernando Montoya
Springfield, Missouri  65809              Hannah Hauer
Phone:  417-268-4000                      POWERS PYLES SUTTER & VERVILLE, PC
Fax:     417-268-4040                     1250 Connecticut Ave. N.W., 8th Floor
bryan.wade@huschblackwell.com             Washington, DC 20036
                                          T: (202) 466-6550
Michael T. Raupp                          F: (202) 785-1756
HUSCH BLACKWELL LLP                       Ron.Connelly@PowersLaw.com
4801 Main, Suite 1000
Kansas City, Missouri 64112
Phone: 816-983-8000
Fax: 816-983-8080
michael.raupp@huschblackwell.com

Tanner M. Cook
HUSCH BLACKWELL LLP
8001 Forsyth Boulevard, Suite 1500
St. Louis, Missouri 63105

Phone: 314-480-1500
Fax: 314-480-1551
Tanner.Cook@huschblackwell.com

Alexa B. Barton
HUSCH BLACKWELL LLP
14606 Branch Street, Suite 200
Omaha, NE 68154
Telephone: (402) 964-5000
Facsimile: (402) 964-5050
allee.barton@huschblackwell.com

*Counsel for Intervenors-Appellees Missouri Hospital Association and Missouri Primary Care Association*

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND LOCAL RULE 28A(h)

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,886 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO Version 2212 in 14-point Times New Roman font.

Pursuant to Eighth Circuit Rule 28(A)(h), I further certify that Intervenors-Appellees' brief has been converted to Adobe PDF format by printing to Adobe PDF from the original word processing file, and has been provided to the Court and counsel for Appellants. The brief has been scanned for viruses using a commercial virus scanning program, which confirms that the brief is virus free.

*/s/Ronald S. Connelly*
Ronald S. Connelly
*Counsel for Intervenors-Appellees Missouri Hospital Association and Missouri Primary Care Association*

Dated: August 15, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2025, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Eighth

Circuit by using the CM/ECF system.  I certify that all participants in the case are

registered CM/ECF users and that service will be accomplished by the CM/ECF

system.

Dated: August 15, 2025                  Respectfully Submitted,

*/s/Ronald S. Connelly*
Ronald S. Connelly
POWERS PYLES SUTTER & VERVILLE,
PC
1250 Connecticut Ave. N.W., 8th Floor
Washington, DC 20036
T: (202) 466-6550
Ron.Connelly@PowersLaw.com
*Counsel for Intervenors-Appellees Missouri
Hospital Association and Missouri Primary
Care Association*