IN THE

# United States Court of Appeals for the Eighth Circuit

NOVARTIS PHARMACEUTICALS CORPORATION,

Plaintiff-Appellant,

v.

CATHERINE HANAWAY, in her official capacity as Attorney General of the State of Missouri; JAMES L. GRAY, in his official capacity as President of the Missouri Board of Pharmacy; CHRISTIAN S. TADRUS, in his official capacity as Vice President of the Missouri Board of Pharmacy; DOUGLAS R. LANG, in his official capacity as a member of the Missouri Board of Pharmacy; COLBY GROVE, in his official capacity as a member of the Missouri Board of Pharmacy; ANITA K. PARRAN, in her official capacity as a member of the Missouri Board of Pharmacy; TAMMY THOMPSON, in her official capacity as a member of the Missouri Board of Pharmacy; and DARREN HARRIS, in his official capacity as a member of the Missouri Board of Pharmacy,

Defendants-Appellees,

—and—

MISSOURI HOSPITAL ASSOCIATION and MISSOURI PRIMARY CARE ASSOCIATION,

Intervenors-Appellees.

On Appeal from the United States District Court for the Western District of Missouri
2:24-cv-04131-MDH
The Honorable M. Douglas Harpool

## PLAINTIFF-APPELLANT NOVARTIS PHARMACEUTICALS CORPORATION'S REPLY BRIEF

JESSICA L. ELLSWORTH
SUSAN M. COOK
MATTHEW J. HIGGINS
SAM H. ZWINGLI
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com

October 8, 2025                    *Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 5

I. NOVARTIS HAS STANDING TO CHALLENGE S.B. 751 ........................ 5

II. THE DISTRICT COURT INCORRECTLY RULED THAT
NOVARTIS IS UNLIKELY TO SUCCEED ON THE MERITS ................. 7

   A. Novartis's Dormant Commerce Clause Challenge Is Likely To
   Succeed ........................................................................................ 7

      1. S.B. 751 Requires Manufacturers To Offer More 340B
      Discounts Than Federal Law Requires ................................. 8

      2. S.B. 751 Likely Violates The Dormant Commerce Clause In
      Three Independent Ways ...................................................... 11

   B. S.B. 751 Is Preempted By Federal Law ...................................... 22

      1. This Court Has Jurisdiction Over Novartis's Preemption
      Claim ................................................................................. 22

      2. Missouri Cannot Change The Terms Of Novartis's
      Participation In The Federal 340B Program ........................ 24

III. THE REMAINING INJUNCTION FACTORS FAVOR
NOVARTIS .......................................................................... 28

CONCLUSION ................................................................................... 30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

CASES:

*Altana Pharma AG v. Teva Pharms. USA, Inc.*,
566 F.3d 999 (Fed. Cir. 2009) ............................................................. 28

*Association for Accessible Meds. v. Ellison*,
140 F.4th 957 (8th Cir. 2025) ..................... 2, 7, 11-16, 19, 29

*Association for Accessible Meds. v. Frosh*,
887 F.3d 664 (4th Cir. 2018) ........................................................ 12, 15

*Astra USA, Inc. v. Santa Clara Cnty.*,
563 U.S. 110 (2010) ..................................................................... 27, 28

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ............................................................................ 28

*C & A Carbone, Inc. v. Town of Clarkstown*,
511 U.S. 383 (1994) ............................................................................ 20

*City of Phila. v. New Jersey*,
437 U.S. 617 (1978) ............................................................................ 17

*CTS Corp. v. Dynamics Corp. of America*,
481 U.S. 69 (1987) .............................................................................. 22

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
596 U.S. 212 (2022) ............................................................................ 24

*Cuviello v. City of Belmont*,
No. 23-16135, 2024 WL 2269273 (9th Cir. May 20, 2024) ............... 23

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ................................................................ 11, 15, 20, 21

*Eli Lilly & Co. v. Am. Cyanamid Co.*,
82 F.3d 1568 (Fed. Cir. 1996) ........................................................... 28

*Entergy Ark., LLC v. Webb*,
122 F.4th 705 (8th Cir. 2024) ........................................................... 19

*Exxon Corp. v. Governor of Md.,*
    437 U.S. 117 (1978)................................................................21

*Forest Park II v. Hadley,*
    336 F.3d 724 (8th Cir. 2003) .............................................24, 26, 27

*Granholm v. Heald,*
    544 U.S. 460 (2005)................................................................17

*Healy v. Beer Inst.,*
    491 U.S. 324 (1989)................................................................18

*In re VeroBlue Farms USA, Inc.,*
    6 F.4th 880 (8th Cir. 2021) .....................................................22

*International Paper Co. v. Ouellette,*
    479 U.S. 481 (1987)................................................................27

*Kincade v. City of Blue Springs,*
    64 F.3d 389 (8th Cir. 1995) .....................................................23

*Koppula v. Jaddou,*
    72 F.4th 83 (5th Cir. 2023) .....................................................23

*National Pork Producers Council v. Ross,*
    598 U.S. 356 (2023)..............................................3, 14-16, 19-21

*New Energy Co. of Ind. v. Limbach,*
    486 U.S. 269 (1988)................................................................17

*Novartis Pharmaceuticals Corp. v. Johnson,*
    102 F.4th 452 (D.C. Cir. 2024)...........................4, 6, 10, 24, 25

*Novus Franchising, Inc. v. Dawson,*
    725 F.3d 885 (8th Cir. 2013) ...................................................23

*Oregon Waste Sys., Inc. v. Department of Env't Quality of State of Or.,*
    511 U.S. 93 (1994)..................................................................17

# TABLE OF AUTHORITIES—Continued

Page(s)

*Pharmaceutical Research & Manufacturers of America v. McClain,*
  95 F.4th 1136 (8th Cir. 2024) ............................................................4, 9, 24, 25

*R & M Oil & Supply, Inc. v. Saunders,*
  307 F.3d 731 (8th Cir. 2002) ............................................................19

*Ray v. Atl. Richfield Co.,*
  435 U.S. 151 (1978)............................................................26

*S.-Cent. Timber Dev., Inc. v. Wunnicke,*
  467 U.S. 82 (1984)............................................................18

*Sanofi Aventis U.S. LLC v. HHS,*
  58 F.4th 696 (3d Cir. 2023) ............................................. 6, 24-26, 29

*Strassheim v. Daily,*
  221 U.S. 280 (1911)............................................................15

*Styczinski v. Arnold,*
  141 F.4th 950 (8th Cir. 2025) ............................................................14

*Styczinski v. Arnold,*
  46 F.4th 907 (8th Cir. 2022) ............................................................2

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021)............................................................7

*U & I Sanitation v. City of Columbus,*
  205 F.3d 1063 (8th Cir. 2000) ............................................................20

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.,*
  550 U.S. 330 (2007)............................................................16

*United States v. Locke,*
  529 U.S. 89 (2000)............................................................27

*W. Lynn Creamery, Inc. v. Healy,*
  512 U.S. 186 (1994)............................................................18

*W. Platte R-II Sch. Dist. v. Wilson*,
439 F.3d 782 (8th Cir. 2006) ............................................23

*Wilson Elec., Inc. v. FAA*,
119 F.3d 724 (8th Cir. 1997) ..............................................6


STATUTES:

28 U.S.C. § 1292(a)(1)........................................................22

42 U.S.C. § 256b(a)(1)..........................................................1

REGULATIONS:

42 C.F.R. § 10.21(a)(1)...................................................4, 28

89 Fed. Reg. 28,643 (Apr. 19, 2024) ...................................4

EXECUTIVE MATERIALS:

HRSA, ADR Decision Summaries, https://tinyurl.com/4vtwjy2k
(last updated May 15, 2025) ..................................................5

HRSA, 340B Administrative Dispute Resolution (ADR),
https://tinyurl.com/yk4eu8 ....................................................5

HRSA, Office of Pharmacy Affairs, *340B OPAIS*,
https://340bopais.hrsa.gov/SearchCp .................................13

*University of Wash. v. Novartis Pharms. Corp.*, Case No. 230925-17
(Alternative Dispute Resolution June 9, 2025) ....................5

OTHER AUTHORITY:

Editorial, *A Good Idea to Cut Drug Costs*, Wall St. J., Sep. 21, 2025,
https://tinyurl.com/y3k63v3z..............................................20

## INTRODUCTION

The Dormant Commerce Clause prohibits states from interfering with interstate commerce, and the Supremacy Clause preempts attempts to alter a solely federal program. S.B. 751 does both. It reaches beyond Missouri's borders to punish out-of-state pharmaceutical manufacturers for transactions with out-of-state wholesalers that comply with federal law. Missouri does this to force out-of-state companies to further subsidize in-state covered entities, expanding the federal 340B Program in Missouri beyond the size Congress chose. S.B. 751's imposition of Missouri-specific rules burdens interstate commerce, and those burdens outweigh any local benefits, of which there are few.

The State's and the Missouri Hospital Association's (MHA's) answering briefs wrongly claim that S.B. 751 regulates drug delivery unrelated to drug price. But requiring "delivery" of a drug at the 340B price instead of at the commercial price the purchaser would otherwise pay is a state-imposed price control. Missouri's law regulates pricing, not merely delivery.

It also does so in a way that is inconsistent with federal law. Federal law requires Novartis only to "offer" its drugs to covered entities at 340B prices. 42 U.S.C. § 256b(a)(1). To that end, Novartis agrees to sell 340B-priced drugs only if the covered entity agrees to Novartis's commercially reasonable contract pharmacy policy. Courts have upheld the terms of Novartis's policy as compliant with

federal law. Missouri seeks to forbid a practice that is allowed under federal law, rendering the state law unconstitutional.

Appellees' attempt to explain away S.B. 751's regulation of out-of-state commerce is unpersuasive. This Court has twice found a Dormant Commerce Clause violation when faced with other laws similarly regulating out-of-state conduct, including one decided after Novartis's opening brief was filed. *See Association for Accessible Meds. v. Ellison*, 140 F.4th 957, 961 (8th Cir. 2025); *Styczinski v. Arnold*, 46 F.4th 907, 913 (8th Cir. 2022). Missouri ignores *Ellison* entirely, although that decision is directly on point. It concerned a state statute that, like S.B. 751, mandated the terms of out-of-state transactions between pharmaceutical manufacturers and their wholesalers. S.B. 751 effectuates the same state-level attempt to control the price of out-of-state transactions: These sales travel through a distribution chain into Missouri that starts, and ends, with out-of-state transactions between Novartis and its wholesalers. Appellees have not tried to explain how Novartis could supposedly comply with S.B. 751 without selling its drugs to wholesalers for massive discounts not required by federal law.

The second Dormant Commerce Clause problem is that S.B. 751 discriminates against out-of-State economic interests by requiring out-of-state drug manufacturers to finance in-state covered entities. Appellees' contrary arguments fall short. They identify no drug manufacturer participating in 340B that is

headquartered in Missouri, meaning S.B. 751's burden falls exclusively on out-of-state manufacturers. This one-directional forced subsidy exemplifies the unconstitutional differential treatment of in-state and out-of-state economic interests.

As Appellees do not refute, S.B. 751 creates massive "incidental burdens" on interstate commerce by imposing millions of dollars of discounts on manufacturers' out-of-state sales simply if those drugs are later resold by third parties to a Missouri covered entity's contract pharmacy. Worse, S.B. 751 applies to such out-of-state transactions regardless of where the pharmacy is located, meaning the drugs may never actually cross Missouri's borders. These burdens are compounded as more states pass their own 340B laws, forcing Novartis and its wholesalers to navigate an increasingly complex and contradictory set of rules to determine which transactions must receive 340B pricing. This is a third independent Dormant Commerce Clause infirmity.

Appellees' primary response to these burdens is to claim *Pike* balancing is dead. *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), says otherwise. Chief Justice Roberts went out of his way to emphasize that the "majority [did] not pull the plug" on *Pike* balancing, *id.* at 395 (Roberts, C.J., concurring in part), and Appellees' suggestion that this Court need not balance

S.B. 751's (significant) burdens against its (illusory) purported benefits cannot hide that this balance tilts decidedly in Novartis's favor.

On preemption, Appellees ask this Court not to reach this important legal issue despite the District Court denying a preliminary injunction on this claim. As a matter of fact and law, Novartis's preemption claim and argument differ significantly from this Court's decision in *Pharmaceutical Research & Manufacturers of America v. McClain*, 95 F.4th 1136 (8th Cir. 2024). This Court should address Novartis's distinct claim.

To the extent it views *McClain* as governing Novartis's preemption claim, en banc review is warranted. *McClain* predates three key developments that undermine its reasoning: (1) the D.C. Circuit held in *Novartis Pharmaceuticals Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024), that Congress "preserve[d]—rather than abrogate[d]—the ability of sellers to impose at least some delivery conditions," including limitations on contract pharmacies; (2) HHS, by rulemaking, extended the federal dispute resolution process to any "claims that a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price," 42 C.F.R. § 10.21(a)(1); *see also* 89 Fed. Reg. 28,643, 28,649 (Apr. 19, 2024); and (3) HRSA issued a June 2025 decision finding Novartis's contract pharmacy policy lawful and dismissing covered entities' claims that the policy resulted in overcharges, *University of Wash.*

*v. Novartis Pharms. Corp.*, Case No. 230925-17 (Alternative Dispute Resolution

June 9, 2025).[1]

S.B. 751 has caused Novartis irreparable harm and will continue to do so

unless enjoined. The equities and public interest favor Novartis. A preliminary

injunction will not impair access to any drug for pharmacies or patients in

Missouri. It would simply return the 340B Program in Missouri to the way the

program operated through 2010, when a similar single-contract-pharmacy policy

was in effect nationwide based on HRSA's guidance. This Court should reverse

the ruling below.

## ARGUMENT

## I.  NOVARTIS HAS STANDING TO CHALLENGE S.B. 751.

Missouri argues for the first time on appeal that Novartis lacks standing.

There is a reason Missouri did not make this argument below: It is plainly wrong.

Relying on a single district court's decision in a different manufacturer's

challenge, Missouri asserts (at 23) that Novartis is harmed by "the 340B Program"

itself or "the replenishment model."

---

[1] Final decisions are supposed to be posted within 120 days, HRSA, *340B Administrative Dispute Resolution (ADR)*, https://tinyurl.com/yk4eu8, but as of the date of filing, this decision has not yet been posted. HRSA, *ADR Decision Summaries*, https://tinyurl.com/4vtwjy2k (last updated May 15, 2025).

That is incorrect. S.B. 751 would preclude Novartis from enforcing the company's contract pharmacy policy, which limits covered entities without an in-house pharmacy to designating one contract pharmacy. It is undisputed that federal law permits Novartis to condition 340B-priced sales on this commercially reasonable term. *Novartis*, 102 F.4th at 461; *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 703-706 (3d Cir. 2023). Because this policy is allowed under federal law, Novartis's inability to enforce its policy is plainly not caused by the 340B Program or the replenishment model, but instead by S.B. 751 itself. Missouri recognizes as much. *See* Missouri Br. 28 (describing S.B. 751 as "prevent[ing] drug manufacturers from interfering with covered entities that want to use contract pharmacies to distribute their 340B drugs"). Novartis thus has standing on the most straightforward basis possible: It is the directly regulated party whose "activities are being limited." *Wilson Elec., Inc. v. FAA*, 119 F.3d 724, 728 (8th Cir. 1997).

Missouri is equally wrong to suggest (at 23) that Novartis's harm is limited to " 'abuse' of 340B through increased diversion and duplicative discounts." Such abuse certainly concerns manufacturers, but Novartis's injury is broader than that, namely its inability to enforce its contract pharmacy policy as a condition of any 340B sales in Missouri. Missouri's decision to override that federally permitted policy causes financial injury to Novartis: S.B. 751 requires Novartis to sell higher

quantities of its drugs at highly discounted prices to Missouri covered entities—as low as a penny per unit—than federal law requires. Opening Br. 11.[2] Monetary harms like this are well-recognized bases for standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Novartis also alleges that S.B. 751 demands changes to Novartis's conduct that Missouri cannot constitutionally require. That too is a basis for Article III standing. *Id.*

## II. THE DISTRICT COURT INCORRECTLY RULED THAT NOVARTIS IS UNLIKELY TO SUCCEED ON THE MERITS.

### A. Novartis's Dormant Commerce Clause Challenge Is Likely To Succeed.

Novartis's opening brief explained that S.B. 751 unlawfully regulates commerce "wholly outside the State," discriminates against interstate commerce in favor of in-state commerce, and imposes a burden on interstate commerce that outweighs any local benefits. *Ellison*, 140 F.4th at 960-961. S.B. 751 is unlawful for each of these three independent reasons, and Appellees do little to suggest otherwise.

---

[2] Missouri's assertion that Novartis's complaint offered "legal conclusions" is confusing. Novartis's verified complaint explained its contract pharmacy policy and that S.B. 751 prohibits Novartis from enforcing its policy in sales to 340B covered entities in Missouri. App.2, 4, 14-19, 24-26, 39(R._Doc._1, at ¶¶ 1-2, 7, 45-54, 59-61, 83, 88-89 and p.39). Because S.B. 751 mandates more discounted transactions than federal law does, "Novartis will risk violating Missouri law merely by continuing to implement a contract pharmacy policy that has already been expressly declared lawful by other federal courts applying the federal 340B law." App.6(R._Doc._1, at ¶ 14).

### 1. S.B. 751 Requires Manufacturers To Offer More 340B Discounts Than Federal Law Requires.

Appellees start their Dormant Commerce Clause defense by arguing that S.B. 751 regulates only "delivery" and that Novartis should be estopped from arguing otherwise. Missouri Br. 27; MHA Br. 22. Those assertions are mistaken.

Missouri's law requires manufacturers to deliver a "340B drug," defined to mean a drug that "has been subject to any offer for *reduced prices*" under the federal 340B program. *See* S.B. 751. There is no dispute that the statute requires manufacturers like Novartis to provide 340B's highly discounted prices on more transactions than federal law requires. Federal law allows manufacturers to impose commercially reasonable conditions on the sale of its drugs at 340B prices—like a one-contract-pharmacy policy—but S.B. 751 requires those manufacturers to recognize an unlimited number of contract pharmacies, regardless of where in the country the pharmacy is located. S.B. 751 cannot be described as addressing delivery independent of price; even before S.B. 751, these same drugs were being delivered to these same pharmacies. Opening Br. 29. The law's purpose is instead to force more discounted sales to covered entities in Missouri.

Appellees cite *McClain*'s line that the Arkansas law at issue did "not set or enforce discount pricing." Missouri Br. 27-28; MHA Br. 22. But *McClain* made that observation to explain why it rejected an argument made in that case but not presented here: that the state law required manufacturers to give 340B discounts on

sales *directly to pharmacies*. *McClain* rejected the plaintiff's argument that state law revised the federal definition of "covered entity," noting that the Arkansas law did "not require manufacturers to provide 340B pricing discounts to contract pharmacies." 95 F.4th at 1145.

Novartis has not made that argument here. And in any event, *McClain*'s preemption analysis rested on a covered entity retaining title to drugs purchased at the 340B price and physically delivered to a contract pharmacy, and on a contract pharmacy acting as a covered entity's agent in dispensing the 340B-discounted drug to pharmacy customers who qualified as patients of the covered entity. *Id.* at 1142; Missouri Br. 15. Arguments predicated on different facts "were not before the Court" in *McClain*. *AstraZeneca Pharms. LP v. Harris*, No. 4:24-CV-268 (E.D. Ark. Sep. 30, 2025), ECF No. 141-2 at 12.

The factual allegations in Novartis's verified complaint differ significantly from the scenario described in *McClain*. The replenishment model relies on after-the-fact claims data to determine whether pharmacy transactions may have involved a covered entity's patient. App.4(R._Doc._1 at 2 ¶ 3). After the third-party administrator flags the transaction, the pharmacy "replenishes" their stock with the same drug at the 340B discount. App.3(R._Doc._1 at 3 ¶ 4). That 340B-priced unit is dispensed to the next customer, regardless of whether that customer has any relationship with the covered entity. *Id.* Covered entities do not and

cannot maintain title to 340B-discounted drugs that are mixed in with a pharmacy's general stock and sold to customers who are not the covered entities' patients. Covered entities do not order drugs for shipment to contract pharmacies with the expectation that the discounted drug will necessarily be dispensed to hospital patients. And contract pharmacies cannot serve as the covered entity's agent in transactions with non-patients.

Missouri's estoppel argument (at 31-34) is equally off-base. Novartis's position before the D.C. Circuit—like here—was that federal law allows Novartis to put reasonable limits on its obligation to deliver 340B-priced drugs to contract pharmacies. Appellee Br., *Novartis v. Johnson*, 2022 WL 2072941, at *25-30 (D.C. Circ. June 8, 2022). Those delivery restrictions are not independent of the 340B price, they are *a condition of a sale at that discounted price*. If a covered entity does not agree to abide by Novartis's contract pharmacy policy, there is no sale to that covered entity at the 340B price. Rather than being "a 180°" change, Missouri Br. 32, Novartis's argument here remains the same, and maps directly onto the D.C. Circuit's holding: Congress "preserve[d]—rather than abrogate[d]—the ability of sellers to impose at least some delivery conditions," including a limitation on contract pharmacies. *Novartis*, 102 F.4th at 460.

## 2. S.B. 751 Likely Violates The Dormant Commerce Clause In Three Independent Ways.

### i. S.B. 751 directly regulates commerce taking place wholly outside of Missouri.

S.B. 751 regulates out-of-state transactions between manufacturers and wholesalers by requiring manufacturers to sell more 340B-discounted drugs to wholesalers than required by federal law. This violates the Dormant Commerce Clause's prohibition on state laws that "directly regulate[] transactions which take place across state lines." *Edgar v. MITE Corp.*, 457 U.S. 624, 641 (1982).

Just months ago, in *Ellison*, this Court affirmed the district court decision cited in Novartis's opening brief (at 35, 37, 39). *Ellison* held that a Minnesota law prohibiting out-of-state pharmaceutical manufacturers from setting certain prices on generic drugs sold, dispensed, or delivered to consumers within Minnesota violated the Dormant Commerce Clause. 140 F.4th at 959-960. This Court explained that although the manufacturers sold their products to out-of-state wholesalers, and not directly to consumers within Minnesota, manufacturers could still violate the statute by setting an "excessive" price in the sale to the wholesalers. *Id.* The manufacturers argued this was a price-control statute, and this Court agreed. *Id.* at 960-961. And because the regulated transactions were between out-of-state manufacturers and wholesalers, this Court concluded the law "*directly*

regulate[s] transactions which take place … wholly outside the State," in violation of the Dormant Commerce Clause. *Id.* at 961 (citation omitted).

*Ellison* resolves this case. Like the law in *Ellison*, S.B. 751 regulates out-of-state transactions between out-of-state manufacturers and out-of-state wholesalers. Opening Br. 33-35. Missouri has no answer to why *Ellison* does not control other than to repeat the (factually incorrect) refrain that S.B. 751 does not mandate the price of drugs delivered to contract pharmacies. Missouri Br. 51 (addressing *Association for Accessible Meds. v. Frosh*, 887 F.3d 664 (4th Cir. 2018), a similar case). Missouri even admits that 340B discount requests "come[] to the manufacturers through wholesalers." *Id.* This manufacturer-wholesaler transaction takes place outside of Missouri. Opening Br. 21-22.

Just as the Minnesota statute "insist[ed] that out-of-state manufacturers sell their drugs to wholesalers for a certain price," so too does S.B. 751. *Ellison*, 140 F.4th at 961. Missouri's law gives Missouri covered entities the right to enter into unlimited contract pharmacy arrangements to obtain 340B pricing. The law thus requires manufacturers to provide additional 340B-discounted drugs to wholesalers so that wholesalers can arrange for delivery of those discounted drugs to contract pharmacies. Opening Br. 21-22. It should go without saying that a wholesaler cannot provide 340B-priced drugs to contract pharmacies unless the manufacturer

has given the wholesaler a discount, too—otherwise, the wholesaler would lose money on the sale. *See* App.28-29(R._Doc._1 at 28-29 ¶ 96).

In *Ellison*, "Minnesota concede[d] that a Colorado manufacturer would be penalized if it sold drugs to a New Jersey distributor at prices above those proscribed by the Act and those drugs ended up in Minnesota." 140 F.4th at 960. Missouri effectively admitted the same scenario would occur under S.B. 751, but justified that result by claiming S.B. 751 only impacts out-of-state conduct that eventually affects Missouri. App.124-125(R._Doc._32 at 20-21). This Court rejected that position in *Ellison*. 140 F.4th at 960.

Appellees' arguments otherwise fall flat. *First,* both Appellees assert that S.B. 751 does not apply extraterritorially, including to contract pharmacies "outside Missouri." MHA Br. 32-33; Missouri Br. 36-37. That concession may surprise Missouri covered entities—which have contracted with *nearly 2,000* pharmacies "outside Missouri" and spread across Florida, Texas, Hawaii, Pennsylvania, New York, California, Arizona, Nevada, Tennessee, and many other states. All of these arrangements are detailed in HRSA's public database of contract pharmacies. *See* HRSA, Office of Pharmacy Affairs, *340B OPAIS*, https://340bopais.hrsa.gov/SearchCp.

This argument also ignores that the manufacturer-wholesaler transaction occurs entirely out of state—and if S.B. 751 does not regulate that transaction, it is

unclear what it does regulate, given that manufacturers typically do not directly sell to covered entities. Missouri defies reality by suggesting (at 37) that manufacturers could somehow comply with the state law while rejecting their wholesalers' refund requests. S.B. 751 on its face targets manufacturers, and manufacturers sell their products and provide discounts in these out-of-state transactions with wholesalers. Accordingly, the law has the "specific extraterritorial effect of controlling the price of wholly out-of-state transactions." *Ellison*, 140 F.4th at 961. This Court has twice found Dormant Commerce Clause violations in similar situations. *See id.* at 960; *Styczinski v. Arnold*, 141 F.4th 950, 956 (8th Cir. 2025).[3]

*Second*, Appellees over-read *Pork Producers* to say that states do not unconstitutionally regulate out-of-state conduct if the regulated conduct is "intended to produce" an in-state effect. Missouri Br. 38; *see* MHA Br. 32 (arguing that "critical components of 340B drug transactions" occur within Missouri). What *Pork Producers* actually held was that there is no per se rule "forbidding enforcement of state laws that have the '*practical* effect of controlling commerce outside the State.'" 598 U.S. at 371 (emphasis added). In so holding,

---

[3] MHA questions (at 31-32) whether *Styczinski* remains good law after *Pork Producers*. But earlier this year, the Eighth Circuit *again* affirmed that the statute at issue "unconstitutionally control[led] wholly out-of-state commerce." *Styczinski*, 141 F.4th at 953.

*Pork Producers* cited favorably to *Frosh*, 887 F.3d at 669, which invalidated a drug-pricing statute using reasoning nearly identical to *Ellison*. *Pork Producers*, 598 U.S. at 374.[4] In any event, *Ellison* rejected that extraterritorial regulation is acceptable simply because "the drugs must eventually end up" in the state to trigger liability. 140 F.4th at 960. That is, there is a difference between direct regulation of out-of-state transactions and incidental, second-order effects of in-state regulation. This is the former situation, *Pork Producers* the latter.

*Third*, Appellees assert that *Pork Producers* limits the universe of impermissible extraterritorial effects to tariffs and certain price controls. Missouri Br. 40; MHA Br. 30-31. This purported distinction does not help either, because S.B. 751 is a price-control statute in the same way the Minnesota law in *Ellison* and the "nearly identical Maryland law" in *Frosh* were. *Ellison*, 140 F.4th at 960; *Frosh*, 887 F.3d at 672. Besides, this claim is wrong on its face. *Edgar* was about regulation of securities transactions, not tariffs or price controls, 457 U.S. at 626-627, and *Pork Producers* cited it approvingly, 598 U.S. at 376 n.1.

---

[4] Nothing about *Pork Producers*' citation to *Strassheim v. Daily*, 221 U.S. 280 (1911), helps Appellees. *Contra* Missouri Br. 38. *Pork Producers* cited *Strassheim* for the irrelevant concept that one state cannot prosecute another state's citizen for out-of-state actions not intended to have a detrimental effect in the prosecuting state. 598 U.S. at 375-376.

*Fourth*, neither of MHA's additional arguments hold up. Novartis's claim is not based on the "*per se* rule" rejected in *Pork Producers*. *Contra* MHA Br. 31. S.B. 751 is prohibited because it *directly* regulates commerce taking place wholly outside of Missouri. Opening Br. 38. And MHA's assertion (at 37) that Novartis had to demonstrate discrimination as part of its extraterritoriality claim fails under *Pork Producers*. The Supreme Court expressly analyzed plaintiffs' extraterritoriality argument separate from "antidiscrimination principle[s]." *Pork Producers*, 598 U.S. at 371. *Ellison* confirms that "discrimination is not required when a statute has the specific extraterritorial effect of controlling the price of wholly out-of-state transactions." 140 F.4th at 961.

### ii. S.B. 751 discriminates against out-of-state economic interests.

S.B. 751 exemplifies the "simple economic protectionism" that the Dormant Commerce Clause prohibits because it provides "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338, 343 (2007) (citation omitted).

S.B. 751 is designed to increase covered entities' overall profits by boosting how many 340B-priced drugs they can buy. Missouri Br. 6; MHA Br. 42. This profit boost does not come from state funds, but from forcing out-of-state manufacturers to hand Missouri covered entities millions of dollars per year in

discounts not required by federal law.  Opening Br. 5, 56.  Missouri cannot "saddle those outside the State with the entire burden" of effectuating its policy goals.  *City of Phila. v. New Jersey*, 437 U.S. 617, 629 (1978).  Such efforts unconstitutionally "favor in-state economic interests over out-of-state interests," *Granholm v. Heald*, 544 U.S. 460, 487 (2005) (quotation omitted), and are "per se invalid," *Oregon Waste Sys., Inc. v. Department of Env't Quality of State of Or.*, 511 U.S. 93, 99 (1994).

Missouri claims (at 42-43) that S.B. 751 applies equally "to drug manufacturers whether they are located in-state or out-of-state."  But even if some local businesses were subject to the law, that would not justify discriminating against out-of-state businesses.  *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 276 (1988).  And here, S.B. 751 does not "treat[] in-state and out-of-state manufacturers the same," Missouri Br. 44, because no in-state manufacturers exist.[5]  The regulatory burden falls *entirely* on out-of-state entities.

Appellees mistakenly assert that the law is permissible because the disadvantaged out-of-state businesses (manufacturers) do not compete with the hospitals, clinics, pharmacies, and third-party administrators who pocket the subsidies.  Missouri Br. 43-44; MHA Br. 37-38.  Direct competition is not

---

[5] Missouri refers to Bayer, Pfizer, GlaxoSmithKline, and Mallinckrodt as in-state manufacturers.  Missouri Br. 42.  But Bayer is headquartered in Germany, Pfizer in New York, GlaxoSmithKline in the United Kingdom, and Mallinckrodt in Ireland.

required, however.  Opening Br. 40-42.  "[O]ver 150 years" of Supreme Court jurisprudence has "rightly concluded that the imposition of a differential burden *on any part of the stream of commerce—from wholesaler to retailer to consumer*—is invalid, because a burden placed at any point will result in a disadvantage to the out-of-state" entity.  *W. Lynn Creamery, Inc. v. Healy,* 512 U.S. 186, 202 (1994).  Appellees admit all these entities are part of the same "pharmaceutical supply chain."  MHA Br. 39.  This is sufficient.  *W. Lynn Creamery*, 512 U.S. at 202.

MHA's additional arguments are meritless.  First, it asserts in two conclusory sentences (at 40) that Congress somehow *authorized* Missouri to discriminate against out-of-state interests.  Such "congressional intent must be unmistakably clear," *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 91 (1984), but MHA identifies nothing to support this claim.  Second, Missouri cannot burden interstate commerce by referencing "health and safety," MHA Br. 46, especially where the statute regulates only a subset of drug sales rather than being a traditional health-and-safety regulation, *infra* p. 27.  Even for true health-and-safety regulations, states' authority is restricted to within their borders.  *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989).  Finally, MHA says (at 41) that Novartis "knew[] or should have known" it would be subject to state regulation and can avoid that regulation by withdrawing from Medicare and Medicaid.  This ignores

that nothing in the 340B statute refers to state regulation, and no state attempted to regulate the scope of the 340B Program for its first three decades of existence.

### iii. S.B. 751 fails Pike balancing.

S.B. 751 fails *Pike*'s balancing test because it imposes "a burden on interstate commerce that is clearly excessive in relation to the putative local benefits." *Entergy Ark., LLC v. Webb*, 122 F.4th 705, 711 (8th Cir. 2024) (quotation marks omitted), *cert. denied,* 145 S. Ct. 2849 (2025). *Pork Producers* did not overturn *Pike* balancing. To the contrary: "six Justices … affirmatively retain[ed] the longstanding *Pike* balancing test." *Pork Producers*, 598 U.S. at 403 (Kavanaugh, J., concurring in part). This Court acknowledged *Pike*'s continuing vitality last year. *Entergy Ark.*, 122 F.4th at 711.

On the burden side, S.B. 751 imposes astronomical costs on drug manufacturers, which will grow larger as more states follow Missouri's lead. Opening Br. 43-44; *R & M Oil & Supply, Inc. v. Saunders*, 307 F.3d 731, 736 (8th Cir. 2002). Novartis alone will lose millions of dollars per year in forced sales at 340B prices not required by the 340B Program. App.92(R._Doc._9-1 at 4). Missouri's law also contributes to a patchwork of state regulatory schemes that change the scope of the 340B Program in different ways in different states, altering the balance Congress struck and disincentivizing program participation. *Ellison*, 140 F.4th at 961; *R & M Oil*, 307 F.3d at 735. These types of "broader, market-

wide *consequences* of compliance" are "a burden on interstate commerce." *Pork Producers*, 598 U.S. at 397 (Roberts, CJ., concurring in part). The Supreme Court has found a similar statute's "nationwide reach" an impermissible burden. *Edgar*, 457 U.S. at 643.

Local benefits do not justify these burdens. Opening Br. 45. Missouri's interest in "financing" its covered entities is not a "local interest that can justify discrimination against interstate commerce." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 393 (1994); *U & I Sanitation v. City of Columbus*, 205 F.3d 1063, 1070 (8th Cir. 2000). If Missouri thinks "special financing is necessary" for its covered entities, it may "subsidize [those entities] through general taxes or municipal bonds." *Carbone*, 511 U.S. at 394. Far from "unreasonable," MHA Br. 47, this is the ordinary course for states to pursue their policy goals. *Carbone*, 511 U.S. at 394.

In any event, there is good reason to question whether S.B. 751 serves a public purpose. As Appellees concede, S.B. 751 is unconcerned with patient prices. Missouri Br. 52 ("[C]overed entities retaining discounts is well within the purpose of the 340B program."); MHA Br. 45 ("[T]he 340B statute is not a *patient*-discount law."); *see also* Editorial, *A Good Idea to Cut Drug Costs*, Wall St. J., Sep. 21, 2025, https://tinyurl.com/y3k63v3z (reporting that hospitals have used 340B savings for financial portfolios, to purchase "naming rights to

stadiums," and to "launch[] a film company"). The law increases the spread that covered entities can split with out-of-state major pharmacies like Walgreens or CVS and out-of-state third-party administrators—with no cost savings for local patients. Opening Br. 46-47.

Appellees' other *Pike* balancing arguments do not hold up. Missouri (at 48- 49) offers a bizarre opt-out approach under which Novartis is burdened only if it wants to avoid Missouri markets altogether. No case endorses such an approach. Missouri faults Novartis for making a new "stratification" argument on appeal, *id.* at 49-50, but Novartis did no such thing. Novartis's argument, below and here, is that contending with a patchwork of state laws setting state-by-state rules for how the federal 340B Program operates is a burden. Opening Br. 44; App.30-31(R._Doc._1 at 30-31 ¶¶ 100, 102).

On the patchwork, Missouri says (at 50) that *Pork Producers* limits these concerns to "the arteries of commerce, on trucks, trains, and the like." But the Supreme Court has applied "*Pike* to state laws that neither concerned transportation nor discriminated against commerce," *Pork Producers*, 598 U.S. at 399 (Roberts, CJ., concurring in part), if "several States will enact different regulations" and impair "national uniformity," *Exxon Corp. v. Governor of Md.,* 437 U.S. 117, 128-129 (1978). *Edgar*, for example, was not about trucks or trains. 457 U.S. at 626-627. Missouri likewise ignores *CTS Corp. v. Dynamics Corp. of*

*America*, 481 U.S. 69 (1987), which affirmed the Supreme Court's history of "invalidat[ing] statutes that may adversely affect interstate commerce by subjecting activities to inconsistent regulations." *Id.* at 88 (collecting cases) (cited at Opening Br. 44). And MHA leaves out (at 42) that *CTS* upheld the state law because it regulated corporations established *within the state*. 481 U.S. at 72, 89. Missouri's law does the opposite: It regulates commerce *outside* its borders.

## B.    S.B. 751 Is Preempted By Federal Law.

### 1.    This Court Has Jurisdiction Over Novartis's Preemption Claim.

Novartis appealed the District Court's order denying preliminary injunctive relief, which addressed the merits of Novartis's preemption claim. App.316-329(R._Doc._78). This Court has jurisdiction over all interlocutory "orders" "refusing … injunctions," not particular claims within the order. 28 U.S.C. § 1292(a)(1). The entire order refusing relief therefore falls within this Court's interlocutory jurisdiction—including the denial of relief based on Novartis's preemption claim.

Appellees' mootness arguments are wrong. Missouri Br. 2-3, 18; MHA Br. 47-48. Mootness exists where "it is impossible for a court to grant any effectual relief whatsoever." *In re VeroBlue Farms USA, Inc.*, 6 F.4th 880, 888 (8th Cir. 2021) (citation omitted). Novartis's preemption claim is not moot because even after the District Court dismissed it, Novartis could appeal and obtain

the same relief. MHA invokes cases where preliminary injunctions were mooted by subsequent final orders—a distinct scenario not present here. *W. Platte R-II Sch. Dist. v. Wilson*, 439 F.3d 782, 784 (8th Cir. 2006); *Koppula v. Jaddou*, 72 F.4th 83, 84 (5th Cir. 2023). And *Cuviello v. City of Belmont*, No. 23-16135, 2024 WL 2269273, at *1 n.1 (9th Cir. May 20, 2024), is inapposite because it applied a Ninth Circuit rule that dismissals without prejudice are unappealable. There is no analogous rule in the Eighth Circuit, nor was Novartis given the opportunity to amend its complaint.

This Court also has pendent appellate jurisdiction over the February 13 dismissal order. That order is "inextricably intertwined" with the order denying injunctive relief because the two orders are "coterminous" and "appellate resolution of the collateral appeal necessarily resolves the pendent claim as well." *Kincade v. City of Blue Springs*, 64 F.3d 389, 394 (8th Cir. 1995) (citation omitted). Both addressed the same constitutional claim and "require application of the same constitutional test," *id.* at 395—whether S.B. 751 is preempted by federal law—and contained near identical analysis. *Compare* App.301-315(R._Doc._77), *with* App.316-329(R._Doc._78). Resolution of Novartis's appeal of the preliminary injunction order will "necessarily resolve" whether the District Court erred in dismissing its preemption claim. *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013).

### 2. Missouri Cannot Change The Terms Of Novartis's Participation In The Federal 340B Program.

Federal law preserves manufacturers' discretion to impose commercially reasonable limits on offers to sell 340B-priced drugs, including by limiting how many contract pharmacies it recognizes per covered entity. Opening Br. 48; *Novartis*, 102 F.4th at 460; *Sanofi*, 58 F.4th at 705. State laws that override this federal grant of discretion to manufacturers override the balance Congress struck and are preempted. Opening Br. 48-50.

Novartis's preemption argument differs legally and factually from *McClain*. The plaintiff there argued that 340B preempted an Arkansas law "because Congress intended to create a 'closed system' with the statute" and the Arkansas law "add[ed] pharmacies to the enumerated list of covered entities eligible to receive 340B pricing on drugs." 95 F.4th at 1144. Novartis presents a different argument: State laws cannot limit the range of options that Congress provides regulated entities in the 340B Program, which is Spending Clause legislation. Opening Br. 50; *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 219 (2022) ("Spending Clause legislation operates based on consent," and "[r]ecipients cannot 'knowingly accept' the deal with the Federal Government unless they '[] clearly understand … the obligations' that would come along with doing so.") (citation omitted); *Forest Park II v. Hadley*, 336 F.3d 724, 733 (8th Cir. 2003)

(rejecting "[a] further requirement imposed by a state statute" on top of a Spending Clause program).

Novartis's claim factually differs from *McClain*. It is based on the replenishment model, which is the predominant pricing model used by covered entities in Missouri. App.17(R._Doc._1 at 17 ¶ 53). Covered entities using the replenishment model do not acquire and retain title to drugs purchased at 340B prices because those drugs are delivered to pharmacies and intermingled with the pharmacies' regular stock of that same drug, and contract pharmacies do not act as agents of the covered entity. App.10, 17(R._Doc._1 at 10, 17 ¶¶ 33, 53). The factual basis for *McClain*'s holding rested on title and agency principles not applicable here. 95 F.4th at 1142, 1144.

Missouri disputes (at 61-62) that *Novartis* and *Sanofi* establish manufacturers' right to impose conditions on their 340B offers. But that is *exactly* what the Third and D.C. Circuits held. *Novartis*, 102 F.4th at 460; *Sanofi*, 58 F.4th at 704. Manufacturers' commercially reasonable policies, including a contract pharmacy policy like Novartis's, are permissible under federal law. *Id.*

Neither *Novartis* nor *Sanofi* authorizes states to "act in [Congress's] silence." Missouri Br. 62; MHA Br. 52. *Novartis* expressly held that this "silence preserves—rather than abrogates—the ability of sellers to impose at least some delivery conditions." *Novartis*, 102 F.4th at 460. *Sanofi* likewise held that HHS

"overstepped the statute's bounds" by trying to force drug manufacturers to "deliver discounted Section 340B drugs to an unlimited number of contract pharmacies." *Sanofi*, 58 F.4th at 707. Just as HHS, which has exclusive authority to enforce the 340B Program, cannot force manufacturers to recognize these pharmacy arrangements when Congress did not, states cannot either. Congress assigned states no role in determining the 340B Program's operations or mandates.

Missouri's claim (at 62) that S.B. 751 "assists in fulfilling the purpose of 340B" is wrong too. Even if Missouri were right (and it is not) that S.B. 751 is "aim[ed] precisely at the same ends" as the 340B Program, such state laws can still frustrate congressional intent. *Ray v. Atl. Richfield Co.*, 435 U.S. 151, 165 (1978); *accord Forest Park II*, 336 F.3d at 732 (Minnesota law with "the same underlying purpose" as federal law still "fl[ies] in the face of the Constitution's Supremacy Clause").

The fundamental defect with Missouri's theory is that a state does not "assist" the 340B Program by making it bigger than Congress intended. Making manufacturers provide far more discounted drugs—thus increasing the cost to participate in Medicaid and Medicare Part B—and establishing new enforcement mechanisms undercuts the nationwide unity Congress intended to create. "Far from assisting HHS, suits by [states] would undermine the agency's efforts to administer both Medicaid and § 340B harmoniously and on a uniform, nationwide

basis." *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 120 (2010). Congress carefully balanced 340B obligations to ensure manufacturers would agree to participate in the 340B Program—and by extension Medicaid and Medicare. By undoing that balance, S.B. 751 interferes with the methods Congress chose to achieve the 340B Program's goals. *See International Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987).

Finally, the presumption against preemption is inapplicable. *Contra* Missouri Br. 62-63. S.B. 751 is not a law of general applicability. It does not regulate health and safety, drug distribution to patients, or pharmacy practice. It regulates a subset of drugs and pharmacies, i.e., only those drugs a covered entity wants to purchase through the federal 340B Program and only those pharmacies a covered entity wants to use to expand its take from the 340B Program in Missouri. There is no history of state regulation of the 340B Program's size. *See Forest Park II*, 336 F.3d at 731 (explaining that "federal laws and programs" are not "a field traditionally regulated by the states").

Federal law created the program, governs its details, and enforces its obligations to the exclusion of all others. *Astra*, 563 U.S. at 119-122. "No artificial presumption" against preemption applies in these circumstances. *United States v. Locke*, 529 U.S. 89, 108 (2000). The 340B statute creates "inherently federal" relationships that "originate[] from, [are] governed by, and terminate[]

according to federal law." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001).

## III. THE REMAINING INJUNCTION FACTORS FAVOR NOVARTIS.

Novartis faces the irreparable harms of irrecoverable financial losses and civil and criminal penalties. Opening Br. 56-58. None of Appellees' scattershot responses show otherwise.

Appellees seem to agree that unrecoverable financial losses constitute irreparable harm. There is no evidence of any contract with a covered entity that it could "bake" recovery into. *Contra* Missouri Br. 57. *Astra* bars Novartis from later using unjust-enrichment claims to recover improperly claimed 340B discounts from covered entities. 563 U.S. 110 (2011); *contra* Missouri Br. 57; MHA Br. 53. And Novartis cannot "recover for wrongful discounts under the 340B statute" either, Missouri Br. 57, because the statute's enforcement mechanism is reserved for diversion and duplicate-discount claims. 42 C.F.R. § 10.21(a)(2).[6]

The risk of a state enforcement action is also irreparable harm, no matter whether Missouri's appellate counsel thinks such action is "unlikely." Missouri Br. 56-57; *see* Opening Br. 57. Contrary to Missouri's assertion otherwise

---

[6] Novartis's derivative harms, namely the loss of research and development opportunities, are also irreparable. MHA's case is outdated. *Compare* MHA Br. 53 (citing *Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1578 (Fed. Cir. 1996)), *with Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1011 (Fed. Cir. 2009).

(at 54- 55), Novartis properly raised the threat of civil and criminal liability below. App.93(R._Doc._9-1 at 5).

The balance of the equities and public interest favor Novartis. Opening Br. 58. Missouri suffers no harm from a preliminary injunction preventing enforcement of an invalid law, and the public's interest in enforcing duly enacted laws does not extend to unconstitutional statutes. *Ellison*, 140 F.4th at 961-962; *contra* Missouri Br. 58; MHA Br. 55-56. Nor should the Court be swayed by the incorrect assertion that granting injunctive relief would mean "covered entities will lack access to 340B drugs," MHA Br. 56, or that Novartis is "opportunistically … undermin[ing]" the 340B Program, Missouri Br. 58. That is not remotely true. The 340B Program would operate in Missouri exactly as it did before 2010 when HRSA had the same policy that Novartis now does: "Each [covered entity] can still buy and dispense unlimited discounted drugs by having them delivered to an in-house or [permitted] contract pharmacy." *Sanofi*, 58 F.4th at 703. And critically, patients would not be impacted, since the Missouri statute does not alter patient access to drugs or to discounted pricing. There is nothing "opportunistic[]" about enforcing a contract pharmacy policy that federal law purposely permits.

## CONCLUSION

For the foregoing reasons, this Court should reverse the ruling below and direct entry of a preliminary injunction.

Respectfully submitted,

/s/ Jessica L. Ellsworth
JESSICA L. ELLSWORTH
SUSAN M. COOK
MATTHEW J. HIGGINS
SAM H. ZWINGLI
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com

October 8, 2025

*Counsel for Plaintiff-Appellant*

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32 and Eighth Circuit Rule 28A because it contains 6,493 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman 14-point font.

3.      The electronic version of this brief has been scanned for viruses and has been found to be virus free.

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the Court's CM/ECF system on October 8, 2025. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth