No. 25-1619

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

NOVARTIS PHARMACEUTICALS CORPORATION,
Plaintiff-Appellant,

v.

CATHERINE L. HANAWAY, *in her official capacity as Attorney General of the State of Missouri*; JAMES L. GRAY, *in his official capacity as President of the Missouri Board of Pharmacy*; CHRISTIAN S. TADRUS, *in his official capacity as Vice President of the Missouri Board of Pharmacy*; DOUGLAS R. LANG, *in his official capacity as a member of the Missouri Board of Pharmacy*; COLBY GROVE, *in his official capacity as a member of the Missouri Board of Pharmacy*; ANITA K. PARRAN, *in her official capacity as a member of the Missouri Board of Pharmacy*; TAMMY THOMPSON, *in her official capacity as a member of the Missouri Board of Pharmacy*; and DARREN HARRIS, *in his official capacity as a member of the Missouri Board of Pharmacy*,
Defendants-Appellees,

MISSOURI HOSPITAL ASSOCIATION; MISSOURI PRIMARY CARE ASSOCIATION,
Intervenors-Appellees.

On Appeal from the United States District Court
for the United States District Court for the Western District of Missouri

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF APPELLANT AND REHEARING EN BANC**

[*counsel listed on inside cover*]

BRETT A. SHUMATE
*Assistant Attorney General*

*Of Counsel:*

ELIZABETH C. KELLEY
*Deputy General Counsel*
*U.S. Department of Health and*
*Human Services*

MICHAEL S. RAAB
MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-0211*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................ii

INTRODUCTION AND INTEREST OF AMICUS CURIAE................................1

STATEMENT ..................................................................................2

      A.    The 340B Program ............................................................2

      B.    Factual Background and Prior Proceedings ..............................4

ARGUMENT ..................................................................................5

I.    The panel's decision conflicts with decisions of the Supreme Court and of other circuits. ................................................................................5

II.    This case presents a question of exceptional importance. ...................12

CONCLUSION................................................................................14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**

*Astra USA, Inc. v. Santa Clara County,*
    563 U.S. 110 (2011) ............................................................ 2, 9

*Boeing Co. v. Movassaghi,*
    768 F.3d 832 (9th Cir. 2014) ............................................. 7

*Dawson v. Steager,*
    586 U.S. 171 (2019) ........................................................... 8

*McCulloch v. Maryland,*
    17 U.S. (4 Wheat.) 316 (1819) ......................................... 6

*Novartis Pharms. Corp. v. Hanaway,*
    No. 25-1619, 2026 WL 1892141 (8th Cir. July 1, 2026) ..................... 5, 10

*Novartis Pharms. Corp. v. Johnson,*
    102 F.4th 452 (D.C. Cir. 2024) ......................................... 4, 6

*Pharmaceutical Care Mgmt. Ass'n v. Mulready,*
    78 F.4th 1183 (10th Cir. 2023) ......................................... 5

*Pharmaceutical Rsch. & Mfrs. of Am. v. McClain,*
    95 F.4th 1136 (8th Cir. 2024) .......................................... 10, 11

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.,*
    547 U.S. 47 (2006) ........................................................... 10

*Sanofi Aventis U.S. LLC v. HHS,*
    58 F.4th 696 (3d Cir. 2023) ............................................. 4, 6

*United States v. Washington,*
    596 U.S. 832 (2022) ...................................................... 5, 6, 7

*United States v. California,*
    921 F.3d 865 (9th Cir. 2019) ........................................... 8

**Statutes:**

Veterans Health Care Act of 1992,
Pub. L. No. 102-585, tit. VI, § 602, 106 Stat. 4943, 4967–71
(codified at 42 U.S.C. § 256b) ...................................................................... 2
42 U.S.C. § 256b ...................................................................................... 1, 6
42 U.S.C. § 256b(a)(1) .......................................................................... 1, 2, 6
42 U.S.C. § 256b(a)(3) ............................................................................... 2
42 U.S.C. § 256b(a)(4) ............................................................................... 2
42 U.S.C. § 256b(a)(5) ............................................................................... 2
42 U.S.C. §§ 256b(d)(1)(B)(vi) ................................................................... 3
42 U.S.C. § 256b(d)(2)(B)(v) ..................................................................... 3
42 U.S.C. § 256b(d)(3) .............................................................................. 3

10 U.S.C. § 983(b) ..................................................................................... 10

28 U.S.C. § 517 ........................................................................................... 1

42 U.S.C. § 256b ...................................................................................... 1, 6

42 U.S.C. § 1396r-8 .................................................................................... 13

42 U.S.C. § 1396r-8(a)(1) ........................................................................... 12

42 U.S.C. § 1396r-8(b)(4)(B)(i) ................................................................... 3

42 U.S.C. § 1396r-8(b)(4)(B)(v) ................................................................... 3

42 U.S.C. §§ 1320f–1320f-7 ....................................................................... 13

Mo. Rev. Stat. § 376.414 ............................................................................. 4

Mo. Rev. Stat. § 376.414(2) ...................................................................... 4, 5

**Regulations:**

42 C.F.R. § 10.21(a)(1) ................................................................................ 9

42 C.F.R. §§ 10.20-10.24 ............................................................................ 3

**Rule:**

Federal Rule of Appellate Procedure 29(b) ..................................................... 1

**Other Authorities:**

75 Fed. Reg. 10,272, 10,273 (Mar. 5, 2010) .................................................. 4

Bausch Health Cos.,
  Quarterly Report (Form 10-Q) (Oct. 30, 2025).......................................... 12

National Ass'n of Cmty. Health Ctrs.,
  *A Year in Review: State Legislative Trends in 340B in 2025* (Oct. 17, 2025),
  https://perma.cc/8V7G-HMLX............................................................. 12

## INTRODUCTION AND INTEREST OF AMICUS CURIAE

Pursuant to 28 U.S.C. § 517 and Federal Rule of Appellate Procedure 29(b), the United States files this brief as amicus curiae in support of appellant and rehearing en banc. The federal government has a strong interest in the proper functioning of the drug-discount program established by Section 340B of the Public Health Service Act, 42 U.S.C. § 256b. The Missouri law at issue here interferes with and obstructs it.

Section 340B requires pharmaceutical manufacturers participating in Medicare Part B and Medicaid to sign agreements with the Secretary of Health and Human Services (HHS), under which they agree to offer to sell drugs at reduced prices to certain healthcare providers known as "covered entities." 42 U.S.C. § 256b(a)(1). In regulating manufacturers' participation in the 340B program, Missouri seeks to supplement the regulatory scheme Congress created.

States may not discriminate against those who participate in a federal scheme; such laws inhibit the federal government's interest in promoting participation in its programs. Nor may States interfere with the scheme that Congress created to enforce Section 340B's requirements. Yet Missouri's law requires manufacturers who participate in the 340B Program—and only those manufacturers—to bear additional burdens imposed not by Congress but by Missouri. And the State's law supplants the

enforcement mechanism that Congress authorized. For those reasons, the Supremacy Clause forbids its enforcement. In concluding otherwise, the panel diverged from precedents of the Supreme Court and of other circuits. Rehearing en banc is warranted.

## STATEMENT

### A.    The 340B Program

Under Section 340B, pharmaceutical manufacturers participating in Medicaid and in Medicare Part B (which covers physician-administered drugs) "must offer discounted drugs to covered entities, dominantly, local facilities that provide medical care for the poor." *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 115 (2011); *see* 42 U.S.C. § 256b(a)(1), (3), (4). Covered entities include, for example disproportionate-share hospitals, certain children's hospitals, and rural referral centers. 42 U.S.C. § 256b(a)(4).

Section 340B directs HHS to enter into pricing agreements providing that manufacturers must offer drugs to covered entities at or below a specified ceiling price. 42 U.S.C. § 256b(a)(1). Section 340B also imposes a pair of substantive requirements on covered entities, prohibiting (1) duplicate discounts and (2) the diversion of drugs purchased under the 340B Program. 42 U.S.C. § 256b(a)(5).

Congress authorized HHS to impose sanctions against covered entities—including monetary penalties, removal from the 340B Program, and referral to other federal agencies for appropriate action—for diversion, duplicate discounts, or other violations of Program requirements. 42 U.S.C. § 256b(d)(2)(B)(v). Congress amended Section 340B to expressly require HHS to create an administrative dispute resolution process under which disputes between manufacturers and covered entities may be resolved through a 340B administrative process. *See id.* § 256b(d)(3); 42 C.F.R. §§ 10.20-10.24. If a manufacturer fails to comply with its 340B requirements, HHS may impose civil penalties and may also terminate the manufacturer from Medicaid. *See* 42 U.S.C. §§ 256b(d)(1)(B)(vi), 1396r-8(b)(4)(B)(i), (v).

2. Many covered entities rely on outside pharmacies, known as "contract pharmacies," to dispense to their patients the drugs purchased at the discounted prices. Congress gave HHS specific rulemaking authority with respect to only limited aspects of the 340B Program that do not include these contract-pharmacy arrangements. However, HHS periodically has issued nonbinding guidelines on that topic, including in 2010, when it indicated that covered entities could use multiple contract pharmacies as long as the covered entities complied with guidelines to prevent duplicate discounts

3

and diversion through adhering to policies regarding the definition of a "patient" of a covered entity. 75 Fed. Reg. 10,272, 10,273 (Mar. 5, 2010).

Beginning in 2020, many of the country's largest drug manufacturers announced that they would cease shipping discounted drugs to contract pharmacies used by covered entities, unless various conditions were met. *See Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 700-01 (3d Cir. 2023). In response, HHS took the position that "drug makers must deliver discounted drugs to an unlimited number of contract pharmacies" to comply with their 340B obligations. *See id.* at 701. Several manufacturers sued, and two courts of appeals rejected HHS's reading of Section 340B. *See id.* at 703-06; *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 464 (D.C. Cir. 2024).

Following that litigation, many States, including Missouri, stepped in and attempted to regulate in HHS's stead.

### B.    Factual Background and Prior Proceedings

1. In 2024, Missouri enacted Mo. Rev. Stat. § 376.414 (Act). The Act specifically regulates and is limited to participants in the 340B Program. *See* Mo. Rev. Stat. § 376.414(2). As relevant here, the Act prohibits pharmaceutical manufacturers from restricting "the acquisition of a 340B drug by, or delivery of a 340B drug to, a pharmacy

that is under contract with, or otherwise authorized by, a covered entity to receive 340B drugs on behalf of the covered entity unless such receipt is prohibited by [HHS]. *Id.*

2. Plaintiff, a pharmaceutical manufacturer, sued to challenge the Act. The district court denied plaintiff's motion for summary judgment, and a panel of this Court affirmed. *Novartis Pharms. Corp. v. Hanaway*, No. 25-1619, 2026 WL 1892141, at *5, *13 (8th Cir. July 1, 2026).

## ARGUMENT

## I. The panel's decision conflicts with decisions of the Supreme Court and of other circuits.

1. The Supremacy Clause "prohibit[s] States from interfering with or controlling the operations of the Federal Government." *United States v. Washington*, 596 U.S. 832, 838 (2022). Thus, States may not "regulate the United States directly or discriminate against the Federal Government or those with whom it deals." *Id.* (cleaned up). Similarly, the Supremacy Clause permits Congress to preempt state law "impliedly, by legislating in such a way to crowd out related state laws." *Pharmaceutical Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1193 (10th Cir. 2023). In cases such as these, the principles of intergovernmental immunity and preemption often overlap, but, under either framework, a State cannot intercede in the execution of the laws Congress enacts.

*See Washington*, 596 U.S. at 838 (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819)).

Congress has delineated the terms of the 340B Program. *See* 42 U.S.C. § 256b. As provided by Congress, manufacturers must sign agreements with HHS memorializing their obligation to charge covered entities no more than a statutory ceiling price for 340B drugs sales; the agreements also require manufacturers to actually offer the drugs for sale to covered entities. *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 699-700 (3d Cir. 2023) (citing 42 U.S.C. § 256b(a)(1)). Two courts of appeals have rejected HHS's argument that the statute read as a whole prohibits manufacturers from setting conditions on how pharmaceutical manufacturers deliver drugs to covered entities. *See id.* at 704-06; *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 464 (D.C. Cir. 2024). Missoui attempts to recreate that achieve a contrary result through state law, but Congress left no role for States in determining manufacturers' 340B obligations.

The Act violates principles of intergovernmental immunity because it impermissibly targets and discriminates against manufacturers that participate in a federal program. A manufacturer doing business in Missouri subjects itself to the Act only so long as it participates in the 340B Program; if it opts out of the 340B Program, it frees itself from the constraints of the Act. The scope of the Act, therefore, directly

discriminates against manufacturers who have 340B agreements with the federal government. Nor does Missouri impose similar obligations on similarly situated pharmaceutical manufacturers who do not participate in the 340B Program. The Supremacy Clause, however, forbids States from "singl[ing] ... out for less favorable treatment," those who do business with the federal government and from "regulat[ing] them unfavorably on some basis related to their governmental status," *Washington*, 596 U.S. at 839 (quotation marks omitted). The manufacturers "cannot be subjected to discriminatory regulations because [they] contracted with the federal government." *Boeing Co. v. Movassaghi*, 768 F.3d 832, 842 (9th Cir. 2014).

The Act facially violates that constitutional stricture by imposing additional burdens on manufacturers who participate in the 340B Program. *See Washington*, 596 U.S. at 839 (deeming law discriminatory because "[o]n its face" it "explicitly treats federal workers differently than state or private workers"). When a state law directly targets the federal government or those with whom it does business, the law is invalid. *See, e.g., Boeing*, 768 F.3d at 842-43 (state law that "specifically targets" federal contract because of federal activity is invalid). A State could not levy a special tax only on landlords that accept federal housing subsidies, or require physicians to use costlier diagnostic tests only for Medicare patients, or impose heightened liability rules only on

contractors who do business with Immigration and Customs Enforcement. Missouri's attempt to regulate and burden 340B participation is no different.

The Supreme Court's decision in *Dawson v. Steager*, 586 U.S. 171 (2019), which applied an intergovernmental tax immunity statute, confirms these basic principles. *See id.* at 173 (explaining that the statute at issue "codifies" the "legal doctrine" of intergovernmental immunity set out in *McCulloch*); *see also United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019) ("[T]he principles of the intergovernmental tax immunity doctrine apply to the general intergovernmental immunity doctrine"). The Court invalidated a West Virginia law that provided identically situated state retirees with tax benefits unavailable to federal employees, *Dawson*, 586 U.S. at 175, explaining that a State's laws must "treat[] those who deal with the federal government as well as it treats those with whom the State deals itself," *id.* at 177 (cleaned up). Because the West Virginia law had the effect of treating federal retirees worse, the Court concluded it was unlawful under the Supremacy Clause. *Id.* at 180. The same logic applies to the Act, which treats manufacturers with 340B agreements worse than manufacturers who do not participate in the 340B Program; the same conclusion thus follows.

Missouri's enactment interferes with Congress's design for the 340B Program in another critical way. "Congress vested authority to oversee compliance with the

340B Program in HHS and assigned no auxiliary enforcement role to covered entities" or to States. *See Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 117 (2011). Instead, it "centralized enforcement in the [federal] government" to avoid "the risk of conflicting adjudications." *Id.* at 119-20 (quotation marks omitted). Congress chose this "unitary administrative and enforcement scheme" because it intended for HHS to "administer both Medicaid and § 340B harmoniously and on a uniform, nationwide basis," in recognition that "an adjudication of rights under one program must proceed with an eye towards any implications for the other." *Id.* at 120 (quotation marks omitted). In *Astra*, the Supreme Court recognized that "[f]ar from assisting HHS," resort to state law remedies to resolve 340B disputes "would undermine" Congress's intent to create a uniform system. *See id.*

This general principle concerning 340B enforcement is particularly applicable in this context where Congress directed HHS to create a formal dispute resolution procedure. This scheme expressly encompasses "claims that a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price." 42 C.F.R. § 10.21(a)(1). The Act supplants that scheme by arrogating to the State enforcement authority that properly belongs to the federal government alone.

2. The panel's contrary reasoning was erroneous. The panel's decision rested on this court's 2024 decision in *Pharmaceutical Research & Manufacturers of America v. McClain*, 95 F.4th 1136 (8th Cir. 2024), *see Novartis Pharms. Corp. v. Hanaway*, No. 25-1619, 2026 WL 1892141, at *11 (8th Cir. July 1, 2026), and *McClain* was wrongly decided.

*McClain* concluded that Congress left room for States to regulate alongside the 340B Program because States traditionally regulate pharmacies. *See* 95 F.4th at 1143-44. State laws targeting contract-pharmacy arrangements, however, do not regulate the safety of prescription drugs or pharmacy operations or even state contracts. They operates only within the 340B Program. If two transactions for the same drugs occur between the same manufacturers, pharmacies, and providers but one prescription is dispensed to a 340B-eligible patient and the second prescription is not, the Act applies only to the first transaction. That sort of targeted regulation of participation in a federal program does not survive constitutional scrutiny just because some other generally applicable exercise of the State's police power could be permissible. For example, Congress may require as a condition of receiving federal funds that universities provide the military with equal access to on-campus recruiting. 10 U.S.C. § 983(b); *see Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 60 (2006). A State also could

require all universities subject to its jurisdiction to provide equal access to recruiters for state agencies. But a State could not condition a university's receipt of *federal* funds on its providing access to *state* recruiters. That, however, is just the sort of condition Missouri seeks to impose here.

*McClain* also concluded that because the Arkansas law in that case regulated the relationship between contract pharmacies and manufacturers rather than between covered entities and manufacturers, it did not conflict with federal law. 95 F.4th at 1144. But whether the condition applies to how the manufacturer deals with the covered entity or the contract pharmacy is similarly irrelevant. The relevant question is whether the State has targeted those who participate in a federal program for additional regulation.

*McClain* did not address and therefore does not preclude the United States' intergovernmental immunity argument. But *McClain*'s reasoning rests on fundamental misunderstandings about Supremacy Clause doctrine. This Court decided *McClain* without the benefit of the United States' views on these important questions of federal law. Now that the federal government has weighed in, this Court should take this opportunity to correct its error.

**II.     This case presents a question of exceptional importance.**

More than twenty States have passed laws like the Act. National Ass'n of Cmty. Health Ctrs., *A Year in Review: State Legislative Trends in 340B in 2025* (Oct. 17, 2025), https://perma.cc/8V7G-HMLX. Thus, States' authority to enact such regulations poses a question with nationwide stakes. And those stakes are high because these laws risk disincentivizing Medicare and Medicaid participation.

If the costs of participating in these programs outstrip the benefits, rational manufacturers can be expected to withdraw from them. Indeed, one manufacturer recently voluntarily withdrew from Medicaid and the 340B Program and attributed its decision to recent "legislative changes." *See* Bausch Health Cos., Quarterly Report (Form 10-Q), at 53 (Oct. 30, 2025). As a result, the manufacturer's dozens of drugs are no longer available through Medicaid. *See* 42 U.S.C. § 1396r-8(a)(1). If the costs of participation continue to rise, other manufacturers might also withdraw.

The determination of what conditions to impose on 340B-participating manufacturers rests with Congress, not the States. Only the federal government can determine the extent to which it will tolerate the risk of manufacturer withdrawal. Notably, the 340B Program is not the only potentially costly obligation borne by pharmaceutical manufacturers who participate in Medicare and Medicaid. These same

manufacturers, for example, are also obligated to participate in the Medicaid Drug Rebate Program, *see* 42 U.S.C. § 1396r-8, and the Medicare Drug Price Negotiation Program, *id.* §§ 1320f–1320f-7. Because manufacturers consider these costs cumulatively when deciding whether to participate in Medicare and Medicaid, so must Congress. By contrast, the States are ill suited to consider the cumulative costs of Medicare and Medicaid participation. Empowering States to add conditions to the 340B Program risks disrupting the availability of prescription drugs for the two largest federal healthcare programs. Those risks combined justify rehearing en banc.

## CONCLUSION

The petition should be granted.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

*Of Counsel:*

ELIZABETH C. KELLEY
 *Deputy General Counsel*
 *U.S. Department of Health and*
  *Human Services*

MICHAEL S. RAAB

 */s/ Maxwell A. Baldi*
MAXWELL A. BALDI
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7513*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 532-0211*
 *maxwell.baldi@usdoj.gov*

JULY 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(b)(4) because it contains 2,584 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in EB Garamond 14-point font, a proportionally spaced typeface.

Pursuant to Circuit Rule 28A(h)(2), I further certify that the brief has been scanned for viruses, and the brief is virus free.

*/s/ Maxwell A. Baldi*
MAXWELL A. BALDI

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system.

*/s/ Maxwell A. Baldi*
MAXWELL A. BALDI