No. 25-1619

# In the United States Court of Appeals
## For the Eighth Circuit

NOVARTIS PHARMACEUTICALS CORPORATION,

*Plaintiff-Appellant,*

v.

CATHERINE L. HANAWAY, in her official capacity as Attorney General of the State of Missouri, *et al.*,

*Defendants-Appellees*,

&

MISSOURI HOSPITAL ASSOC. and MISSOURI PRIMARY CARE ASSOC.,

*Intervenors-Appellees.*

---

Appeal from the U.S. District Court for the Western District of Missouri (4:24-cv-04131-MDH)

---

**DEFENDANTS-APPELLEES' OPPOSITION TO PETITION FOR REHEARING EN BANC**

---

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL
815 Olive Street, Ste. #200
St. Louis, Missouri 63101
Tel. (573) 645-9662
Louis.Capozzi@ago.mo.gov

Louis J. Capozzi, III, #77756MO
*Solicitor General*
J. Patrick Sullivan, #42968MO
*Deputy Solicitor General*
J. Michael Patton, #76490MO
*Deputy Solicitor General*

*Counsel for the Defendants-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii
INTRODUCTION ..... 1
QUESTIONS PRESENTED ..... 4
STATEMENT OF THE CASE ..... 5
I. The 340B Program. ..... 5
II. Drug manufacturers artificially restrict the 340B Program. ..... 6
III. Missouri enacts SB 751. ..... 8
ARGUMENT ..... 10
I. The panel opinion honors *Ellison* and other relevant authority on the dormant Commerce Clause. ..... 10
II. The Court should decline Novartis's invitation to create a circuit split on preemption. ..... 12
III. Reconsideration of the panel opinion is unnecessary. ..... 20
CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Cases** Page(s)

*AbbVie v. Drummond*,
808 F. Supp. 3d 1266 (W.D. Okla. 2025) .............................................4

*AbbVie v. Fitch*,
152 F.4th 635 (5th Cir. 2025) .................................................2, 13, 20

*AbbVie v. Jackley*,
2026 WL 2280929 (D.S.D. Aug. 7, 2026) .................................2, 10, 12

*AbbVie v. Murrill*,
166 F.4th 528 (5th Cir. 2026) ..........................................................17

*AbbVie v. Murrill*,
180 F.4th 747 (5th Cir. 2026) ...................................................*passim*

*AbbVie v. Skrmetti*,
2025 WL 1805271 (M.D. Tenn. June 30, 2025)....................................3

*AbbVie v. Weiser*,
811 F.Supp.3d 1264 (D. Colo. 2025) ....................................................2

*AbbVie v. Wrigley*,
2026 WL 1133457 (D.N.D. Apr. 27, 2026).............................................3

*AbbVie v. Wrigley*,
2026 WL 2149663 (D.N.D. July 27, 2026).............................................3

*Arizona v. United States*,
567 U.S. 387 (2012)..............................................................................15

*Association for Accessible Medicines v. Ellison*,
140 F.4th 957 (8th Cir. 2025) .................................................1, 10, 11

*Astra USA, Inc. v. Santa Clara Cnty.*,
563 U.S. 110 (2011).............................................................................5, 16

*Astrazenca Pharms. LP v. Bailey*,
2025 WL 644285 (W.D. Mo. Feb. 27, 2025) ..........................................3

*AstraZeneca Pharms. LP v. Fitch*,
766 F.Supp.3d 657 (S.D. Miss. 2024) .................................................... 3

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992) ........................................................................... 13

*Cont'l Ins. Companies v. Ne. Pharm. & Chem. Co.*,
842 F.2d 977 (8th Cir. 1988) ................................................................ 19

*Dawson v. Steager*,
586 U.S. 171 (2019) ........................................................................... 19

*Fenney v. Dakota, Minnesota & E. R. Co.*,
327 F.3d 707 (8th Cir. 2003) ................................................................ 19

*Kruger v. Nebraska*,
820 F.3d 295 (8th Cir. 2016) ................................................................ 16

*Landor v. Louisiana Dep't of Corr. & Pub. Safety*,
146 S. Ct. 1931 (2026) ........................................................................ 15

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) ..................................................................... 13, 15

*Monsanto Co. v. Durnell*,
146 S. Ct. 2001 (2026) ........................................................................ 13

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023) ..................................................................... 10, 12

*Novartis Pharms. Corp. v. Brown*,
2026 WL 1660347 (W.D. Wash. June 9, 2026) ................................. 2, 12

*Novartis Pharms. Corp. v. Fitch*,
738 F.Supp.3d 737 (S.D. Miss. 2024) .................................................... 3

*Novartis Pharms. Corp. v. Frey*,
2025 WL 2813787 (D. Me. Sept. 23, 2025) ....................................... 2, 12

*Novartis Pharms. Corp. v. Johnson*,
102 F.4th 452 (D.C. Cir. 2024) ........................................... 8, 14, 15, 16

*Pharm. Care Mgmt. Ass'n v. Wehbi*,
18 F.4th 956 (8th Cir. 2021) .................................................... 14

*PhRMA v. McClain*,
95 F.4th 1136 (8th Cir. 2024) ............................................... *passim*

*PhRMA v. McClain*,
645 F.Supp.3d 890 (E.D. Ark. 2022)............................................ 3

*PhRMA v. McClain*,
2024 WL 1919676 (8th Cir. 2024) .............................................. 2

*PhRMA v. McCuskey*,
171 F.4th 675 (4th Cir. 2026) ............................................. 3, 20

*PhRMA v. Murrill*,
2024 WL 4361597 (W.D. La. Sept. 30, 2024) ................................ 3

*Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218 (1947)................................................................ 15

*Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*,
58 F.4th 696 (3d Cir. 2023)................................................ *passim*

*Virginia Uranium, Inc. v. Warren*,
587 U.S. 761 (2019)............................................................ 18, 19

*Wyeth v. Levine*,
555 U.S. 555 (2009)................................................................ 13


**Constitutional Provisions & Statutes**


Mo. Rev. Stat. § 376.414.................................................... *passim*

U.S. Const. amend. X ............................................................ 15

## INTRODUCTION

Rehearing *en banc* is granted to resolve circuit splits, not create them. Novartis's petition flouts this basic norm. In its persistent quest to invalidate Missouri Senate Bill 751 ("SB 751"), Novartis demands rehearing *en banc* so that this Court can create *two* splits of authority—on the dormant Commerce Clause *and* on preemption.

As to the dormant Commerce Clause, Novartis argues that the panel's opinion conflicts with *Association for Accessible Medicines v. Ellison*, 140 F.4th 957 (8th Cir. 2025). Novartis claims that the panel simply "ignor[ed] *Ellison*'s squarely on-point holding." Pet. at 1. But that is inaccurate. The panel discussed *Ellison* at oral argument, noting that *Ellison* is distinguishable because the statute there directly regulated the *price* of out-of-state transactions. Oral Arg. Audio at 2:54–3:10, 7:37–7:47;[1] *Ellison*, 140 F.4th at 959–61. Comparatively, SB 751 merely regulates *delivery* of 340 drugs already purchased by covered entities operating in Missouri. Mo. Rev. Stat. § 376.414.

Since the panel opinion, district courts have had no trouble applying the distinction easily observed between *Ellison* and the panel

---

[1] https://media-oa.ca8.uscourts.gov/OAaudio/2026/1/251619.MP3

opinion. *See AbbVie v. Jackley*, 2026 WL 2280929, at *35 (D.S.D. Aug. 7, 2026). Additionally, if this Court reversed the panel opinion, it would split with other cases holding States may require drug manufacturers to *deliver* 340B drugs to pharmacies without running afoul of the dormant Commerce Clause. *See id.* at *30–35; *Novartis Pharms. Corp. v. Brown*, 2026 WL 1660347, at *21–22 (W.D. Wash. June 9, 2026); *Novartis Pharms. Corp. v. Frey*, 2025 WL 2813787, at *5, *12–13 (D. Me. Sept. 23, 2025).

Next, Novartis urges this Court to create a circuit split on preemption. Novartis also demands abrogation of *two* controlling opinions: (1) the panel's opinion in this case and (2) *PhRMA v. McClain*, 95 F.4th 1136 (8th Cir. 2024). However, two years ago, the Supreme Court and this Court—sitting *en banc*—already rejected invitations to revisit *McClain*. *See PhRMA v. McClain*, 145 S. Ct. 768 (2024); *PhRMA v. McClain*, 2024 WL 1919676 (8th Cir. 2024). And almost every court outside this Circuit has agreed with *McClain*'s result.[2] Of course, a

[2] *AbbVie v. Murrill*, 180 F.4th 747, 757–62 (5th Cir. 2026); *AbbVie v. Fitch*, 152 F.4th 635, 645–48 (5th Cir. 2025); *Jackley*, 2026 WL 2280929, at *35; *Brown*, 2026 WL 1660347, at *8–20; *AbbVie v. Weiser*, 811 F.Supp.3d 1264 (D. Colo. 2025); *AbbVie v. Neronha*, 1:25-cv-00388-JJM-AEM (D.R.I. Sept. 30, 2025); *Novartis Pharm. Corp. v. Frey*, 2025 WL

Fourth Circuit panel, in a 2-1 decision, briefly disagreed with *McClain*. *See PhRMA v. McCuskey*, 171 F.4th 675, 695 n.12 (4th Cir.), *reh'g en banc granted*, 176 F.4th 830 (4th Cir. 2026). But that opinion has already been vacated, and the *en banc* Fourth Circuit is rehearing the appeal. *Id.*

Novartis also cites *AbbVie v. Wrigley*, 2026 WL 1133457 (D.N.D. Apr. 27, 2026)—an opinion authored by Judge Traynor. But that decision does not conflict with *McClain*. Rather, the court emphasized *six* times that, unlike Missouri, "North Dakota does not argue [that its law] only pertains to delivery, instead arguing it directly alters manufacturer conditions." *Id.* ¶¶ 4–5, 8, 43–47, 59. The law that Judge Traynor considered is thus distinguishable from SB 751. *See AbbVie v. Wrigley*, 2026 WL 2149663, at *2 (D.N.D. July 27, 2026) (Traynor, J.) (distinguishing the panel opinion because "Missouri considered its statute a delivery statute, whereas North Dakota considers its law as regulating price").

---

2813787 (D. Me. Sept. 23, 2025); *AbbVie v. Skrmetti*, 2025 WL 1805271 (M.D. Tenn. June 30, 2025); *Astrazenca Pharms. LP v. Bailey*, 2025 WL 644285, at *3 (W.D. Mo. Feb. 27, 2025); *AstraZeneca Pharms. LP v. Fitch*, 766 F.Supp.3d 657 (S.D. Miss. 2024); *Novartis Pharms. Corp. v. Fitch*, 738 F.Supp.3d 737 (S.D. Miss. 2024); *PhRMA v. Murrill*, 2024 WL 4361597, at *8–9 (W.D. La. Sept. 30, 2024); *PhRMA v. McClain*, 645 F.Supp.3d 890, 902 (E.D. Ark. 2022).

Against more than a dozen opinions uniformly rejecting Novartis's arguments, Novartis cites one case supporting its position—a Western District of Oklahoma opinion that disagreed with *McClain*. *See AbbVie v. Drummond*, 808 F. Supp. 3d 1266, 1275–80 (W.D. Okla. 2025). But that court does not issue controlling precedent in the Eighth Circuit, nor is it another U.S. Court of Appeals. Thus, *en banc* review is unwarranted. *See* Fed. R. App. P. 40(b)(2)(A), (C).

In short, Novartis wants this Court to grant rehearing *en banc* so that the Eighth Circuit can create a circuit split and become an outlier on preemption and the dormant Commerce Clause. The Court should decline this invitation.

## QUESTIONS PRESENTED

1. Whether the panel and the district court correctly held that Novartis is unlikely to succeed in showing that SB 751 violates the dormant Commerce Clause.

2. Whether the panel and the district court correctly held that Novartis is unlikely to succeed in showing that SB 751 violates the Supremacy Clause.

## STATEMENT OF THE CASE

### I. The 340B Program.

The federal 340B program offers drug manufactures like Novartis a bargain: Novartis can access Medicare and Medicaid Part B drug markets—a benefit worth billions of dollars—if it agrees to "offer discounted drugs to covered entities, dominantly, local facilities that provide medical care for the poor." *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 115 (2011). Participation in the 340B program is voluntary, but Congress created the 340B program to "incentivize[]" drug manufacturers to provide "pricing discounts on certain drugs prescribed to individuals and families whose incomes fall below the federal poverty level." *McClain*, 95 F.4th at 1139.

The 340B program has "three basic parts": (1) A "cap on drug makers' prices," (2) "restrictions on covered entities," and (3) "compliance mechanisms" for covered entities and manufacturers. *Id.* at 1141 (quoting *Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*, 58 F.4th 696, 699 (3d Cir. 2023)). Manufacturers "opt into the 340B Program," and those who opt in must "sell drugs to covered entities at a discounted 'ceiling price.'" *Id.* The ceiling price is set by a federal

"statutory formula." *Id.* "[D]iscounted prices are only made available to covered entities," including hospitals and clinics. *Id.*; 42 U.S.C. §256b(a)(4). The 340B Program "does not dictate how covered entities … use this revenue," nor does it require discounts to "be passed" to patients. GAO Report No. 18-480, Drug Discount Program: Federal Oversight of Compliance at 340B Contract Pharmacies Needs Improvement, at 2 (2018).[3] Even so, GAO estimates more than half of covered entities using contract pharmacies pass along 340B discounts to "low-income, uninsured patients." *Id.* at 30. The 340B program "gives [covered entities] extra revenue from serving insured patients: they turn a profit when insurance companies reimburse them at full price for drugs … they bought at the 340B discount." *Sanofi*, 58 F.4th at 699. The 340B Program also "enables [covered entities] to give uninsured patients drugs at little or no cost." *Id.*

## II. Drug manufacturers artificially restrict the 340B Program.

When a covered entity purchases 340B drugs, it naturally needs pharmacies to stock and dispense the drugs. Accordingly, "covered entities have contracted with outside pharmacies, referred to as 'contract

[3] https://www.gao.gov/assets/gao-18-480.pdf

pharmacies,' for the distribution and dispensation of 340B drugs." *McClain*, 95 F.4th at 1139.

Contract pharmacies are "essential, and legally required, as part of the drug distribution chain," but their role in 340B has changed over time. *Id.* at 1142. "In 1996, HHS issued guidance saying that covered entities could use one contract pharmacy each." *Sanofi*, 58 F.4th at 700 (citing 61 Fed.Reg. 43,549). But in 2010, the Health Resource and Services Administration ("HRSA") "issued new guidance, saying … covered entities could use an unlimited number of contract pharmacies." *Id.* (citing 75 Fed.Reg. 10,272). In response, "[d]rug makers rebelled" and began "adopting policies to limit … use of contract pharmacies." *Id.* Under these restrictive policies, drug manufacturers dictated that covered entities could only contract with one pharmacy for stocking and dispensing 340B drugs. *Id.*

In response, HHS issued an advisory opinion stating that the 340B statute required manufacturers to deliver 340B drugs to an unlimited number of contract pharmacies. HHS Off. Gen. Couns., Advisory Opinion

20-06 on Contract Pharmacies Under the 340B Program (Dec. 30, 2020).[4] Manufacturers challenged this guidance, arguing that the 340B statute did not grant HHS power to require delivery to all contract pharmacies. The Third and D.C. Circuits agreed with the manufacturers because "section 340B is 'silent about delivery.'" *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 461 (D.C. Cir. 2024) (quoting *Sanofi*, 58 F.4th at 703).

Without federal guidance, manufacturers like Novartis again started restricting the number of pharmacies that covered entities could contract with. These artificial limitations "caused covered entities dependent on contract pharmacies to become unable to serve patients in need." *McClain*, 95 F.4th at 1139.

**III. Missouri enacts SB 751.**

In response to these developments, the Missouri's General Assembly—like many other state legislatures—passed SB 751. *See* Mo. Rev. Stat. § 376.414; *see* U.S. Amicus Br. at 12 ("More than twenty States have passed laws like [SB 751].").

[4]https://www.mhanet.com/mhaimages/Legal/DHHS%20Counsel%20Advisory%20Opinion%20on%20340B%20Contract%20Pharmacies%2012-30-20.pdf

SB 751 is simple. It provides that when a covered entity purchases a 340B drug, the drug manufacturer (and its wholesalers) cannot inhibit delivery of the purchased drug to pharmacies where the covered entity directs delivery. SB 751 provides:

> A pharmaceutical manufacturer, third-party logistics provider, or an agent or affiliate of such pharmaceutical manufacturer or third-party logistics provider, shall not deny, restrict, or prohibit, either directly or indirectly, the acquisition of a 340B drug by, or delivery of a 340B drug to, a pharmacy that is under contract with, or otherwise authorized by, a covered entity to receive 340B drugs on behalf of the covered entity unless such receipt is prohibited by [HHS].

Mo. Rev. Stat. § 376.414.2.

The panel opinion summarized this provision perfectly: "S.B. 751 requires that drug manufacturers participating in the 340B Program deliver 340B drugs to all of a Missouri covered entity's contract pharmacies." Panel Op. at 9. The panel also emphasized that "S.B. 751 regulates the distribution of 340B drugs without affecting their price. Once covered entities purchase 340B drugs at the ceiling price set by federal law, S.B. 751 prevents drug manufacturers from prohibiting covered entities from directing the delivery of those drugs to its contract pharmacies." *Id.* at 15. Thus, SB 751 regulates only delivery of 340B drugs. It does not regulate their price.

# ARGUMENT

## I. The panel opinion honors *Ellison* and other relevant authority on the dormant Commerce Clause.

Novartis argues that rehearing is necessary because the panel supposedly "ignor[ed] *Ellison*'s squarely on-point holding." Pet. at 1, 10–12. But the panel was well aware of *Ellison*, which was discussed at length during oral argument. Oral Arg. Audio at 1:20–7:47.[5] And nothing in the panel opinion conflicts with *Ellison*. Indeed, lower courts have had no trouble distinguishing between the panel's opinion and *Ellison*. As the District of South Dakota explained earlier this month: The Minnesota law in *Ellison* "directly regulate[d]" the "price" of out-of-state transactions, whereas SB 751 "'regulates only the delivery of 340B drugs to covered entities and their contract pharmacies.'" *See Jackley*, 2026 WL 2280929, at *35 (quoting Panel Op. at 12; citing *Ellison*, 140 F.4th at 960). The dormant Commerce Clause forbids the former, but permits the latter. *See id.*; *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 376 n.1 (2023) (State law cannot "*directly* regulate[] transactions which [take] place ... wholly outside the State" (emphasis original, internal quotation omitted)).

---

[5] https://media-oa.ca8.uscourts.gov/OAaudio/2026/1/251619.MP3

SB 751 is nothing like the Minnesota law at issue in *Ellison*. Minnesota's law was a price control that directly regulated drug manufacturers throughout the country. It prohibited "manufacturers," like Novartis, "from 'impos[ing], or caus[ing] to be imposed, an excessive price increase ... on the sale of any generic or off-patent drug sold, dispensed, or delivered to any consumer in the state.'" *Ellison*, 140 F.4th at 959 (alteration original) (quoting Minn. Stat. § 62J.842). Although the Minnesota law applied only to drugs eventually sold in state, its price control directly regulated out-of-state transactions between drug manufacturers and their wholesalers as to drugs that would eventually end up in Minnesota. *See id.* at 960–61. For example, "Minnesota concede[d] that a Colorado manufacturer would be penalized if it sold drugs to a New Jersey distributor at prices above those proscribed by the Act and those drugs ended up in Minnesota." *Id.* at 960. Thus, "Minnesota regulates the price of out-of-state transactions, insists that out-of-state manufacturers sell their drugs to wholesalers for a certain price, and ties the price of in-state products—prescription drugs—to the price that out-of-state manufacturers charge their wholesalers." *Id.* at 961.

That is not true of SB 751. Rather, SB 751—like the laws of many other States—simply "regulates the distribution of 340B drugs without affecting their price." Panel Op. at 15. That is, "[o]nce covered entities purchase 340B drugs at the ceiling price set by federal law, S.B. 751 prevents drug manufacturers from prohibiting covered entities from directing the delivery of those drugs to its contract pharmacies." *Id.* SB 751 merely requires Novartis and its wholesalers to send 340B drugs purchased by Missouri covered entities wherever such entities direct. *See* Mo. Rev. Stat. § 376.414.2. The panel and other courts have held that this is permissible under the dormant Commerce Clause. *See* Panel Op. at 11–18; *Jackley*, 2026 WL 2280929, at *35; *Brown*, 2026 WL 1660347, at *21–22; *Frey*, 2025 WL 2813787, at *12–13. The Court should decline to split with those decisions.

## II. The Court should decline Novartis's invitation to create a circuit split on preemption.

Novartis also seeks rehearing *en banc* as to the preemption question. Pet. at 12–17. Novartis aims to overrule two Eighth Circuit opinions and to create a split with the Fifth Circuit—not to mention a split with nearly a dozen district courts. *See* Panel Op. at 19–24;

*McClain*, 95 F.4th at 1140–45; *Murrill*, 180 F.4th at 757–62; *Fitch*, 152 F.4th at 645–48; *supra* n.1.

The U.S. Supreme Court recognizes a strong presumption against preemption of state law. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action."). Further, "[i]n all pre-emption cases, and particularly in those in which Congress has legislated ... in a field which the States have traditionally occupied," courts must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (alteration original) (quoting *Lohr*, 518 U.S. at 485). Usually, this requires an express preemption clause. *See, e.g.*, *Monsanto Co. v. Durnell*, 146 S. Ct. 2001, 2012 (2026). Also, even express preemption clauses are narrowly construed. *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992).

These standards make denial of rehearing simple. As to SB 751, the presumption against preemption is especially strong because "the

practice of pharmacy is an area traditionally left to state regulation." *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 972 (8th Cir. 2021); *see also McClain*, 95 F.4th at 1143–44 (collecting cases). Furthermore, Novartis cannot identify a single express preemption clause in federal law concerning the delivery of 340B drugs. Instead, the text of 340B "is silent about delivery" of drugs to pharmacies. *Sanofi*, 58 F.4th at 703.

Lacking support in text or precedent, Novartis tries to invoke field preemption, enforcement preemption, and conflict preemption. Pet. at 13–17. But all of these theories fail.

First, Novartis advances a truly novel field preemption argument. Pet. at 13–14. It acknowledges that 340B is silent about the delivery of 340B drugs to pharmacies. But it then cherry-picks the D.C. Circuit's *Novartis* opinion for the proposition that "congressional silence," in this context, "'preserves—rather than abrogates—the ability of sellers to impose at least some delivery conditions.'" Pet. at 14 (quoting *Novartis*, 102 F.4th at 460). Novartis continues that "[l]ike all Spending Clause programs, the program terms must be set out in advance, and Congress gave no notice that *states* could change the [340B] Program's rules." *Id.* (emphasis added).

However, Novartis rips the D.C. Circuit's statement out of context. The D.C. Circuit was addressing the ability of *federal agencies* to enact regulations where a federal statute is silent. Unsurprisingly, the D.C. Circuit held that federal agencies lack this authority. *Novartis*, 102 F.4th at 460–61. But that has nothing to do with a State's authority—as an "independent sovereign[] in our federal system"—to enact laws under its police powers. *Lohr*, 518 U.S. at 485. The Spending Clause also has nothing to do with field preemption. The Spending Clause limits the reach of *federal* statutes, *see Landor v. Louisiana Dep't of Corr. & Pub. Safety*, 146 S. Ct. 1931, 1943–44 (2026)—it does not affect state legislative authority. Rather, States retain Tenth Amendment authority to enact legislation in any field not expressly reserved to the federal government. *See* U.S. Const. amend. X. In light of our federal system, Novartis should hardly be surprised that States retain authority to enact laws where 340B is "silent." Pet. at 14; *Novartis*, 102 F.4th at 460. "'[T]he historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" *Arizona v. United States*, 567 U.S. 387, 400 (2012) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

In any event, Novartis failed to preserve any field preemption argument premised on the Spending Clause. Novartis never discussed the Spending Clause in the district court, and Novartis raised this argument for the first time in its reply brief before the panel. *See* Novartis Reply Br. at 24–25. However, an appellant who premises his argument on a new provision "in his reply brief … waive[s] his argument based on that provision." *Kruger v. Nebraska*, 820 F.3d 295, 306 (8th Cir. 2016). Thus, Novartis has preserved nothing for review as to the Spending Clause. *Id.*

Novartis's "enforcement preemption" arguments fair no better. Novartis notes that Congress "vested authority to oversee compliance with the 340B Program in HHS." Pet. at 15 (quoting *Astra*, 563 U.S. at 117). However, SB 751 does not seek to enforce the 340B Program. Of course, SB 751 neither sets discount pricing nor does it authorize Missouri actors to enforce 340B drug prices. *See* Mo. Rev. Stat. § 376.414.2. Instead, SB 751 acts in the precise sphere where HHS lacks authority to act because of 340B's silence. *See Novartis*, 102 F.4th at 461; *Sanofi*, 58 F.4th at 703. Thus, the panel opinion and *McClain* correctly held that "Congress vested HHS with only limited enforcement authority

and left open the possibility that states would enact parallel health and welfare laws." Panel Op. at 21; *McClain*, 95 F.4th at 1144 ("HHS has jurisdiction over different disputes"). Federal law cannot possibly preempt state law in a sphere where federal agencies lack enforcement authority because of statutory silence.

Next, as to conflict preemption, Novartis regurgitates its Spending Clause argument and claims that SB 751 conflicts with federal law by interfering with the "careful bargain" that Congress struck in the 340B program. Pet. at 16–17. However, Novartis's late-breaking Spending Clause argument fails for the reasons discussed above. Also, the panel opinion and *McClain* is consistent with dozens of decisions agreeing that SB 751 (and laws like it) *promote* "'Congress's central aim' in creating the 340B Program." Panel Op. at 23 (quoting *AbbVie v. Murrill*, 166 F.4th 528, 542 (5th Cir. 2026), *withdrawn and superseded on other grounds Murill*, 180 F.4th 747[6]); *Murrill*, 180 F.4th at 762 (same). That is, "ensuring that manufacturers participating in Medicaid ... offer

[6] On rehearing by the panel, the Fifth Circuit altered its ruling on intervention. *Compare Murrill*, 166 F.4th at 547–49, *with Murrill*, 180 F.4th at 754 n.2. Yet both opinions uphold Louisiana's Act 358, which is analogous to SB 751.

discounted drugs to covered entities" who "provide medical care for the poor." *Murrill*, 180 F.4th at 762.

At any rate, Novartis's invitation to assess whether SB 751 somehow conflicts with Congress's purposes is a fool's errand. Pet. at 16. "A sound preemption analysis cannot be as simplistic as that." *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 778 (2019) (plurality op.). The Supremacy Clause cannot "be deployed … to elevate abstract and unenacted legislative desires above state law." *Id.* "Sound and well-documented reasons underlie this rule too." *Id.* "Trying to discern what motivates legislators individually and collectively invites speculation and risks overlooking the reality that individual Members of Congress often pursue multiple and competing purposes, many of which are compromised to secure a law's passage." *Id.* In light of the above, the panel can hardly be faulted for rejecting Novartis's conflict preemption argument.

Finally, as an amicus, the United States raises a contorted intergovernmental immunity argument, which Novartis has never pressed. *See* U.S. Amicus Br. at 5–8. The Court should reject this argument because it ordinarily "consider[s] only issues argued in the

briefs filed by the parties and not those argued in the briefs filed by interested nonparties." *Fenney v. Dakota, Minnesota & E. R. Co.*, 327 F.3d 707, 713 n.7 (8th Cir. 2003) (quoting *Cont'l Ins. Companies v. Ne. Pharm. & Chem. Co.*, 842 F.2d 977, 984 (8th Cir. 1988) (en banc)). In any event, the intergovernmental immunity argument fails. The argument is merely a repackaged conflict preemption argument relying on speculation about Congress's purposes. *Contra Virginia Uranium*, 587 U.S. at 778 (plurality op.). Also, there is an obvious difference between a law directly discriminating against federal employees, *see Dawson v. Steager*, 586 U.S. 171 (2019), and a law ensuring that low-income Missourians can benefit from the 340B program, *see* Mo. Rev. Stat. § 376.414. Unsurprisingly, the Fifth Circuit has already rejected the United States' argument. *See Murrill*, 180 F.4th at 758 n.38 ("Casting [Louisiana] Act 358 as a state law that 'targets' participating manufacturers gets matters backwards.").

* * *

The panel correctly reaffirmed *McClain*, and refused to split with the Fifth Circuit and many district courts. This Court should not grant rehearing simply to create a circuit split and reverse two panel opinions.

## III. Reconsideration of the panel opinion is unnecessary.

Novartis claims that this case is "exceptionally important" because "[t]he panel opinion has enormous consequences, as the Fourth Circuit's grant of en banc review underscores." Pet. at 17 (citing *McCuskey*, 176 F.4th 830). But this brushes aside the real upshot of the Fourth Circuit's recent rehearing in *McCuskey*. The panel there *disagreed* with this Court's *McClain* opinion—not to mention Fifth Circuit precedent and a nearly dozen district court decisions. *See McCuskey*, 171 F.4th at 695 n.12; *supra* n.1. The *en banc* Fourth Circuit deemed it exceptionally important to reconsider *that* surprising decision. 176 F.4th 830. But that does not mean that this Court should reconsider *McClain* and the panel opinion. Nor does it mean that this Court should create a circuit split with the Fifth Circuit. *See Murrill*, 180 F.4th at 757–62; *Fitch*, 152 F.4th at 645–48. Instead, the Court should uphold its well-founded precedent and avoid creating a circuit split.

## CONCLUSION

The Court should deny Novartis's petition for rehearing *en banc*.

Date: August 21, 2026

Respectfully submitted,

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

*/s/Louis J. Capozzi, III*
Louis J. Capozzi III, #77756MO
*Solicitor General*
J. Patrick Sullivan, #42968MO
*Deputy Solicitor General*
J. Michael Patton, #76490MO
*Deputy Solicitor General*
Office of the Attorney General
Old Post Office Building
815 Olive St, Suite 200
St. Louis, MO 63101
Office: (314) 340-3413
Louis.Capozzi@ago.mo.gov

*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limits of Fed. R. App. P. 40(d)(3)(A) and the Court's August 11, 2026 order because it contains 3,895 words excluding the parts exempted by Fed. R. App. P. 32(f). I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) in that this document has been prepared in a proportionally spaced typeface using Microsoft Word (size 14 Century Schoolbook font).

*/s/ Louis J. Capozzi, III*

Louis J. Capozzi, III
Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above was electronically filed by using the CM/ECF system. Counsel for Appellant will receive a copy of the above document through the CM/ECF system on August 21, 2026.

*/s/ Louis J. Capozzi, III*

Louis J. Capozzi, III
Solicitor General