No. 25-1619

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

NOVARTIS PHARMACEUTICALS CORPORATION,

*Plaintiff-Appellant*

v.

CATHERINE HANAWAY, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF MISSOURI, *et al.,*

*Defendants-Appellees*,

MISSOURI HOSPITAL ASSOCIATION and MISSOURI PRIMARY CARE ASSOCIATION,

*Intervenors-Appellees*.

On Appeal from the United States District Court
for the Western District of Missouri

Civil Action No: 2:24-cv-04131-MDH

The Honorable M. Douglas Harpool

# INTERVENORS-APPELLEES' RESPONSE TO PETITION FOR REHEARING EN BANC


RONALD S. CONNELLY
WILLIAM VON OEHSEN
BARBARA STRAUB WILLIAMS
FERNANDO MONTOYA
HANNAH HAUER
POWERS PYLES SUTTER & VERVILLE, PC
1250 CONNECTICUT AVE. N.W., 8TH FL.
Washington, DC 20036
(202) 466-6550
Ron.Connelly@PowersLaw.com

BRYAN O. WADE
MICHAEL T. RAUPP
TANNER M. COOK
ALEXA B. BARTON
HUSCH BLACKWELL LLP
3810 E SUNSHINE ST SUITE 300
Springfield, MO 68509
(417) 268-4116
Bryan.wade@huschblackwell.com

*Counsel for Intervenors-Appellees,*
*Missouri Hospital Association and Missouri Primary Care Association*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 7

I. S.B. 751 Regulates Distribution, Not Pricing ........ 7

II. The Panel Opinion Is Consistent With *Ellison* ........ 9

III. *McClain*'s Reasoning Remains Sound ........ 12

IV. Rehearing Is Unwarranted ........ 17

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AbbVie, Inc. v. Fitch*,
152 F.4th 635 (5th Cir. 2025) ....................1, 12, 13, 14, 15, 16

*AbbVie, Inc. v. Jackley*,
No. 3:25-CV-03006, 2026 WL 2280929 (D.S.D. Aug. 7, 2026) .......2, 13, 14, 17

*AbbVie, Inc. v. Murrill*,
180 F.4th 747 (5th Cir. 2026) ....................1, 12, 14, 15, 16

*Am. Hosp. Ass'n v. Becerra*,
596 U.S. 724 (2022)....................3

*Ass'n for Accessible Meds. v. Ellison*,
140 F.4th 957 (8th Cir. 2025) ....................1, 2, 9, 10, 11

*Ass'n for Accessible Meds. v. Frosh*,
887 F.3d 664 (4th Cir. 2018) ....................10

*Astra USA, Inc. v. Santa Clara County*,
563 U.S. 110 (2011)....................12, 14, 15

*AstraZeneca Pharms. LP v. Lopez*,
No. CV 25-00369, 2026 WL 497141 (D. Haw. Feb. 23, 2026)....................16

*Dep't of Revenue of Ky. v. Davis*,
553 U.S. 328 (2008)....................12

*Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*,
471 U.S. 707 (1985)....................16

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023)....................2, 9

*Novartis Pharms. Corp. v. Brown*,
No. 3:26-CV-05302-DGE, 2026 WL 1660347 (W.D. Wash. Jun. 9, 2026)......14

*Novartis Pharms. Corp. v. Johnson*,
102 F.4th 452 (D.C. Cir. 2024)....................5, 7, 13, 14

*Pharm. Rsch. & Mfrs. of Am. v. McClain*,
95 F.4th 1136 (8th Cir.), *cert. denied*, 145 S. Ct. 768 (2024) 6, 12, 13, 15, 16, 17

*Pharm. Rsch. & Mfrs. of Am. v. Fitch*,
No. 1:24-CV-160, 2024 WL 3277365 (S.D. Miss. July 1, 2024), *aff'd*, No. 24-60340, 2026 WL 963501 (5th Cir. Apr. 9, 2026) ............................................13

*Pharm. Rsch. & Mfrs. of Am. v. Frey*,
No. 1:25-cv-00469-JCN, 2026 WL 184504 (D. Me. Jan. 23, 2026)..................14

*Pharm. Rsch. & Mfrs. of Am. v. McCuskey*,
171 F.4th 675 (4th Cir. 2026) ..................................................................1, 12, 17

*Pharm. Rsch. & Mfrs. of Am. v. Walsh*,
538 U.S. 644 (2003)...........................................................................................10

*Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*,
58 F.4th 696 (3d Cir. 2023) ...............................................................5, 7, 13, 14

*Wyeth v. Levine*,
555 U.S. 555 (2009)...........................................................................................17

**Federal Statutes**

42 U.S.C. § 256b ..................................................................................................1

42 U.S.C. § 256b(a)(1)...........................................................................................3

42 U.S.C. §§ 256b(a)(1), 1396r-8(a)(1).................................................................2

42 U.S.C. § 256b(a)(5)(A)(i), (a)(5)(B).................................................................3

42 U.S.C. § 256b(d)(1)-(3) ..................................................................................13

**State Statutes**

Mo. Rev. Stat. § 376.414 .......................................................................................6

Mo. Rev. Stat. § 376.414.2 ................................................................................5, 6

**Rules**

Fourth Cir. L.R. 40(e) ............................................................................................1

**Other Authorities**

H.R. Rep. No. 102-384, pt. 2 ....................................................................................3

Letter from Daniel Lopuch, VP Novartis Managed Markets Finance, to Covered Entities (Oct. 30, 2020), https://secure.340bhealth.org/files/Novartis-Letter-10-30-20.pdf ....................................................................................................5

Notice Regarding 340B Drug Pricing Program-Contract Pharmacy Services, 75 Fed. Reg. 10,272, 10,273 (Mar. 5, 2010) ..............................................................4

Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services, 61 Fed. Reg. 43,549, 43,550 (Aug. 23, 1996) .....................4

## INTRODUCTION

Two panels of this Court have held that states may regulate the distribution of drugs priced under the federal 340B Program, 42 U.S.C. § 256b. Those opinions were correct and are consistent with the vast majority of courts that have considered this issue. Appellant Novartis Pharmaceuticals Corp. ("Novartis") petitions this court to *create* a circuit split with the Fifth Circuit, which has twice upheld state laws similar to Missouri S.B. 751. *See AbbVie, Inc. v. Fitch*, 152 F.4th 635, 645–647 (5th Cir. 2025); *AbbVie, Inc. v. Murrill*, 180 F.4th 747, 760 (5th Cir. 2026). Novartis fails even to cite these cases in its petition. Instead, Novartis repeatedly relies on a *vacated* Fourth Circuit panel opinion to support its position, *Pharm. Rsch. & Mfrs. of Am. v. McCuskey*, 171 F.4th 675 (4th Cir. 2026), *reh'g en banc* granted, (June 2, 2026). Fourth Cir. L.R. 40(e) ("Granting of rehearing en banc vacates the previous panel judgment and opinion…."). That opinion is null and should not inform this Court's decision on whether to rehear this case.

S.B. 751 does not violate the dormant Commerce Clause's extraterritoriality doctrine, and the panel opinion does not conflict with *Association for Accessible Medicines v. Ellison*, 140 F.4th 957 (8th Cir. 2025). The extraterritoriality doctrine applies only to "'price control or price affirmation statutes' that tied 'the price of . . . in-state products to out-of-state prices.'" *Id.* at 960 (quoting *Nat'l Pork*

*Producers Council v. Ross*, 598 U.S. 356, 734 (2023)). *Ellison* concerned a state statute that explicitly regulated the price of drugs. S.B. 751 regulates drug distribution and falls outside the extraterritoriality doctrine as clarified by the Supreme Court in *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023).

S.B. 751 does not regulate prices outside Missouri. S.B. 751 lawfully regulates "delivery and acquisition of 340B drugs to contract pharmacies within the state." App. 325; R. Doc. 78, at 10. Novartis's petition is premised on the incorrect theory that S.B. 751 is a *pricing* statute. It is not. S.B. 751 regulates the *distribution* of drugs that have already been priced under the 340B Program. Indeed, the two panel opinions from this Court are consistent with the vast majority of courts to consider the issue. *See AbbVie, Inc. v. Jackley*, No. 3:25-CV-03006, 2026 WL 2280929, at *6 n.8–9 (D.S.D. Aug. 7, 2026) (collecting cases).

Intervenor-Appellees, the Missouri Hospital Association and the Missouri Primary Care Association, respectfully request that the Court deny Novartis's petition for rehearing.

## BACKGROUND

The 340B Program requires drug companies to offer discounts on covered outpatient drugs to specified safety-net health care providers, known as "covered entities," as a condition of the manufacturers' drugs being reimbursed by Medicaid and Medicare Part B. 42 U.S.C. §§ 256b(a)(1), 1396r-8(a)(1). All covered entities

receive some form of federal assistance to treat the neediest patients and must meet strict eligibility criteria to enroll in the 340B Program. *Id*. § 256b(a)(4). A covered entity may not obtain a 340B discount for a drug subject to a Medicaid rebate or "resell or otherwise transfer the drug to a person who is not a patient of the entity." *Id.* § 256b(a)(5)(A)(i), (a)(5)(B). These restrictions are known as "duplicate discounts" and "diversion," respectively.

The 340B statute thus establishes the universe of claims eligible for discounts. A drug company is obligated under federal law to sell discounted drugs to covered entities for all their eligible patients provided a State Medicaid agency does not seek a rebate for the same drug. *Id.*

Covered entities provide significant levels of uncompensated care to uninsured and underinsured patients, and the 340B Program is intended "to enable [covered] entities to stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102-384, pt. 2, at 12. The 340B Program also generates revenue for covered entities so that they are less dependent on taxpayer support. The difference between an insurer's payment and the discounted price is income to the covered entity that supplements federal funds, which is exactly what Congress intended. *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 738 (2022).

A provider of health care must ensure that patients have access to a pharmacy to fill their prescriptions for these medications. For this reason, some providers own their own "in-house" pharmacies. Because the construction and management of a pharmacy is expensive and requires special expertise, many covered entities cannot afford to "expend precious resources to develop their own in-house pharmacies." Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services, 61 Fed. Reg. 43,549, 43,550 (Aug. 23, 1996). They rely instead on independent retail pharmacies to dispense drugs to their patients on their behalf in locations that are accessible to their patients. These pharmacies are known as "contract pharmacies."

In 1996, the United States Department of Health and Human Services ("HHS") acknowledged that covered entities may order discounted drugs for shipment directly to contract pharmacies. *Id.* In 2010, HHS clarified that covered entities may access 340B drugs through an unlimited number of contract pharmacies. Notice Regarding 340B Drug Pricing Program—Contract Pharmacy Services, 75 Fed. Reg. 10,272, 10,273 (Mar. 5, 2010).

Contract pharmacies do not, and may not, purchase 340B drugs. The covered entity purchases 340B drugs for the contract pharmacy to dispense to the covered entity's patients. The pharmacy collects reimbursement for the drugs from both the patient and the patient's third-party payer (if any), and remits the

collections to the covered entity. The covered entity pays the pharmacy a fee for dispensing and billing drugs on the covered entity's behalf.

For twenty-six years, every drug company participating in the 340B Program, including Novartis, honored contract pharmacy arrangements. In 2020, manufacturers began either eliminating or significantly restricting distribution of 340B drugs to contract pharmacies. *See, e.g.*, Letter from Daniel Lopuch, VP Novartis Managed Markets Finance, to Covered Entities (Oct. 30, 2020).[1] In response, HHS notified several manufacturers, including Novartis, that their policies violated the 340B statute and must be rescinded. These manufacturers then sued HHS. The Third and D.C. Circuits held that the 340B statute does not prohibit reasonable contract pharmacy restrictions imposed by manufacturers. *Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*, 58 F.4th 696, 707 (3d Cir. 2023); *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 459 (D.C. Cir. 2024).

S.B. 751 states that certain entities, including manufacturers, may not "deny, restrict, or prohibit, either directly or indirectly, the acquisition of a 340B drug by, or delivery of a 340B drug to" a contract pharmacy. Mo. Rev. Stat. § 376.414.2. S.B. 751 also states that it must not be construed in conflict with federal law and

[1] https://secure.340bhealth.org/files/Novartis-Letter-10-30-20.pdf.

regulations. *Id.* § 376.414.6. S.B. 751 does not set or enforce discount pricing. S.B. 751 merely refers to discounts set by the federal 340B Program.

Novartis challenged the constitutionality of S.B. 751, alleging that relevant provisions are: 1) preempted by federal patent law, 2) preempted by the 340B statute, and 3) unlawful under the dormant Commerce Clause. App. 32–36; R. Doc. 1, at 32–36 ¶¶ 110–126. On August 2, 2024, Novartis filed a motion for a preliminary injunction to enjoin relevant provisions of S.B. 751. App. 40–43; R. Doc. 3. The district court denied Novartis's motion, holding that Novartis had not shown a substantial likelihood of success on the merits of any claim. App. 316–329; R. Doc. 78.

A panel of this Court affirmed, concluding that S.B. 751 regulates the delivery of 340B drugs rather than their price, does not have an impermissible extraterritorial effect, and does not discriminate against interstate commerce. Op. 11–18. The panel further held that Novartis's field preemption claim is foreclosed by *Pharm. Rsch. & Manufacturers of Am. v. McClain*, 95 F.4th 1136, (8th Cir.), *cert. denied*, 145 S. Ct. 768 (2024) and that S.B. 751 is not conflict preempted. Op. 20–24.

## ARGUMENT

### I. S.B. 751 Regulates Distribution, Not Pricing

Novartis's claims hinge on its erroneous theory that S.B. 751 regulates pricing of 340B drugs. It does not. The federal 340B statute specifies how the 340B price is determined and establishes a federal enforcement scheme for pricing violations. The 340B statute does not regulate drug distribution. *Sanofi*, 58 F.4th at 707. The price at which a product is sold is not the same as the channel through which it is delivered.

That conclusion aligns with the decisions of the courts of appeals that have addressed the 340B statute's scope. In *Sanofi*, the Third Circuit held that Congress did not authorize HHS to compel manufacturers to deliver discounted drugs to an unlimited number of contract pharmacies. *Id.* The court's holding was directed to the limits of *federal* agency power to regulate delivery under the 340B statute; it did not suggest that Congress prohibited or displaced traditional *state* authority over drug distribution. The D.C. Circuit similarly held that the 340B statute "merely requires manufacturers to propose to sell covered drugs to covered entities at or below a specified monetary amount" and is "silent about delivery conditions." *Novartis*, 102 F.4th at 460.

S.B. 751 operates entirely within the space unregulated under the 340B statute. It does not alter the federal ceiling price, expand eligibility, or interfere

with HHS's audit or enforcement authority for compliance with the 340B requirements. S.B. 751 only prohibits manufacturers from restricting the locations to which drugs—already purchased by covered entities at federally mandated prices—may be delivered, that is, post-purchase distribution conduct. A statute governing delivery does not become a pricing statute merely because the product being delivered was purchased at a discounted price. S.B. 751 simply prevents manufacturers from using delivery restrictions to frustrate access to drugs that federal law already requires them to offer at discounted prices.

S.B. 751 does not expand the number of eligible 340B transactions. Eligible transactions are defined solely by the 340B statute, which requires Novartis to sell discounted drug to covered entities for all their eligible patients, as long as those drugs are not subject to a Medicaid rebate. If a covered entity has 100 patients and prescribes two Novartis medications to each patient, the 340B statute entitles the covered entity to purchase and dispense 200 discounted drugs. Novartis's policy does not prevent a covered entity from directing shipment of those 200 drugs to its in-house pharmacy. But if the covered entity wants to ship only 50 of those purchases to its in-house pharmacy and 150 to contract pharmacies, Novartis's policy blocks shipment of the 150 drugs. S.B. 751 prohibits Novartis from preventing these shipments to contract pharmacies for drugs that were already priced under 340B.

## II. The Panel Opinion Is Consistent With *Ellison*

*Association for Accessible Medicines v. Ellison*, 140 F.4th 957 (8th Cir. 2025), is inapplicable here. That case analyzed a Minnesota law that capped drug-price increases, and a panel of this Court held that the law had "the specific impermissible extraterritorial effect of controlling prices outside of Minnesota." *Ellison*, 140 F.4th at 960. *Ellison* thus turned on the law's regulation of price. S.B. 751, by contrast, regulates distribution, not price.

In analyzing S.B. 751, the panel appropriately concluded that it "resembles the law upheld in *Pork Producers*." Op. 13. In *Pork Producers*, the Supreme Court confined the extraterritoriality doctrine to laws with a "specific impermissible extraterritorial effect" and confirmed that a state law does not violate the Commerce Clause merely because it has the incidental "practical effect of controlling" out-of-state behavior. 598 U.S. at 374 (internal quotation marks omitted). The panel correctly held that S.B. 751 "may incidentally bear on out-of-state transactions" but "does not have a specific impermissible extraterritorial effect" and "directly regulates only the delivery of 340B drugs to covered entities and their contract pharmacies." Op. 13.

*Ellison* applied that same framework, confining the doctrine to "price control or price affirmation statutes that tie[] the price of in-state products to out-of-state prices." 140 F.4th at 960 (quoting *Pork Producers*, 598 U.S. at 374). The *Ellison*

decision identifies which laws fall within the doctrine and which do not. One statute that falls within the doctrine is the Maryland statute considered in *Association for Accessible Medicines v. Frosh*, 887 F.3d 664 (4th Cir. 2018), which *Ellison* described as "nearly identical" to Minnesota's law. *Id.* The panel here distinguished the Maryland statute, explaining that it "regulat[ed] the wholesale pricing of prescription medications" and "specifically targeted upstream transactions between manufacturers and wholesalers." Op. 12–13. Two decisions applying the same rule to different statutes do not conflict.

The Maine drug rebate program upheld in *Walsh* falls outside the doctrine, as *Ellison* explained, because that program did not regulate "the price of any out-of-state transaction," insist that manufacturers "sell their drugs to a wholesaler for a certain price," or tie "the price of its in-state products to out-of-state prices." *Ellison*, 140 F.4th at 960–61 (quoting *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669 (2003)). Similarly, S.B. 751 does none of these. The panel's treatment of *Frosh*, Op. 15–16, thus answers the argument Novartis now makes under *Ellison*.

Further, Novartis's reading of *Ellison* is incorrect at each turn. Novartis first argues that S.B. 751 is no different from the Minnesota law because both apply only to manufacturers. Pet. 11. But the class of regulated parties was not what made the Minnesota law extraterritorial. The Minnesota law reached out-of-state

conduct because it set the price at which manufacturers could sell to wholesalers and tied the price of in-state products to that out-of-state price. *Ellison*, 140 F.4th at 961. S.B. 751 is not a price control statute.

Novartis contends that *Ellison* "expressly rejected" the panel's reasoning that S.B. 751 regulates only the in-state delivery of 340B drugs. Pet. 11. It did not. Minnesota argued that its price cap was not extraterritorial because the regulated drugs had to end up in Minnesota, and this Court rejected that argument because in-state delivery does not rescue a price control. *Ellison*, 140 F.4th at 960. Novartis's reasoning presupposes price control and answers only whether a statute that fixes prices escapes the extraterritoriality doctrine when the goods arrive in-state, not whether a statute that does not regulate price is subject to the doctrine.

Novartis also relies on *Ellison*'s statement that a plaintiff need not show discrimination where a statute has "the specific extraterritorial effect of controlling the price of wholly out-of-state transactions." Pet. 12 (quoting *Ellison*, 140 F.4th at 961). But that principle applies only after a court determines that the challenged law falls within the narrow category of price-control statutes governed by the extraterritoriality doctrine. *See Ellison*, 140 F.4th. at 960–61. The panel here correctly concluded that S.B. 751 does not regulate price at all. Op. 15.

Even if *Ellison* required a discrimination inquiry here, that inquiry would not aid Novartis. "Any notion of discrimination assumes a comparison of substantially

similar entities." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 342 (2008). As the district court correctly recognized, "[d]rug manufacturers, hospitals, and pharmacies, while all part of an interconnected healthcare system, are not substantially similar such that they can be said to operate in economic competition with one another." Op. 14. They occupy distinct roles within the pharmaceutical supply chain and are subject to different regulatory obligations. Thus, Novartis cannot establish discrimination.

## III. ***McClain*'s Reasoning Remains Sound**

Novartis raises arguments that are foreclosed by *McClain*, which correctly held that laws like S.B. 751 are not field preempted, their enforcement provisions do not conflict with *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), and they are not conflict preempted. Alleging that *McClain* is wrong on these three issues, Novartis requests this Court reject *McClain* and create a split with the Fifth Circuit. *McClain* was correctly decided in all respects.

***Field Preemption.*** Novartis tries to convince this Court to reject *McClain* as "wrongly decided," Pet. 12–17, while ignoring that courts around the country have flatly rejected similar arguments and distinguished the same cases upon which Novartis relies. *See, e.g.*, *Fitch*, 152 F.4th at 645–647; *Murrill*, 180 F.4th at 760.

Novartis cites the vacated *McCuskey* opinion to argue that Congress was clear in its intention to occupy the field of 340B. Pet. 13. *McCuskey* is contrary to

numerous cases finding that Congress did not occupy the field of 340B or preempt state laws like S.B. 751. *See AbbVie, Inc. v. Jackley*, No. 3:25-CV-03006, 2026 WL 2280929, at *6 n.8–9 (D.S.D. Aug. 7, 2026) (collecting cases).

Novartis's assertion that the 340B statute contemplates "compliance improvements" is of no moment. Pet. 13. The Fifth Circuit explicitly rejected this argument, recognizing that, although "Section 340B explicitly regulates several key matters," including that it "enforces compliance with its caps and bars" under 42 U.S.C. § 256b(d)(1)-(3), Section 340B has "no federal framework so pervasive that Congress left no room for state supplementation." *Fitch*, 152 F.4th at 646. *McClain* found similarly, as did the panel. Op. 20–21 (citing *McClain*, 95 F.4th 1143–44).

Novartis argues that *Novartis* and *Sanofi* support its preemption argument because those courts stated that the 340B statute does not prohibit a manufacturer from setting reasonable contract pharmacy limits. Pet. 14. Both of those courts determined that reasonable restrictions are permissible under *federal* law only because the 340B statute is silent on delivery. *Novartis*, 102 F.4th at 460; *Sanofi*, 58 F.4th at 703. That same silence also permits Missouri to regulate delivery of 340B drugs to contract pharmacies. *Pharm. Rsch. & Mfrs. of Am. v. Fitch*, No. 1:24-CV-160, 2024 WL 3277365, at *9 (S.D. Miss. July 1, 2024), *aff'd*, No. 24-60340, 2026 WL 963501 (5th Cir. Apr. 9, 2026) ("[T]he same 'statutory

silence[ ],' *Sanofi Aventis*, 58 F.4th 699, that does not *implicitly mandate* that manufacturers deliver to any contract pharmacy does not, on the other hand, show that Congress clearly intended to *preclude states* from enacting their own public health regulations aimed at maximizing the availability of low-cost drugs for covered-entity patients."); *see also Novartis Pharms. Corp. v. Brown*, No. 3:26-CV-05302-DGE, 2026 WL 1660347, at *17 (W.D. Wash. Jun. 9, 2026) (same); *Pharm. Rsch. & Mfrs. of Am. v. Frey*, No. 1:25-cv-00469-JCN, 2026 WL 184504, at *13 (D. Me. Jan. 23, 2026) (same). *Novartis* and *Sanofi* support S.B. 751.

***Enforcement Preemption.*** Novartis is wrong that its expansive reading of *Astra* bars S.B. 751. Pet. 14–16. The Fifth Circuit and district courts across the country have uniformly rejected this argument. *Fitch*, 152 F.4th at 647–48; *Murrill*, 180 F.4th 760–61; *Jackley*, 2026 WL 2280929, at *6 n.8–9 (collecting cases). The Fifth Circuit considered *Astra* and concluded that HHS's enforcement role and laws like S.B. 751 do not "concern the same subject matter." *Fitch*, 152 F.4th at 647–48 (cleaned up); *Murrill*, 180 F.4th at 760 ("The two regimes operate in distinct spheres."). It reasoned that a similar state law did "not intrude upon [HHS's] authority because it does not impose penalties for violations of Section 340B, like failing to offer discounted drugs to covered entities or engaging in diversion." *Fitch*, 152 F.4th at 48. Rather, laws like S.B. 751 "impose[] penalties when drug manufacturers violate [state law] by interfering with the distribution of

Section 340B drugs pursuant to covered entities' partnerships with contract pharmacies." *Id.* *McClain*'s conclusion that the plaintiff in that case "conflate[d] the two statutes[']" oversight and enforcement schemes conforms with *Astra* and the conclusion of these other courts. *McClain*, 95 F.4th at 1144; *see also Murrill*, 180 F.4th at 761 n.60 ("Act 358 provides the mechanism by which Louisiana can enforce the *delivery* of the 340B drugs to the contract pharmacies. By contrast, the federal scheme allows HHS to enforce covered entities' *ability to purchase* 340B drugs. These are distinct matters."). The panel was correct to decline Novartis's request to reconsider *McClain* on this issue. Op. 20–21.

***Conflict Preemption.*** Novartis is again mistaken that *Sanofi*'s and *Novartis*'s acknowledgement of 340B's silence about drug distribution somehow preserves a drug manufacturer's so-called "right" to limit distribution at the expense of a sovereign state's authority to oversee the health and safety of its citizens through laws addressing drug distribution. Pet. 16. While the statute's silence on delivery may preclude an assertion of *federal* power in that domain, it does not displace *traditional state authority* to regulate it. *McClain*, 95 F.4th at 1144; *Murrill*, 180 F.4th at 759–760.

The panel correctly concluded that S.B. 751 does not alter the 340B pricing formula or set 340B drug prices and therefore does not change the terms of the 340B Program's bargain. Op. 22–23. *McClain* similarly determined that Arkansas

Act 1103 did not mandate 340B pricing, alter discount amounts, or impose obligations beyond federal requirements. *McClain*, 95 F.4th at 1145. Instead, the state law deterred manufacturer interference with contract pharmacy arrangements—an approach *McClain* found compatible with the 340B Program. *Id.*

Novartis insists its bargain with the federal government when it joined the 340B Program did not create a "floor" allowing states to "add additional obligations." Pet. 16–17. This view is inconsistent with principles of federalism. Courts presume that federal law does not supersede the historic police powers of states unless Congress expresses a "clear and manifest" purpose to do so. *Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 715 (1985) (cleaned up). Courts around the country have overwhelmingly agreed that state laws like S.B. 751 implicate traditional areas like the practice of pharmacy, public health, and consumer protection and that Congress did not express a clear and manifest purpose to preempt state law. *McClain*, 95 F.4th at 1143; *Fitch*, 152 F.4th at 646; *Murrill*, 180 F.4th at 758. Novartis's suggestion that S.B. 751 is preempted, even though Congress was silent on the matter of drug delivery, would "turn[] the presumption against preemption on its head." *AstraZeneca Pharms. LP v. Lopez*, No. CV 25-00369, 2026 WL 497141, at *13 (D. Haw. Feb. 23, 2026) (quotations omitted). S.B. 751 is "a complementary form of drug regulation" that

"offers an additional, and important, layer of consumer protection." *Wyeth v. Levine*, 555 U.S. 555, 578–79 (2009); *McClain*, 95 F.4th at 1143 (citing *Lefaivre v. KV Pharm. Co.*, 636 F.3d 935, 940–41 (8th Cir. 2011)).

## IV. Rehearing Is Unwarranted

Although S.B 751 is important to Missouri covered entities and their patients, rehearing is unwarranted. *McClain* was correctly decided and is consistent with the Fifth Circuit's opinions, and district court decisions upholding legislation similar to S.B. 751. *See Jackley*, 2026 WL 2280929, at *6 n.8–9 (collecting cases). The panel opinion is consistent with *Ellison*.

Novartis relies on the Fourth Circuit's grant of en banc review to underscore the "enormous consequences" of the court's opinion and the need for review here. Pet. 17. Yet, Novartis fails to acknowledge that the Fourth Circuit panel's opinion in *McCuskey* deviated from this Court's opinion, and a majority of decisions from other circuits and district courts. Thus, the Fourth Circuit rehearing may result in consistency among the circuits, whereas Novartis asks this Court to create a split with the Fifth Circuit. The Fourth Circuit's grant of rehearing does not weigh in favor of rehearing here.

## CONCLUSION

For the foregoing reasons, this Court should deny the petition for rehearing.

Dated: August 21, 2026 Respectfully Submitted,

/s/Bryan O. Wade
Bryan O. Wade
HUSCH BLACKWELL LLP
3810 E. Sunshine Street
Suite 300
Springfield, Missouri 65809
Phone: 417-268-4000
Fax: 417-268-4040
bryan.wade@huschblackwell.com

Michael T. Raupp
HUSCH BLACKWELL LLP
4801 Main, Suite 1000
Kansas City, Missouri 64112
Phone: 816-983-8000
Fax: 816-983-8080
michael.raupp@huschblackwell.com

Tanner M. Cook
HUSCH BLACKWELL LLP
8001 Forsyth Boulevard, Suite 1500
St. Louis, Missouri 63105
Phone: 314-480-1500
Fax: 314-480-1551
Tanner.Cook@huschblackwell.com

Alexa B. Barton
HUSCH BLACKWELL LLP
14606 Branch Street, Suite 200
Omaha, NE 68154
Telephone: (402) 964-5000
Facsimile: (402) 964-5050
allee.barton@huschblackwell.com

*/s/Ronald S. Connelly*
Ronald S. Connelly
William von Oehsen
Barbara Straub Williams
Fernando Montoya
Hannah Hauer
POWERS PYLES SUTTER & VERVILLE, PC
1250 Connecticut Ave. N.W., 8th Floor
Washington, DC 20036
T: (202) 466-6550
F: (202) 785-1756
Ron.Connelly@PowersLaw.com

*Counsel for Intervenors-Appellees Missouri Hospital Association and Missouri Primary Care Association*

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND LOCAL RULE 28A(h)

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,864 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO Version 2212 in 14-point Times New Roman font.

Pursuant to Eighth Circuit Rule 28(A)(h), I further certify that Intervenors-Appellees' brief has been converted to Adobe PDF format by printing to Adobe PDF from the original word processing file, and has been provided to the Court and counsel for Appellants. The brief has been scanned for viruses using a commercial virus scanning program, which confirms that the brief is virus free.

*/s/Ronald S. Connelly*
Ronald S. Connelly
*Counsel for Intervenors-Appellees Missouri Hospital Association and Missouri Primary Care Association*

Dated: August 21, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: August 21, 2025

Respectfully Submitted,


/s/Ronald S. Connelly
Ronald S. Connelly
POWERS PYLES SUTTER & VERVILLE, PC
1250 Connecticut Ave. N.W., 8th Floor
Washington, DC 20036
T: (202) 466-6550
Ron.Connelly@PowersLaw.com
*Counsel for Intervenors-Appellees Missouri Hospital Association and Missouri Primary Care Association*